IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VIETNAM VETERANS OF AMERICA; SWORDS TO PLOWSHARES: VETERANS RIGHTS ORGANIZATION; BRUCE PRICE; FRANKLIN D. ROCHELLE; LARRY MEIROW; ERIC P. MUTH; DAVID C. DUFRANE; and WRAY C. FORREST, individually, on behalf of themselves and all others similarly situated,

      Plaintiffs,

  v.

CENTRAL INTELLIGENCE AGENCY, et al.,

      Defendants.
_____/

No. C 09-0037 CW

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND DENYING DEFENDANTS' ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Plaintiffs Vietnam Veterans of America (VVA), Swords to Plowshares: Veterans Rights Organization and six individual veterans assert claims against Defendants Central Intelligence Agency (CIA), et al., arising from the United States' human experimentation programs. Defendants move to dismiss Plaintiffs' Second Amended Complaint (SAC) in its entirety for lack of subject matter jurisdiction and for failure to state a claim. In the alternative, they move for summary judgment on Plaintiffs' claims, arguing that they are time-barred. Defendants had previously moved to dismiss Plaintiffs' First Amended Complaint for improper venue, lack of subject matter jurisdiction, and failure to state a claim. At the December 3, 2009 hearing on that motion, the Court indicated that it would grant Plaintiffs leave to file an amended complaint to cure deficiencies in their claim of venue in the Northern District of California. Before this Court issued its written order

on that motion, Plaintiffs filed their Second Amended Complaint, which cures these deficiencies. Accordingly, the Court DENIES as moot Defendants' first Motion to Dismiss to the extent it is based on improper venue. (Docket No. 34.) The remaining arguments in Defendants' first Motion to Dismiss are repeated in its current motion. Thus, the Court does not require another opposition, reply or hearing on these issues. The Court GRANTS in part Defendants' first and second Motions to Dismiss and DENIES them in part. The Court DENIES Defendants' Alternative Motion for Summary Judgment.

## BACKGROUND

The following allegations are contained in Plaintiffs' SAC.

Beginning in the early 1950s, the CIA and the Army engaged in experiments involving human subjects. The purposes of these experiments varied; some focused on determining the levels at which chemicals would cause casualties in order to develop new biological and chemical weapons. Other tests, including the "MKULTRA" program, involved researching "psychological warfare" and developing mind-control methods. The experiments exposed participants to various chemicals, drugs and/or the implantation of electronic devices. Many of the tests occurred at Edgewood Arsenal and Fort Detrick, both located in Maryland.

Various memoranda and regulations were intended to govern these experiments. In February, 1953, the CIA and the Department of Defense (DOD) issued the Wilson Directive, which was intended to bring the United States into compliance with the 1947 Nuremberg Code on medical research. The Directive stated that the "voluntary consent of the human subject is absolutely essential." SAC ¶ 119(a). A June, 1953 Department of the Army memorandum stated,

2

"Medical treatment and hospitalization <u>will be provided</u> for all casualties of the experiments" in order to protect volunteers.  SAC ¶ 125(b) (emphasis in SAC).  This language was codified in Army Regulation (AR) 70-25, which was promulgated on March 26, 1962.  SAC ¶¶ 128, 130.  AR 70-25 also echoed the Wilson Directive, stating that informed consent is "essential" and, to that end, a test participant "will be fully informed of the effects upon his health or person which may possibly come from his participation in the experiment."  SAC ¶ 126(b).

Approximately 7,800 armed services personnel, including the six named individual Plaintiffs in this action, volunteered to participate in the experiments.  However, the volunteers participated without giving informed consent because the risks of the experiments were not fully disclosed, despite the memoranda and regulation discussed above.

Test participants were required to sign a secrecy oath, which required their agreement that they would

> not divulge or make available any information related to U.S. Army Intelligence Center interest or participation in the [volunteer program] to any individual, nation, organization, business, association, or other group or entity, not officially authorized to receive such information.

SAC ¶ 156 (alteration in SAC).  Any violation of the oath would result in punishment under the Uniform Code of Military Justice (UCMJ).  Based on the form's language, participants erroneously believed that punishment under the UCMJ could occur even after their discharge from military service.  In September, 2006, some, but not all, participants received letters from the Department of Veterans Affairs (DVA), advising them that the DOD had authorized

them to discuss their exposure with their health care providers.

Following congressional hearings in the 1970s on the program, the CIA, the Department of Justice (DOJ) and the Department of the Army stated that they would work to locate test participants and compensate those who had health conditions or diseases connected to their participation in the experiments. These efforts have not yielded substantial results. Although some participants have been notified and have received information on their exposure, others have not.

Based on these allegations, Plaintiffs seek declaratory and injunctive relief. They ask the Court to declare that the consent forms signed by the individual Plaintiffs are not valid or enforceable; that the individual Plaintiffs are released from the secrecy oaths; that Defendants are obliged to notify the individual Plaintiffs and other test participants about their exposures and the known health effects and to provide all available documents and evidence concerning their exposures; that Defendants violated the individual Plaintiffs' rights under the Due Process Clause; and that Defendants are obliged to provide medical care to the individual Plaintiffs. Plaintiffs also seek injunctive relief, requiring Defendants to notify volunteers of the details of their participation in the human experimentation program; to conduct a thorough search of "all available document repositories" and provide victims with all documents concerning their exposure; to provide examinations and medical care to all volunteers involved in the MKULTRA, Edgewood, and other human experiments, to the extent that the volunteers have a disease or condition related to their exposures; to supply the DVA with information on the individual

4

Plaintiffs' participation in the experiments, so that they may seek service-connected death or disability compensation; and to cease committing violations of United States and international law. Separately, the organization Plaintiffs seek a declaration that the Supreme Court's holding in United States v. Feres, 340 U.S. 135 (1950), is unconstitutional.[1]

Plaintiffs intend to move to certify this case as a class action encompassing "all veterans who were involved in the Human Test Series." SAC ¶ 174.

## DISCUSSION

I. Dismissal under Rule 12(b)(1)

A. Legal Standard

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or

---

[1] In Feres, the Court held that injuries that "arise out of or are in the course of activity incident" to military service fall outside the sovereign immunity waiver of the Federal Tort Claims Act. 340 U.S. at 146. The Feres doctrine bars suits for money damages involving injuries incident to military service. See Costo v. United States, 248 F.3d 863, 866 (9th Cir. 2001).

5

allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

B. Analysis

Defendants assert that the Court lacks subject matter jurisdiction because the United States has not waived sovereign immunity for Plaintiffs' claims, because the claims are time-barred and because Plaintiffs lack standing to bring their claims concerning the lawfulness of the testing, consent forms and secrecy oaths.[2]

1. Sovereign Immunity

To bring a claim against an agency of the United States, a plaintiff must establish a waiver of sovereign immunity. Rattlesnake Coalition v. U.S. EPA, 509 F.3d 1095, 1103 (9th Cir. 2007). Under 5 U.S.C. § 702, the judicial review provision of the Administrative Procedure Act (APA), sovereign immunity is waived "in all actions seeking relief from official misconduct except for

---

[2] In asserting that the Court lacks subject matter jurisdiction over these claims, Defendants offer several arguments concerning Plaintiffs' entitlement to relief. These arguments are immaterial to whether Plaintiffs' complaint should be dismissed under Rule 12(b)(1). "Where a court initially has jurisdiction under the APA, . . . the existence of statutory limitations on the remedies that the court may impose does not defeat jurisdiction." Rosemere Neighborhood Ass'n v. U.S. EPA, 581 F.3d 1169, 1172 n.2 (9th Cir. 2009). "As a general rule, when '[t]he question of jurisdiction and the merits of [the] action are intertwined,' dismissal for lack of subject matter jurisdiction is improper." Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation, 524 F.3d 1090, 1094 (9th Cir. 2008) (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). Defendants' arguments that Plaintiffs' claims lack merit and that relief is unavailable are considered below with respect to dismissal under Rule 12(b)(6).

6

money damages." The Presbyterian Church v. United States, 870 F.2d 518, 525 (9th Cir. 1989); see also Rosemere Neighborhood Ass'n v. U.S. EPA, 581 F.3d 1169, 1172 n.2 (9th Cir. 2009) ("Section 702 waives the government's sovereign immunity for actions, such as this one, that seek injunctive relief."). Section 702 "permits a citizen suit against an agency when an individual has suffered 'a legal wrong because of agency action' . . . ." Rattlesnake, 509 F.3d at 1103 (quoting 5 U.S.C. § 702). An agency's failure to act constitutes "agency action" for the purposes of section 702. See 5 U.S.C. § 551(13).

Defendants argue that the United States' sovereign immunity bars Plaintiffs' claims for (1) medical care; (2) notice and the production of documents on the known health effects of Defendants' human experimentation program; and (3) a declaration that the Supreme Court's Feres doctrine is unconstitutional.

Because Plaintiffs' claims for medical care and notice arise under section 702, sovereign immunity does not bar the Court's jurisdiction over these claims. Plaintiffs allege that Defendants' failure to provide medical care and to disclose information concerning the experiments is unlawful. With regard to medical care, Plaintiffs assert that Defendants' legal duties arise from previously confidential Army documents and the 1962 version of AR 70-25. As mentioned above, the documents and the regulation require that medical care will be provided for "all casualties" of the experiments. To demonstrate Defendants' legal obligation to disclose information, Plaintiffs cite various documents, including a 1978 DOJ opinion letter, which states that

> the CIA may well be held to have a legal duty to notify

7

> those MKULTRA drug-testing subjects whose health the CIA has reason to believe may still be adversely affected by their prior involvement in the MKULTRA drug-testing program; that an effort should thus be made to notify these subjects; . . . and, while the CIA might lawfully ask another agency to undertake the notification effort in this instance, the CIA also has lawful authority to carry out this task on its own.

SAC ¶ 14; SAC, Ex. A at A-006. The DOJ opined that the CIA, "having created the harm or risk" to test participants' health, has a common-law duty "to notify individuals as an effort directed at rendering assistance and preventing further harm." SAC, Ex. A. at A-002. By citing these documents, regulation and letter, Plaintiffs sufficiently allege they have suffered a legal wrong based on agency inaction. They therefore state a section 702 claim, for which sovereign immunity is waived.

The Court, however, lacks subject matter jurisdiction over the organization Plaintiffs' request for a declaration that the Supreme Court's Feres doctrine is unconstitutional. Quite clearly, this Court cannot declare a United States Supreme Court case unconstitutional. Plaintiffs admitted as much at hearing, explaining that they wish to preserve the point for appeal. Accordingly, the Court dismisses with prejudice the request for a declaration that the Feres doctrine is unconstitutional.

   2. Statute of Limitations under 28 U.S.C. § 2401(a)

Defendants assert that the Court lacks subject matter jurisdiction because Plaintiffs' claims are time-barred under 28 U.S.C. § 2401(a).[3] Defendants cite John R. Sand and Gravel Company

---

[3] Section 2401(a) provides:

> Except as provided by the Contract Disputes Act
> (continued...)

8

v. United States and its holding that 28 U.S.C. § 2501, which provides a six-year limitations period for claims filed in the Court of Federal Claims, can constitute a jurisdictional bar. 552 U.S. 130, 133-36 (2008).

Because John R. Sand addressed a different statute, its holding does not apply here. As Defendants acknowledge, the Ninth Circuit has stated that "§ 2401(a)'s six-year statute of limitations is not jurisdictional." Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 770 (9th Cir. 1997). The Ninth Circuit has not reexamined Cedars-Sinai in light of John R. Sand. Defendants nevertheless argue that John R. Sand "casts substantial doubt" on Cedars-Sinai because the language of section 2501 parallels the language of section 2401(a). Defs.' Reply in Support of Mot. to Dismiss of August 14, 2009 at 8. However, John R. Sand is distinguishable from Cedars-Sinai. In rejecting the John R. Sand petitioner's argument that section 2501 is not jurisdictional, the Supreme Court reviewed its earlier decisions holding that section 2501's statutory predecessors were jurisdictional in nature. The Court followed those decisions based on stare decisis. See 552 U.S. at 139. Contrary to Defendants' argument, John R. Sand did not broadly hold that all federal statutes governing limitations periods are jurisdictional in nature. Thus, John R.

---

[3](...continued)
of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

9

1  Sand is not clearly irreconcilable with Cedars-Sinai. The Court is
2  still bound by Cedars-Sinai and does not find that section 2401(a)
3  creates a jurisdictional bar. See, e.g., Sierra Club v. Johnson,
4  2009 WL 482248, *9 (N.D. Cal.); Public Citizen, Inc. v. Mukasey,
5  2008 WL 4532540, *8 (N.D. Cal.).

       3. Plaintiffs' Standing to Seek Declaratory Relief Concerning the Legality of the Testing and Consent Forms

8      In order to provide declaratory relief, a court must have "an
9  actual case or controversy within its jurisdiction." Principal
10 Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005). To
11 satisfy the "case or controversy" requirement, a plaintiff must
12 establish "the three elements of Article III standing: (1) he or
13 she has suffered an injury in fact that is concrete and
14 particularized, and actual or imminent; (2) the injury is fairly
15 traceable to the challenged conduct; and (3) the injury is likely
16 to be redressed by a favorable court decision." Salmon Spawning &
17 Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir.
18 2008). In the context of declaratory relief, a plaintiff
19 demonstrates redressability if the court's statement would require
20 the defendant to "act in any way" that would redress past injuries
21 or prevent future harm. Mayfield v. United States, ___ F.3d ___,
22 2009 WL 4674172, at *6 (9th Cir. 2009).
23     If a court has subject matter jurisdiction, it may then
24 consider whether it should exercise its discretion to grant
25 declaratory relief. This decision is guided by the factors set out
26 in Brillhart v. Excess Insurance Company, 316 U.S. 491 (1942).
27 Principal Life Ins. Co., 394 F.3d at 672. Brillhart states that
28 "1) the district court should avoid needless determination of state

10

law issues; 2) it should discourage litigants from filing declaratory actions as a means of forum shopping; and 3) it should avoid duplicative litigation." Principal Ins. Co., 394 F.3d at 672 (alteration marks and citation omitted). The Ninth Circuit has also noted other relevant considerations:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

Id. (quoting Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998) (en banc)).

Defendants argue that Plaintiffs lack standing to seek a declaration on the lawfulness of the testing and the associated consent forms because such relief would not redress their alleged injuries.

With regard to a declaration on the testing's lawfulness, Plaintiffs lack standing. A declaration would not redress their past injuries or those of putative class members. Nor would a declaration prevent future harm; the individual Plaintiffs are no longer members of the armed forces and they do not plead or argue that they might be subject to Defendants' experimentation programs in the future. Vindication through a declaration that they have been wronged does not redress the individual Plaintiffs' injuries for the purposes of Article III.

Plaintiffs cite Bilbrey v. Brown, 738 F.2d 1462 (9th Cir. 1984), and Greater Los Angeles Council on Deafness, Inc. v. Zolin,

11

812 F.2d 1103 (9th Cir. 1987). These cases are distinguishable and do not support their position. Neither case involved a challenge to the plaintiffs' standing to seek declaratory relief; instead, both cases inquired into whether the district courts properly exercised their discretion in denying such relief. See Bilbrey, 738 F.2d at 1470; Zolin, 812 F.2d at 1112. And unlike the Bilbrey and Zolin plaintiffs, the individual Plaintiffs and the putative class members will not face future harm by Defendants' experimentation programs.[4] Because the individual Plaintiffs do not satisfy the threshold issue of standing, the Court need not consider whether declaratory relief would be appropriate.

However, a declaration concerning the lawfulness of the consent forms, to the extent that they required the individual Plaintiffs to take a secrecy oath, would redress their alleged injuries. Plaintiffs assert that these oaths cause ongoing harm because they prohibit the individual Plaintiffs from seeking treatment and counseling for the harm inflicted by the experiments. Because a declaration that the oaths were unlawful would allow the individual Plaintiffs to speak freely about their experiences, they

---

[4] In Bilbrey, two elementary school students alleged that their search by two school officials was unconstitutional. 738 F.2d at 1464. Although the named plaintiffs had moved on to high school by the time of their appeal, the court noted that they represented a class "including future persons attending Columbia County Elementary Schools" and, as a result, there were "persons before the court, other than appellants, who [stood] to benefit from such" declaratory relief. Id. at 1471.
In Zolin, the plaintiffs challenged county officials' refusal to provide sign-language interpreters to enable deaf individuals to serve as jurors. 812 F.2d at 1106. The plaintiffs argued that the officials' decision violated their rights under the Fourteenth Amendment and under Section 504 of the Rehabilitation Act. Id. Thus, a declaration could have redressed their injuries and those of class members because it could prevent future harm.

12

have standing to assert their declaratory relief claim concerning the consent forms and secrecy oaths. Further, such relief would avoid potential future litigation by clarifying whether the veterans may discuss their experiences without facing consequences.

Accordingly, the Court dismisses with prejudice Plaintiffs' declaratory relief claim concerning the lawfulness of Defendants' testing program because a declaration would not redress their past injuries or prevent future harm to them. Plaintiffs' claim for a declaration on the lawfulness of the consent forms, to the extent that they required the individual Plaintiffs to take a secrecy oath, may go forward.

II. Dismissal under Rule 12(b)(6)

A. Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550

13

U.S. at 555).

B. Analysis

Defendants argue that Plaintiffs have failed to state a claim with regard to their requests for documents and medical care, which Plaintiffs assert under 5 U.S.C. § 702. As mentioned above, section 702 provides a right of judicial review for persons who have suffered a legal wrong based on agency action or inaction. The scope of this right is limited. The statute, in relevant part, provides:

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. For section 702 claims, 5 U.S.C. § 706 "prescribes standards for judicial review and demarcates what relief a court may (or must) order." Rosemere, 581 F.3d at 1172 n.2. When a plaintiff asserts an agency's failure to act, a court can grant relief by compelling "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A "'claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.'" Sea Hawk Seafoods, Inc. v. Locke, 568 F.3d 757, 766 (9th Cir. 2009) (quoting Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004)) (emphasis in original).

1. Claims for Notice and Production of Documents

Plaintiffs cite the Wilson Directive, AR 70-25 (1962) and a DOJ opinion letter to show that Defendants had a legal duty to act. AR 70-25 (1962), which incorporates language from the Wilson

14

Directive, states that a participant "will be told as much of the nature, duration, and purpose of the experiment, the method and means by which it is to be conducted, and the inconveniences and hazards to be expected, as will not invalidate the results" and "will be fully informed of the effects upon his health or person which may possibly come from his participation in the experiment." AR 70-25 ¶ 4(a)(1) (1962). The DOJ letter states that the CIA has a legal duty to notify participants because the agency placed test participants in harm's way. SAC Ex. A at A-006; see also Restatement (Second) of Torts § 321 ("If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.").

AR 70-25 (1962) and the DOJ letter support a claim under section 702 for which the Court could compel discrete agency action. The 1962 version of AR 70-25 mandated the disclosure of information so that volunteers could make informed decisions. Army regulations have the force of law. See Nat'l Med. Enters. v. Bowen, 851 F.2d 291, 293 (9th Cir. 1988); Kern Copters, Inc. v. Allied Helicopter Svc., Inc., 277 F.2d 308, 310 (9th Cir. 1960). Plaintiffs allege that Defendants defaulted on this legal requirement. Plaintiffs also allege that the CIA remains under a legal duty to disclose, as explained by the DOJ opinion letter. Even though this is not a statutory duty, the government can be held liable for the breach of its duty to warn, so long as the decision on whether to warn is not considered a discretionary act. See In re Consol. U.S. Atmospheric Testing Litig., 820 F.2d 982,

996-99 (9th Cir. 1987); see generally 28 U.S.C. § 2680(a). Here, an Army regulation, buttressed by the DOJ opinion, suggests that Defendants had a non-discretionary duty to warn the individual Plaintiffs about the nature of the experiments. See AR 70-25 ¶ 4(a)(1) (1962).[5]

Defendants argue that, because Plaintiffs failed to exhaust administrative remedies under the Freedom of Information Act (FOIA) and the Privacy Act, they fail to state an APA claim. This argument fails because Plaintiffs' claims do not arise under the FOIA or the Privacy Act, but rather under Defendants' own memoranda and regulations, and the common-law duty to warn.

2. Claims for Medical Care

Defendants assert that, because government-provided medical care for veterans is governed by statute, Plaintiffs' claim for medical care must fail to the extent that it relies on an alleged contractual obligation. Plaintiffs assert that their right to medical care arises from "obligatory duties" imposed by Defendants' own regulations. Opp'n at 7. They dispute Defendants' assertion that this claim arises under a contract theory.

To demonstrate their entitlement to medical care, Plaintiffs cite AR 70-25 (1962). As noted above, the 1962 version of the regulation provided volunteers with the safeguard of requiring "medical treatment and hospitalization . . . for all casualties." AR 70-25 ¶ 5(c) (1962).

---

[5] AR 70-25 ¶ 4(a)(1) (1962) requires notice to the extent that it would not "invalidate the results," which suggests that Defendants had discretion at the time of the experiments on the scope of what volunteers would be told. Because the results can no longer be invalidated, AR 70-25 (1962) does not give Defendants discretion concerning disclosure now.

16

Defendants concede that AR 70-25 (1962) accords a right to medical care, but contend that such care was "an 'additional safeguard' available to address a medical need during an experiment rather than care over the course of a test participant's lifetime." Defs.' Reply in Support of Mot. to Dismiss of August 14, 2009 at 4-5. The language of the regulation does not require this conclusion. The safeguards were put in place to protect a volunteer's health. The fact that symptoms appear after the experiment ends does not obviate the need to provide care.

Defendants also maintain that ordering the Army to provide medical care would conflict with 10 U.S.C. § 1074, which states in relevant part,

> Under joint regulations to be prescribed by the administering Secretaries, a member of a uniformed service described in paragraph (2) is entitled to medical and dental care in any facility of any uniformed service.

10 U.S.C. § 1074(a). The Court does not find a conflict. Although the statute creates an entitlement for active service members and certain former members to medical and dental care, it does not bar the Court from granting injunctive relief to vindicate Plaintiffs' claims.

Because Plaintiffs allege that their medical care has been wrongfully withheld and that they have been injured by Defendants' failure to act, they have sufficiently alleged a claim for medical care under section 702.

III. Defendants' Alternative Motion for Summary Judgment

    A.    Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the

17

evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

B. Analysis

Defendants argue that they are entitled to summary judgment as a matter of law because Plaintiffs' claims are time-barred. As noted above, 28 U.S.C. § 2401(a) provides a six-year limitations period for civil actions commenced against the United States. Defendants assert that the individual Plaintiffs knew of their injuries "either immediately or shortly after their tests ended," which was over six years prior to the filing of this action. Defs.' Mot. to Dismiss of Jan. 5, 2010, at 14.

Plaintiffs' claims concerning Defendants' failure to provide medical care and proper notice of the experiments' health effects arise under 5 U.S.C. § 706(1). Several courts have held that there is no applicable statute of limitations for claims under section 706(1). See Pub. Citizen, Inc., 2008 WL 4532540, at *7 (citing Am. Canoe Ass'n v. U.S. EPA, 30 F. Supp. 2d 908, 925 (E.D. Va. 1998) (stating that "application of a statute of limitations to a claim of unreasonable delay is grossly inappropriate"); see also Wilderness Soc'y v. Norton, 434 F.3d 584, 588 (D.C. Cir. 2006) (stating that the D.C. Circuit has "repeatedly refused to hold that actions seeking relief under 5 U.S.C. § 706(1) . . . are time-barred if initiated more than six years after an agency fails to meet a statutory deadline"). Defendants do not provide contrary authority, but instead argue that Plaintiffs do not assert valid

18

APA claims; the Court rejected this argument above.

Plaintiffs' claims concerning the consent forms and secrecy oaths, both of which appear to arise under the United States Constitution, might be time-barred by section 2401(a). At this early stage, however, the record does not offer the Court a basis to rule on the issue as a matter of law. The evidence proffered by Defendants addresses four of the six individual Plaintiffs' knowledge of their injuries allegedly attributable to the testing at Edgewood; this evidence does not shed light on these Plaintiffs' awareness as to the lawfulness of their consent or secrecy oaths.[6] Thus, the Court finds it premature to decide whether Plaintiffs' claims concerning the consent forms and their secrecy oaths are barred by the statute of limitations.

Accordingly, the Court denies Defendants' Alternative Motion for Summary Judgment as to Plaintiffs' claims under the APA; these claims are not time-barred. The Court denies without prejudice Defendants' Alternative Motion for Summary Judgment as to Plaintiffs' other claims; Defendants may renew their motion after a fuller record has been developed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss (Docket Nos. 34 and 57) and DENIES Defendants' Alternative Motion for Summary Judgment. (Docket No. 57.) The organization Plaintiffs' claim for declaratory relief that the Feres doctrine is unconstitutional is

---

[6] Also, given that the individual Plaintiffs took an oath not to discuss the testing program, which presumably delayed their filing of this action, Defendants may be equitably estopped from asserting a statute of limitations defense.

19

dismissed with prejudice for lack of subject matter jurisdiction. Plaintiffs' claim for declaratory relief on the lawfulness of the testing program is dismissed with prejudice for lack of standing. Defendants' Motions to Dismiss are denied with regard to Plaintiffs' other claims.

In accordance with the Court's Case Management Order of December 23, 2009, discovery responses shall be due thirty days from the date of this Order. (Docket No. 54.) A further case management conference will be held on January 5, 2012.

IT IS SO ORDERED.

Dated: January 19, 2010

CLAUDIA WILKEN
United States District Judge

20