1   IAN GERSHENGORN
        Deputy Assistant Attorney General
2   MELINDA L. HAAG
        United States Attorney
3   VINCENT M. GARVEY
        Deputy Branch Director
4   CAROLINE LEWIS WOLVERTON
        District of Columbia Bar No. 496433
5       Senior Counsel
        Telephone: (202) 514-0265
6       E-mail:  caroline.lewis-wolverton@usdoj.gov
    KIMBERLY L. HERB
7       Illinois Bar No. 6296725
        Trial Attorney
8   LILY SARA FAREL
        North Carolina Bar No. 35273
9       Trial Attorney
    BRIGHAM J. BOWEN
10      District of Columbia Bar No. 981555
        Trial Attorney
11  Civil Division, Federal Programs Branch
    U.S. Department of Justice
12  P.O. Box 883
    Washington, D.C.  20044
13  Facsimile:  (202) 616-8470

14  Attorneys for DEFENDANTS

15                     UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17                          OAKLAND DIVISION

18

19  VIETNAM VETERANS OF AMERICA, *et al.*,      Case No.   CV 09-0037-CW (JL)

20              Plaintiffs,                      Noticed Motion Date and Time:
                                                 October 7, 2010
21        v.                                     2:00 p.m.

22  CENTRAL INTELLIGENCE AGENCY, *et al.*,
                                                 DEFENDANTS' MOTION FOR A
23              Defendants.                      PROTECTIVE ORDER STAYING
                                                 FURTHER DISCOVERY AND FOR
24                                               MODIFICATION OF CASE
                                                 MANAGEMENT ORDER
25

26

27

28

NO. C 09-37 CW
NOTICE OF MOT. AND DEFS.' MOT. FOR PROTECTIVE ORDER AND FOR MODIFICATION OF CASE MGMT. ORDER

1
2

## NOTICE OF MOTION AND DEFENDANTS' MOTION FOR A PROTECTIVE ORDER STAYING FURTHER DISCOVERY AND FOR MODIFICATION OF CASE MANAGEMENT ORDER

3
4

Please take notice that on October 7, 2010, at 2:00 p.m., before the Honorable Claudia

5

Wilken, Courtroom No. 2, 4th floor, 1301 Clay Street, Oakland, California, 94612, or as soon

6

thereafter as counsel may be heard by the Court, Defendants, by and through their attorneys, will

7

move pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for a protective order

8

staying further discovery and pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure

9

and Local Civil Rule 16-2(d) for modification of the Case Management Order.[1]

10

Defendants' motion is based on this Notice, their accompanying Memorandum, the

11

Declarations of Michael Kilpatrick, Patricia Camerisi and Caroline Lewis Wolverton and

12

attachments thereto, the pleadings on file in this matter, and on such oral argument as the Court

13

may permit.  A proposed order and revised case management schedule is attached.

In accordance with Fed. R. Civ. P. 26(c) and Local Civil Rule 16-2(d)(2), the

14

undersigned certifies that she has in good faith met and conferred with counsel for Plaintiffs in

15

effort to resolve Defendants' requests without Court intervention and that Plaintiffs oppose

16

Defendants' requests.

17
18
19
20
21
22
23
24
25
26
27
28

---

[1] This case has been referred to Magistrate Judge Larson for discovery matters.  Dkt No. 79.  However, because Defendants seek modification of the Case Management Order entered by Judge Wilken, the motion is noticed for hearing before Judge Wilken.

1    Dated: August 27, 2010                Respectfully submitted,

2                                          IAN GERSHENGORN
                                              Deputy Assistant Attorney General
3                                          MELINDA L. HAAG
                                              United States Attorney
4                                          VINCENT M. GARVEY
                                              Deputy Branch Director
5

6                                              _/s/ Caroline Lewis Wolverton_____
                                           CAROLINE LEWIS WOLVERTON
7                                              Senior Counsel
                                           KIMBERLY L. HERB
8                                              Trial Attorney
                                           LILY SARA FAREL
9                                              Trial Attorney
                                           BRIGHAM J. BOWEN
10                                             Trial Attorney
                                           U.S. Department of Justice
11                                         Civil Division, Federal Programs Branch
                                           P.O. Box 883
12                                         Washington, D.C.  20044
                                           Telephone: (202) 514-0265
13                                         Facsimile: (202) 616-8470
                                           E-mail: caroline.lewis-wolverton@usdoj.gov
14

15
                                           Attorneys for Defendants
16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GENERAL ORDER 45 ATTESTATION**

I, Caroline Lewis Wolverton, am the ECF User filing this Motion for a Protective Order

Staying Further Discovery and for Modification of Case Management Order.  In compliance with

General Order 45, X.B., I hereby attest that Michael Kilpatrick and Patricia Cameresi have each

concurred in the filing of their Declarations.


Dated: August 27, 2010                                    _/s/ Caroline Lewis Wolverton___
                                                          Caroline Lewis Wolverton
                                                          Attorney for Defendants

1  IAN GERSHENGORN
       Deputy Assistant Attorney General
2  MELINDA L. HAAG
       United States Attorney
3  VINCENT M. GARVEY
       Deputy Branch Director
4  CAROLINE LEWIS WOLVERTON
       District of Columbia Bar No. 496433
5      Senior Counsel
       Telephone: (202) 514-0265
6      E-mail: caroline.lewis-wolverton@usdoj.gov
   KIMBERLY L. HERB
7      Illinois Bar No. 6296725
       Trial Attorney
8  LILY SARA FAREL
       North Carolina Bar No. 35273
9      Trial Attorney
   BRIGHAM J. BOWEN
10     District of Columbia Bar No. 981555
       Trial Attorney
11 Civil Division, Federal Programs Branch
   U.S. Department of Justice
12 P.O. Box 883
   Washington, D.C. 20044
13 Facsimile: (202) 616-8470

14 Attorneys for DEFENDANTS

15

16                 UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
17                      OAKLAND DIVISION

18 VIETNAM VETERANS OF AMERICA,       )   Civil Action No. C 09-0037 CW
   *et al.*,                          )
19                                    )   DEFENDANTS' MEMORANDUM IN
                                      )   SUPPORT OF THEIR MOTION FOR A
20           Plaintiffs,              )   PROTECTIVE ORDER STAYING
                                      )   FURTHER DISCOVERY AND FOR
21       vs.                          )   MODIFICATION OF CASE
                                      )   MANAGEMENT ORDER
22 CENTRAL INTELLIGENCE AGENCY,       )
   *et al.*,                          )
23                                    )
             Defendants.              )
24 _____)

25

26

27

1

**INTRODUCTION**

2      The Department of Defense ("DoD") is in the midst of a large-scale investigation to

3  identify servicemembers who participated in chemical and biological tests by the Army and

4  compile details about the individual tests.  Once the investigation is complete, the results —

5  together with the tens of thousands of pages of documents already produced and the results of

6  previous investigations which have been produced or are publicly available — should provide the

7  bulk of the information necessary to resolve the claims that remain before the Court.  Any

8  additional discovery that is needed can then be undertaken far more efficiently and expeditiously

9  than by way of parallel discovery pursuant to Plaintiffs' wide-ranging discovery requests.

10      With respect to the Central Intelligence Agency ("CIA"), further discovery in advance of

11  completion of DoD's ongoing investigation likewise would not be warranted.  CIA has only a

12  limited nexus to research conducted on military personnel, and Plaintiffs have not alleged that

13  CIA conducted testing of service personnel independently of DoD.  Moreover, CIA conducted

14  extensive searches during the 1970s and 1980s of all of its records concerning CIA's behavioral

15  research programs.  In responding to discovery in this suit, CIA has reviewed the results of those

16  searches and conducted additional searches of its records for information relevant to Plaintiffs'

17  claims.  CIA has produced responsive documents identified in these searches to the extent they

18  are not privileged.  Accordingly, continuing discovery of the CIA during the pendency of DOD's

19  investigation would be inefficient and unwarranted.

20      These circumstances establish good cause for entry of a protective order pursuant to Fed.

21  R. Civ. P. 26(c) staying Defendants' obligation to respond to discovery requests and any further

22  discovery requests until the DoD investigation is complete and for a corresponding modification

23  of the Case Management Order pursuant to Fed. R. Civ. P. 16(b)(4) and Local Civil Rule

24  16-2(d).[1]

25

26      [1] This case has been referred to Magistrate Judge Larson for discovery matters.  Dkt No.
   79.  However, because Defendants' request for a stay of further discovery implicates

27

28

**BACKGROUND**

This case arises out of chemical testing by the Army during the Cold War era.  Each of the six named individual Plaintiffs, as well as the two proposed additional individual plaintiffs, is alleged to have undergone chemical testing at Edgewood Arsenal, an Army facility in Maryland.  Second Am. Compl. ¶¶ 29-87 (Dkt. No. 53); Proposed Third Am. Compl. ¶¶ 201-230 (Dkt No. 88-1).  Plaintiffs seek declaratory and injunctive relief requiring Defendants to release them from secrecy oaths; notify them and all military test participants of the tests in which they participated, their exposures and any known health effects; to search for and provide participants, as well as the Department of Veterans Affairs ("VA") with available documentation concerning the tests; and to provide participants with medical examinations and care.  Plaintiffs further request a declaration that consent forms signed by test participants are invalid, that the tests were unlawful and that the "*Feres* doctrine" — the Supreme Court's interpretation of the Federal Torts Claims Act ("FTCA") to bar tort suits against the government for injuries arising out of or incident to military service, first articulated in *Feres v. United States*, 340 U.S. 135 (1950) — is unconstitutional.  *See* Second Am. Compl.

On January 19, 2010, the Court dismissed Plaintiffs' claim that the tests were unlawful and the challenge to the *Feres* doctrine, and identified three issues that will proceed:  "the lawfulness of the consent forms, to the extent that they required the individual Plaintiffs to take a secrecy oath"; whether Defendants may be compelled to provide test participants with information about the nature of the tests based on the Wilson Directive, Army regulation 70-25

---

modification of the Case Management Order entered by Judge Wilken, the motion is noticed for hearing before Judge Wilken.  Defendants will separately present to Magistrate Judge Larson a motion for a Rule 26(c) protective order limiting the scope of discovery to the information relevant to the claims pending in this action.  Defendants first sought a protective order staying further discovery and limiting its scope on June 3, 2010, via a statement of discovery dispute in accordance with Magistrate Judge Larson's Standing Order ¶ 8.  *See* Dkt. No. 93.  On August 6, 2010, Magistrate Judge Larson ordered the parties to brief discovery disputes in accordance with Civil Local Rules 7-2 to 7-5.  Dkt No. 120.

1  (1962), and the Department of Justice ("DOJ") document cited in the Second Amended

2  Complaint; and whether test participants are entitled to medical care.  Order of Jan. 19, 2010 at

3  12, 15, 17 (Dkt. No. 59).

### 1.  The Ongoing DoD Investigation and Previous Investigations of Army Chemical and Biological Test Programs

Consistent with congressional direction and under Congress's supervision, DoD is in the

midst of an investigation to identify all servicemembers who participated in the Army's

chemical and biological tests and to compile as much information about individual tests and

exposures as possible.  Decl. of Michael Kilpatrick, DoD's Director of Strategic

Communications, Office of the Under Secretary of Defense for Health Affairs, ¶¶ 10, 13-15

(Ex. 1); *see also, e.g.*, GAO, "Chemical and Biological Defense: DOD Needs to Continue to

Collect and Provide Information on Tests and Potentially Exposed Personnel," GAO-04-410

(Washington, D.C.: May 14, 2004), available at http://www.gao.gov/new.items/d04410.pdf.

The Statement of Work describing the DoD investigation, conducted through its

contractor Battelle Memorial Institute, provides for the Chemical, Biological, Radiological, and

Nuclear Information Analysis Center ("CBRNIAC") to "analyze all documents at [relevant

records] sites for information on personnel potentially exposed to chemical and/or biological

agents while involved in tests and other ancillary events," and to collect pertinent information

including "the test names, test objectives, chemical or biological agents involved, and number of

servicemembers and other personnel potentially affected by each test from 1942 to the present

timeframe."  Kilpatrick Decl. ¶ 13 & Ex. 1 thereto (Stmnt. of Work, CBRNIAC Task 729 ¶ 3.5).

DoD is compiling the information on individual exposures in a database known as the

"Chemical and Biological Tests Repository" or ("Chem-Bio Database").  *Id.*  Defendants have

produced to Plaintiffs a copy of the database as of March 2011.  Decl. of Caroline Wolverton

¶ 2 (Ex. 3).

A primary objective of DoD's investigation is to enable test participants to receive

pertinent information about the tests.  Kilpatrick Decl. ¶ 15.  Once test information is gathered

1    for a given participant, DoD enters it into the above-referenced Chem-Bio database and

2    transmits it to VA so that VA may notify the participant of the potential exposure and, in case

3    the individual has health concerns, provide guidance on scheduling a free clinical examination

4    at a VA health care facility, applying for VA health care benefits, and filing a VA disability

5    claim.  *Id.*  The DoD investigation is scheduled for completion in September 2011.  *Id.* ¶ 14.

6         In addition to this ongoing DoD investigation, the Army's chemical and biological tests

7    involving human subjects have been the subject of previous large-scale investigations, the

8    reports of which are either publicly available or have been produced to Plaintiffs.  *See id.* ¶¶ 3-

9    10.  In 1975 and 1976, in response to congressional and public inquiry regarding the Army's

10   role in researching hallucinogenic drugs, the Inspector General of the Department of the Army

11   ("DAIG") conducted an historical research investigation of the Army's chemical agent testing

12   between 1950 and 1975.  *Id.* ¶ 3.  The following year, the Army published a report on the

13   biological testing program between 1942 and 1977 at Fort Detrick, Maryland, which is publicly

14   available.  *Id.*  DoD has also expended considerable resources to determine long-term health

15   effects on test participants, including on a follow-up study of test subjects exposed to LSD

16   conducted in the late 1970s and investigations conducted by the National Research Council in

17   the early 1980s and 2003 on possible long-term health effects of chemical substances tested at

18   Edgewood Arsenal.  *Id.* ¶¶ 4–9.  As a result of those investigations, congressional and other

19   public inquiries concerning the Army's tests since the 1970s, the subject has been aired

20   extensively.  *Id.* ¶ 11.

21        Plaintiffs have served 193 document requests that seek extensive records pertaining to

22   chemical and biological tests conducted over a period spanning more than 20 years and which

23   began more than 60 years ago.  Wolverton Decl., Ex. 1 thereto (Pls.' First, Second, Third and

24   Fourth Sets of Reqs. for Prod. of Docs.) (each instructing that "Unless otherwise specified, each

25   request calls for all documents created, received or dated between January 1, 1940 and the date

26   of YOUR response to the request," Instr. 10 to each set).  The number of very old records

27

28

implicated by the requests is enormous.  Kilpatrick Decl. ¶ 17.  Conducting searches for all of the records that Plaintiffs seek — which would require substantial by-hand review — would require an enormous amount of time and resources.  *Id.*   Indeed, the ongoing DoD investigation alone has spanned years and cost millions of dollars.  *Id.*

### 2.  CIA's Previous Exhaustive Searches of Its Records of Human Testing and the Limited Nexus to Testing on Military Personnel

Behavioral research conducted or sponsored by the CIA likewise has been the subject of substantial congressional and public attention.  Decl. of Patricia Cameresi, CIA Associate Information Review Officer for the Directorate of Science & Technology, ¶ 6 (Ex. 2).  During the 1970s and 1980s, the CIA conducted exhaustive hand searches of its files in order to identify all records in its possession relating to any drug testing program sponsored by the CIA in response to Congressional investigations, executive investigations, numerous requests under the Freedom of Information Act ("FOIA"), civil litigation, and an internal investigation commissioned by the Director of Central Intelligence to notify human subjects of CIA research programs.  *Id.* ¶ 7.  Information about the CIA's behavioral research programs that resulted from those searches has been made available to the public.  *Id.* ¶¶ 6-7.  Accordingly, after 1975, the topic of CIA's behavioral research programs became "one of the most thoroughly investigated and exposed aspects of the CIA's past activities."  *Id.* ¶ 5.

The Declaration of CIA Associate Information Review Officer for the Directorate of Science & Technology Patricia Cameresi explains that "[a]fter scouring the Agency for documents through these investigations and conducting extensive interviews of CIA personnel and DoD personnel, the Agency has concluded that it did not fund or conduct drug research on military personnel."  *Id.* ¶ 12.  The Declaration explains that based on the extensive searches of CIA records relating to its behavioral research programs only a discrete portion even arguably could relate to Plaintiffs' claims:  those concerning "Project OFTEN," which "contemplated, but did not consummate, funding on military volunteer subjects at Edgewood Arsenal."  *Id.* ¶ 8. CIA has produced to Plaintiffs the results of its review of its records concerning Project

No. C 09-37 CW

Defs.' Mem. In Supp. Of Mot. To Stay Further Discovery and Modification of Case Mgmt. Order          5

1    OFTEN, as well as the results of its searches for documents relating to the named Plaintiffs,

2    Edgewood Arsenal (where Plaintiffs allege to have volunteered to participate in DoD drug

3    research) and Fort Detrick, except for the documents identified as privileged on Defendants'

4    privilege log. *Id.* ¶¶ 12-13.  In addition, CIA has provided Plaintiffs outside of discovery over

5    20,000 pages of documents concerning CIA's behavioral research programs, including

6    documents relating to its broadest such program, named MKULTRA, even though that program

7    did not involve servicemembers as test subjects.  Cameresi Decl. ¶¶ 6, 12, 24.

8        Additional searches beyond these topics in response to Plaintiffs' extensive and wide-

9    ranging discovery requests would be highly unlikely to identify additional documents relevant to

10   Plaintiffs' claims.  *Id.* ¶ 23.  However, they would impose an extreme burden on CIA's limited

11   resources, as Ms. Cameresi's Declaration explains.  *Id.* ¶¶ 15-23.

12       **3.  Defendants' Productions to Plaintiffs**

13       In response to Plaintiffs' first set of requests for production of documents, Defendants

14   produced over 14,000 pages of documents and a copy of the Chem-Bio database that, as

15   described above, DoD is compiling through its ongoing investigation and that identifies each

16   servicemember test participant, the substance(s) tested, and provides additional information

17   about the tests, including the amount administered and route of administration (e.g., oral), where

18   available.  Wolverton Decl. ¶ 2.  The Department of Veterans Affairs ("VA") has produced

19   another approximately 16,000 pages of documents under Fed. R. Civ. P. 45.  *Id.* ¶ 3.  In

20   addition, as described above, CIA has provided Plaintiffs outside of discovery over 20,000

21   pages of documents concerning CIA's behavioral research programs.  Cameresi Decl. ¶¶ 6, 12.

22                          **ARGUMENT**

23       An orderly plan for discovery in light of the massive DoD investigation currently

24   underway is extremely important given the magnitude of information sought by Plaintiffs'

25   discovery requests and the enormous expenditures of time and resources described above that

26   would be necessary to produce all of the information implicated by the requests, which date

27

28

1    back as far as 60 years.  Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, "[t]he

2    court may, for good cause, issue an order to protect a party . . . from . . . undue burden or

3    expense," including "specifying terms, including time . . . for . . . discovery."  Fed. R. Civ. P.

4    26(c)(1)(B); *accord, e.g.*, *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004); *see also*

5    8A Charles Alan Wright, *et al.*, *Federal Practice and Procedure*, § 2036 at 163-65 (2010)

6    ("[T]he court has considerable latitude in focusing on the nature of the harm advanced to justify

7    the [protective] order.  Thus a court may be as inventive as the necessities of a particular case

8    require in order to achieve the benign purposes of the rule."); *id.* § 2038 at 188 ("The court has

9    great flexibility in devising appropriate terms and conditions for discovery in a given case.").

10   Good cause supports entry of a protective order staying Defendants' obligation to respond to

11   Plaintiffs' discovery requests until the DoD investigation concludes.

12          Plaintiffs already have available to them substantial information relating to the tests at

13   issue in this case.  As described above and in the Declarations of Michael Kilpatrick of DoD and

14   Patricia Cameresi of CIA, the government's human testing programs have been the subject of

15   multiple investigations, congressional inquiries and public requests, and a great deal of

16   information about the tests has been publicly available for many years.  Defendants have

17   produced a great number of documents concerning the tests, including reports on possible

18   associated health effects and a copy of the DoD Chem Bio Database as of March 2010.[2]  In

19   addition, CIA has provided to Plaintiffs documents relating to its behavioral research programs

20   generally, and Plaintiffs are therefore effectively in the same position as CIA to review those

21   documents.

22   ─────────────────────

23          [2] Our request for a stay notwithstanding, DoD and Army are willing, outside of discovery,
     to continue searching for documents related to the Army's chemical and biological agent testing,
24   including the documents listed in the footnotes and bibliography of the original DA IG
     investigation, documents pertaining to health effects of tested substances, and documents relating
25   to test volunteers' consent to the tests, as the Kilpatrick Declaration explains they have been
     doing, Kilpatrick Decl. ¶ 16, and to produce identified documents on a rolling basis to the extent
26   that they are not privileged or otherwise protected from disclosure.

27

28

1    The ongoing DoD investigation's compilation of detailed information about individual

2  servicemember tests should largely, if not altogether, complete the picture of the tests in which

3  the individual Plaintiffs and other former Army servicemembers participated and provide the

4  bulk of any additional information necessary to decide the remaining claims in this case: "the

5  lawfulness of the consent forms, to the extent that they required the individual Plaintiffs to take

6  a secrecy oath"; whether Defendants may be compelled to provide test participants with

7  information about the nature of the tests based on the Wilson Directive, Army regulation 70-25

8  (1962), and the DOJ document cited in the complaint; and whether test participants are entitled

9  to medical care.  Order of Jan. 19, 2010 at 12, 15, 17 (Dkt. No. 59).  As the Declaration of

10  Michael Kilpatrick explains, DoD's ongoing investigation is designed "to consolidate as much

11  information as possible about the test volunteers, including their names, the chemical or

12  biological agent each was exposed to, and the amount administered and route of administration

13  (e.g., oral) where available."  Kilpatrick Decl. ¶ 13.

14    In conjunction with the numerous investigations already conducted regarding testing and

15  health effects associated with exposure to test substances, as well as documents already

16  provided in discovery by Defendants, the post-investigation sum of all of this information about

17  the tests in which Army servicemembers participated should largely sufficient to decide the

18  claims remaining in the case.  To the extent any further discovery may be warranted at that time,

19  such discovery can then be targeted appropriately.

20    By contrast, Plaintiffs seek to have Defendants wastefully expend tremendous resources

21  and time to satisfy vastly overbroad discovery demands.  *See* Ex. 1 to Wolverton Decl.  To the

22  extent that Plaintiffs' discovery requests seek relevant information that has not already been

23  produced or is not available publicly, the DoD investigation should produce much of that

24  information.  Again, once the ongoing massive gathering of information about the Army's tests

25  is complete, the parties will be better positioned to assess the need for and to focus additional

26  discovery, if any.

27

28

1    Further discovery of the CIA also is not warranted at this juncture.  First, Plaintiffs do

2    not allege that CIA conducted testing on military personnel independently of DoD.  Further, the

3    CIA exhaustively searched its records in the 1970s and 1980s for information relating to all

4    Agency-sponsored drug testing programs, and CIA has conducted additional searches of its

5    records for information relevant to Plaintiffs' claims.  CIA has produced responsive documents

6    identified in these searches to the extent they are not privileged.  Cameresi Decl. ¶¶ 12-13.

7    Moreover, CIA's nexus to drug research on military personnel was limited to DOD tests

8    contemplated for a single substance in 1973 that were not consummated before CIA terminated

9    its funding of the program.  *Id*. ¶¶ 8-12.  Given CIA's limited nexus to Plaintiffs' claims,

10   interests of efficiency and conservation of taxpayer-funded resources counsel heavily in favor of

11   a stay until completion of DoD's investigation.

12        The DoD investigation is scheduled for completion in September 2011.  The Court

13   should modify the Case Management Order so that the present case deadlines are extended to

14   accommodate a completion-of-fact-discovery deadline that follows conclusion of the DoD

15   investigation and a reasonable period of time for the parties to determine whether any additional

16   discovery is necessary and to conduct any such discovery.  The current discovery deadline is

17   May 31, 2011.  Dkt No. 54.  An extension of that deadline to five months following completion

18   of the DoD investigation would require a nine-month extension of the current case schedule, as

19   reflected in the attached proposed order.

20                                      **CONCLUSION**

21        For the foregoing reasons, the Court should grant Defendants' motion and (i) enter a

22   protective order staying Defendants' obligation to respond to Plaintiffs' discovery requests until

23   completion of DoD's investigation and any further discovery requests, and (ii) modify the Case

24   Management Order to extend the remaining deadlines by nine months.

25

26

27

28

1    Dated: August 27, 2010                    Respectfully submitted,

2
                                               IAN GERSHENGORN
3                                                 Deputy Assistant Attorney General
                                               MELINDA L. HAAG
4                                                 United States Attorney
                                               VINCENT M. GARVEY
5                                                 Deputy Branch Director

6
                                                 _/s/ Caroline Lewis Wolverton_
7                                               CAROLINE LEWIS WOLVERTON
                                                  Senior Counsel
8                                               KIMBERLY L. HERB
                                                  Trial Attorney
9                                               LILY SARA FAREL
                                                  Trial Attorney
10                                              BRIGHAM J. BOWEN
                                                  Trial Attorney
11                                              U.S. Department of Justice
                                                Civil Division, Federal Programs Branch
12                                              P.O. Box 883
                                                Washington, D.C.  20044
13                                              Telephone: (202) 514-0265
                                                Facsimile: (202) 616-8470
14                                              E-mail: caroline.lewis-wolverton@usdoj.gov

15
                                               Attorneys for Defendants
16

17

18

19

20

21

22

23

24

25

26

27

28   No. C 09-37 CW
     DEFS.' MEM. IN SUPP. OF MOT. TO STAY FURTHER DISCOVERY AND MODIFICATION OF CASE MGMT. ORDER        10