GORDON P. ERSPAMER (CA SBN 83364)
GErspamer@mofo.com
TIMOTHY W. BLAKELY (CA SBN 242178)
TBlakely@mofo.com
ADRIANO HRVATIN (CA SBN 220909)
AHrvatin@mofo.com
STACEY M. SPRENKEL (CA SBN 241689)
SSprenkel@mofo.com
DANIEL J. VECCHIO (CA SBN 253122)
DVecchio@mofo.com
DIANA LUO (CA SBN 233712)
DLuo@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiffs
Vietnam Veterans of America; Swords to Plowshares; Veterans
Rights Organization; Bruce Price; Franklin D. Rochelle; Larry
Meirow; Eric P. Muth; David C. Dufrane; And Wray C. Forrest

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| VIETNAM VETERANS OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL INTELLIGENCE AGENCY, et al., <br><br> Defendants. | Case No.   CV 09-0037-CW <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER STAYING FURTHER DISCOVERY AND FOR MODIFICATION OF CASE MANAGEMENT ORDER** <br><br> Date:   Oct. 7, 2010 <br> Time:   2:00 p.m. <br> Ctrm:   2, 4th Floor <br> Judge:   Hon. Claudia Wilken <br><br> Complaint Filed:   January 7, 2009 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

III.  ARGUMENT ....................................................................................................... 6

    A.  Defendants Have Not Met Their Heavy Burden to Show That a Protective
        Order Is Appropriate .............................................................................. 6

        1.  The Statement of Work Concerns Only a Small Portion of Relevant
            Information ................................................................................... 7

        2.  There Is No Guarantee That the Investigation Will Be Completed,
            Nor Does the Investigation Address Defendants' Obligations to
            Provide Notice and Healthcare ...................................................... 9

        3.  Defendants' Efforts to Avoid Discovery into the Extent of the
            CIA's Involvement in the Testing Programs .................................. 10

    B.  Defendants Did Not Even Attempt to Show "Good Cause" to Modify Case
        Management Order ................................................................................... 11

IV.  CONCLUSION .................................................................................................... 13

1

2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

**CASES**

4

5
*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992)............................................................... 6

6
*Hynix Semiconductor, Inc. v. Rambus Inc.*,
250 F.R.D. 452 (N.D. Cal. 2008) ...................................................... 11

7

8
*Lehnert v. Ferris Faculty Ass'n--MEA-NEA*,
556 F. Supp. 316 (W.D. Mich. 1983) .................................................. 6

9

10
*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993).................................................................. 6

11
*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004)............................................................ 6

12

13
*Shoen v. Shoen*
5 F.3d 1289 (9th Cir. 1993)................................................................ 6

14

15
*Zivkovic v. S. Cal. Edison Co.*,
302 F.3d 1080 (9th Cir. 2002).......................................................... 11

16

17

**RULES & OTHER AUTHORITIES**

18
Fed. R. Civ. P. 16(b)(4)........................................................................ 11

19
6 James W. Moore, *Moore's Federal Practice* § 26.104[1] (3d ed. 2010)................................... 6

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

For four decades (or more), Defendants have failed to fulfill their legal and moral obligations to the military personnel deliberately exposed to toxic substances as part of Defendants' chemical and biological warfare testing programs.  In January of this year, the Court denied Defendants' motion to dismiss Plaintiffs' claims to enforce Defendants' obligations to provide notice and health care to the test subjects, and ordered Defendants to respond to Plaintiffs' pending discovery requests within thirty days.  Instead of engaging in earnest discovery practice, Defendants have shirked their discovery obligations and engaged in delay tactics, failing to produce witnesses for key deposition topics and refusing even to agree to a routine protective order to permit the production of information concerning the very victims of Defendants' testing programs.  That issue — and others like it — are now properly before Magistrate Judge Larson, who earlier ruled against Defendants in issuing an order compelling responses to Plaintiffs' First Set of Interrogatories.

In a blatant display of forum shopping, Defendants now ask this Court (rather than the Discovery Magistrate) to shut down discovery completely.  Relying only on conclusory statements about their purported burden and the ongoing work of a private contractor to gather limited information, Defendants fail to show "good cause" for such drastic relief.  Indeed, Defendants' request betrays their true intent:  to delay this case as much as possible, despite their knowledge that the test subjects are aging, ill, and now are dying.[1]  Defendants' all-out efforts to avoid participating in discovery are underscored by the fact that they now have filed a motion for a protective order before Judge Larson, seeking to restrict beyond reason the scope of any discovery that does go forward.  The Court should reject Defendants' efforts to avoid their legal obligations by further delaying this litigation and should deny Defendants' motion to stay discovery and modify the case management order.

---

[1] Plaintiffs regret to advise the Court that on August 31, 2010, plaintiff Wray Forrest, who suffered from terminal cancer, passed away.  Plaintiffs intend to file a Suggestion of Death shortly.

## II.   BACKGROUND

Plaintiffs filed this action on January 7, 2009, asserting claims for injunctive and declaratory relief stemming from Defendants' actions and inactions regarding, *inter alia*, top-secret government programs through which chemical and biological agents were tested on soldiers deemed "volunteers."  Defendants have failed to care for the servicemember test subjects as required by law, representing to Congress that they would do so but letting decades slip by as former test subjects continued to suffer unaided — and often completely in the dark about the details of what Defendants had done to them as part of the testing programs.  Plaintiffs — individual veterans who were subjected to Defendants' test programs and two veterans' rights organizations whose members include additional test subjects — seek to force Defendants to finally fulfill their obligation to locate participants in these tests and to notify them regarding those exposures, to compel Defendants to provide healthcare to test participants as required by Defendants' own regulations, and to release the test participants from improper "secrecy oaths" that have hindered the ability of test veterans to seek counseling and appropriate medical care.

Defendants moved to dismiss Plaintiffs' claims on June 30, 2009.  (Docket No. 29.)[2]  In moving to dismiss, Defendants recited their efforts to "continue to investigate, compile relevant documents and other information and develop and implement appropriate responses and remedies" (Docket No. 29 at 3) — conceding, in essence, that Defendants had not fulfilled duties to provide notice and health care *decades* after those obligations arose.  The Court denied Defendants' motion to dismiss in part in an Order dated January 19, 2010, finding, *inter alia*, that Defendants owed a duty to provide notice and healthcare under the APA.  (Docket No. 59.)  In the January 19, 2010 Order, the Court also ordered discovery to proceed.[3]

---

[2] Defendants also subsequently moved to dismiss Plaintiffs' First and Second Amended Complaints, making essentially the same arguments each time.  (*See* Docket Nos. 34 and 57.)

[3] Defendants' efforts to avoid their discovery obligations were evident from the onset of the litigation:  at the December 3, 2009 hearing on Defendants' Motion to Dismiss, Defendants asked the Court to delay the commencement of discovery pending the Court's ruling on an amended complaint.  The Court denied Defendants' request and ordered Defendants to respond to outstanding discovery within thirty days.  (Docket No. 59 at 20.)

1    Defendants immediately instituted a series of delay tactics, refusing to answer any of

2    Plaintiffs' interrogatories and forcing Plaintiffs to file a motion to compel responses.  (Docket

3    No. 76.)  The Court referred that motion, and all further oversight of discovery issues, to

4    Magistrate Judge Larson pursuant to Civil Local Rule 72-1.  (Docket No. 79.)  For months,

5    Defendants continued to stall and shirk their discovery obligations at every turn rather than

6    cooperate with Plaintiffs.  Pursuant to the Court's referral, and after an exhaustive meet and

7    confer process, Plaintiffs brought these issues to the attention of Magistrate Judge Larson via a

8    series of motions in August.  Plaintiffs will not re-argue these motions here, as they are properly

9    before the Magistrate, but will briefly summarize as follows:

10

11   • Motion to Compel Responses to Interrogatories (Docket No. 76):  On November 16, 2009,

12     Plaintiffs served their first set of interrogatories in this action.  In the subsequent meet-and-

13     confer process, Defendants agreed to serve answers to a specifically-enumerated set of

14     twenty-five interrogatories.  Defendants then refused to respond at all, arguing that with

15     subparts Plaintiffs actually had served twenty-nine interrogatories.  Plaintiffs moved to

16     compel responses.  On the evening before the June 30, 2010 hearing on Plaintiffs' motion,

17     Defendants served responses that consisted largely of objections.  During the hearing, the

18     Magistrate chastised Defendants, observing that "their late filing on the eve of a hearing on a

19     motion which, to [his] mind, look[ed] completely routine, [was] inappropriate."  (Decl. of

20     Gordon P. Erspamer ¶ 2, Ex. A at 13.)  On July 13, 2010, Judge Larson granted Plaintiffs'

21     Motion to Compel, noting that Defendants' responses "consisted mostly of objections," and

22     ordering Defendants to serve new responses within thirty days.  (Docket No. 112 at 6.)

23     Defendants' recently-amended "answers" suffer from the same problems.[4]

24

25

26   [4] These amended "answers" again consist largely of objections and are woefully
     inadequate.  Plaintiffs have initiated a meet-and-confer process in an attempt to avoid having to
27   move a second time to compel appropriate responses to these interrogatories.

28

- <u>Motion for Protective Order and to Overrule Objections (Docket No. 121)</u>:  Despite negotiations spanning the better part of a year, Defendants refused to stipulate to a protective order providing for the production of information potentially subject to the Privacy Act, HIPAA, or other such protections.  Defendants' refusal to agree to an appropriate protective order has given Defendants a pretext to avoid providing critical information concerning Plaintiffs' claims, including the identities of the participants and administrators of the testing programs at issue.  Plaintiffs moved for the entry of a protective order that would allow for the production of this information, while preserving its confidentiality and appropriately limiting its use to this litigation.  Judge Larson is scheduled to hear this motion on October 6, 2010.

- <u>Motion to Overrule Objections and Compel 30(b)(6) Depositions (Docket No. 125)</u>: Defendants refused to designate 30(b)(6) witnesses for many of Plaintiffs' noticed topics, largely on the basis of improper relevance objections.  Defendants even refused to designate appropriate witnesses to testify about Defendants' document search and production efforts in connection with this litigation.  Plaintiffs moved to compel the production of these witnesses. Judge Larson is scheduled to hear this motion on October 6, 2010.

- <u>Motion to Overrule Objections and Compel Production of Documents (Docket No. 128)</u>:  In perhaps the most blatant example of their discovery noncompliance, Defendants have objected to virtually every document request and produced fewer than 16,500 pages of documents in response to Plaintiffs' Requests for Production, despite hundreds of test programs and tens of thousands of "volunteers," with relevant facts stretching back over forty years.  In fact, it is apparent that Defendants have yet to search some of the most basic locations for documents.  Instead, Defendants stand on myriad improper objections to Plaintiffs' First Set of Requests for Production, and have failed to respond at all to Plaintiffs' Second, Third, and Fourth Sets of Requests for Production.  Plaintiffs have moved to compel

1    Defendants to appropriately respond to Plaintiffs' requests and to produce relevant

2    documents.  Judge Larson is scheduled to hear this motion on October 6, 2010.[5]

3

4        In the face of these motions, and the July 13, 2010 Order granting Plaintiffs' motion to

5    compel responses to interrogatories, Defendants now bring this discovery motion — seeking to

6    stay *all* discovery for one year — before this Court, under the pretext of seeking a modification of

7    the Case Management Order.[6]  In support of their request, Defendants invoke the talisman of

8    burden without making any particularized showing, and — as they did in their motions to

9    dismiss — claim that Plaintiffs should not be able to pursue their claims for notice and health care

10   because Defendants still are "working on it."  Defendants have been "working on it" for decades

11   with little to no results, leading to this litigation.

12       Defendants' concerted efforts to avoid discovery in this matter are underscored by their

13   latest tactic:  in addition to asking this Court to halt *all* discovery in this matter for one year, they

14   now have filed a motion with the Magistrate seeking a protective order that would gut the scope

15   of any discovery that does go forward.  (Docket Nos. 140, 141.)  As just one example, Defendants

16   seek to preclude any discovery into the "operational use" of the chemical and biological agents

17   tested on servicemembers, even though this information bears directly on the potential health

18   effects arising from exposure to these agents.  These potential health effects are relevant to the

19   core of Plaintiffs' claims.  (*See* Docket No. 59 at 15 (noting that regulations require participants

20   to be "fully informed of the effects upon his health or person which may possibly come from his

21   participation in the experiment").)  It is becoming increasingly apparent that Defendants are more

22   focused on *resisting* discovery in this matter than they are in meeting their obligations in this

---

23       [5] In light of Defendants' serial noncompliance with their discovery obligations, Plaintiffs
24   also have moved for mandatory Rule 37(a) sanctions in connection with the motions to compel.
     (Docket No. 131.)  Judge Larson is scheduled to hear the motion for sanctions on October 6,
25   2010, along with Plaintiffs' other outstanding discovery motions.

26       [6] Defendants' justification rings hollow:  because Plaintiffs' discovery motions are
     pending before Judge Larson, Defendants could have sought a stay of discovery from Judge
27   Larson. Had he granted the discovery stay, Defendants could then have asked this Court to
     modify the case management order.

28

1    litigation.  Regardless, Defendants certainly have not met their burden to show that they are

2    entitled to a stay of discovery, and must not be allowed to continue their clear pattern of delay.[7]

3    **III.   ARGUMENT**

4         **A.   Defendants Have Not Met Their Heavy Burden to Show That a**
              **Protective Order Is Appropriate.**
5

6         A protective order places limits on discovery that is otherwise liberally permitted under

7    Federal Rules.  *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Shoen v. Shoen*,

8    5 F.3d 1289, 1292 (9th Cir. 1993).  A protective order may be granted only when the moving

9    party can show "good cause" by "demonstrating harm or prejudice that will result from the

10   discovery."  *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).[8]  Moreover, "[b]road

11   allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy

12   the Rule 26(c) test."  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

13   Defendants have fallen far short of this standard.

14        Defendants' only asserted justification for a discovery stay is that participating in

15   discovery in this lawsuit as ordered would  take time and effort, and because the Department of

16   Defense's own investigation will reveal the same evidence Plaintiffs seek in discovery.  But

17   "good cause is not established merely by showing that discovery may involve inconvenience and

18   expense."  *See* 6 James W. Moore, *Moore's Federal Practice* § 26.104[1] (3d ed. 2010); *see also*

19   *Lehnert v. Ferris Faculty Ass'n--MEA-NEA*, 556 F. Supp. 316, 318 (W.D. Mich. 1983) (extent of

20   discovery burden party must bear is measured by nature, importance, and complexity of inquiry

21   involved in case).  Moreover, Defendants' claims of burden ring hollow, as they greatly

22

23        [7] In light of Defendants' efforts to improperly litigate discovery issues before this Court
     rather than before the Magistrate in the first instance, Plaintiffs reserve the right to move for an
24   award of attorneys fees and costs as sanctions.

25        [8] *Rivera*, the only case relied on by Defendants, bears little resemblance to this case.  The
     *Rivera* court issued a protective order barring discovery into the plaintiffs' immigration status
26   because permitting such discovery would "chill the plaintiffs' willingness and ability to bring
     civil rights claims."  *Rivera*, 364 F.3d at 1064.  Defendants offer no similar justification for a
27   protective order here.

28

1  exaggerate by suggesting that the ongoing work of their private contractor will "provide the bulk

2  of information necessary" to resolve Plaintiffs' claims.  (Docket No. 134 at 1.)

3        **1.     The Statement of Work Concerns Only a Small Portion of**
**Relevant Information.**

4

5        Contrary to Defendants' assertion, the "large scale" Department of Defense ("DoD")

6  investigation, governed by the Statement of Work ("SOW") attached to the Declaration of James

7  Kirkpatrick as Exhibit 1 (Docket No. 134, attachment 1), will not provide the "bulk" of

8  information necessary to prove Plaintiffs' claims.  (Docket No. 134 at 1).  Even a cursory review

9  of the project, which is being performed by a private contractor, Battelle,[9] reveals the restricted

10  scope of the matter covered by the SOW.[10]

11        The bulk of DoD's purported "large scale" investigation is not targeted at identifying test

12  subjects and other relevant information, as claimed by Defendants.  Rather, its primary focus

13  appears to be preserving information relevant to the military's ongoing chemical and biological

14  weapon capabilities and objectives.  For example, the first three objectives of the SOW concern

15  providing "research, test[], and evaluation[]" information about chemical and biological warfare

16  agents, "effectively coordinat[ing] and integrat[ing] the research," and "identifying areas for

17  international cooperative development, production and sustainment."  (SOW at 2.1, 2.2, and 2.3.)

18  Only the "fourth objective" even mentions the identification of test subjects.  (SOW at 2.4) ("The

19  fourth objective is to develop the consolidated reference repository of chemical and biological

20  defense information . . . and analysis that identifies personnel that were potentially exposed").

21  Therefore, only a small fraction of Defendants' "large scale" efforts — and related costs — are

22  directed at identifying individual test participants and the substances to which they were exposed.

23

24      [9] Plaintiffs issued a subpoena for documents to Battelle on June 24, 2010, but Battelle has
failed to respond in any manner, perhaps at Defendants' behest.

25

26      [10] As a preliminary matter, the SOW is limited on its face to chemical and biological tests
conducted "within the Department of Defense."  (SOW at 1.0.)  This appears to exclude testing
done by the CIA pursuant to MKULTRA, Project OFTEN, or other programs, which are relevant

27  to this case as alleged in the Second Amended Complaint.

28

1   The scope of information subject to the SOW is, without question, far narrower than the

2   relevant information sought by Plaintiffs in discovery.  For example, the SOW identifies thirteen

3   specific sites at which Battelle will "analyze" documents "for information on personnel

4   potentially exposed to chemical and/or biological agents" from 1942 to the present.  (SOW

5   at 3.5.)  Not included among the thirteen specified search sites are key locations of Defendants'

6   testing programs, including Fort Detrick, Fort Bragg, Dugway Proving Ground, Fort Ord, and

7   Fort Benning.  (*See* Decl. of Daniel J. Vecchio In Supp. of Pls.' Mot. to Compel Produc. of Docs.,

8   Docket No. 129 ¶ 10, Ex. F.)  ("Vecchio Decl.")  Moreover, even with respect to Edgewood

9   Arsenal, the SOW indicates only that "Edgewood Chemical Biological Center Technical Library

10   Laboratory Notebooks" will be included in the search, which appears to exclude large categories

11   of documents included among the over one thousand linear feet of documents in labeled and

12   catalogued cabinets and drawers at Edgewood.  (*Id*. at ¶ 9, Ex. E at 2-3 of 33.)[11]

13   Moreover, the SOW makes no reference to the collection of information regarding the

14   health effects of the test substances.  Yet much of Plaintiffs' discovery relates to the health effects

15   potentially suffered by class members as a result of being exposed during Defendants' test

16   programs.  Similarly, the SOW does not indicate that Defendants are collecting any information

17   concerning consent to the tests, nor any information related to secrecy oaths taken by the test

18   subjects — issues that are highly relevant to the claims that the Court has allowed to proceed.

19   (Docket No. 59.)  Other relevant information sought by Plaintiffs, but not provided for under the

20   scope of the SOW, includes:  (a) the identities of individual researchers involved in the test

21   programs, who, given Defendants' admitted large-scale destruction of documents, may be

22   [11] Defendants' discovery failures in this litigation were hinted at last week when a
23   spokesperson for Fort Detrick was quoted as saying that he "was not aware of Fort Detrick officials being involved in pulling any records for [this] lawsuit."  *See* Megan Eckstein, *Veterans sue CIA, Army for experiments at Detrick, Edgewood*, FREDERICK NEWS POST, September 9,
24   2010, *available at*
   http://www.fredericknewspost.com/sections/news/display.htm?StoryID=109671 (last visited
25   Sept. 14, 2010).  This is particularly troublesome, as Fort Detrick was a key site of Defendants'
   biological testing programs.  (*See* Docket No. 53, Compl. ¶ 106.)  Without the ability to compel
26   Defendants to search Fort Detrick for relevant records — as Plaintiffs are attempting to do before
   the Magistrate — key records may never be discovered, notwithstanding Defendants' "large
27   scale" investigation.

28

1   important sources of relevant facts and admissions; and (b) information concerning Defendants'

2   research into mind control testing and/or brain implants, which is relevant because at least one of

3   the named Plaintiffs received a brain implant during his time at Edgewood.  (Docket No. 53,

4   Compl. ¶¶ 33-34.)

5        While there may be modest overlap of the DoD's investigation under the SOW and

6   information necessary for this case, it is a far cry from the complete overlap Defendants contend.

7   Indeed, Defendants themselves *concede* that Battelle's investigation "covers only a portion of"

8   the documents responsive to Plaintiffs' discovery requests.  Kilpatrick Decl. ¶ 17.  Defendants

9   must not be allowed to avoid complying with their discovery obligations simply because

10  Defendants' third-party contractor is, independent of this litigation, in the process of collecting a

11  small subset of the information relevant to Plaintiffs' claims.

12            **2.      There Is No Guarantee That the Investigation Will Be
                      Completed, Nor Does the Investigation Address Defendants'**
13                    **Obligations to Provide Notice and Healthcare.**

14       Although Defendants claim that the work under the SOW is "consistent with

15  congressional direction and under Congress's supervision," neither Defendants nor their

16  declarants ever acknowledge any legal obligations to conduct or complete the work.  (Docket

17  No. 134 at 3.)  In fact, in their Motion to Dismiss, Defendants decried any legal obligation

18  whatsoever to identify and notify test participants or provide healthcare.  (Docket No. 34 at 7-8.)

19  The SOW states that work is estimated to be completed in September, 2011, but does not provide

20  that the DoD (or any other defendant) is obligated to complete the work by that (or any other)

21  date.  Forcing Plaintiffs to defer discovery pending DoD's ***voluntary*** (and, according to

22  Defendants, completely unenforceable) investigation and collection of a small portion of relevant

23  information is unreasonable and unacceptable — especially in light of Defendants' obligations to

24  provide relevant information in this litigation and Plaintiffs' ability to enforce those obligations, if

25  necessary.

26       In addition, Defendants contend that as the investigation moves forward, they will provide

27  information about test participants on a rolling basis to the VA (a non-party) so that the VA "may

28

1   notify the participant." [12]  Defendants say nothing about whether the VA:  (a) is required to notify

2   participants; (b) is providing notice on a rolling basis; (c) intends to provide notice at some point

3   in the future; or (d) plans to notify the survivors of deceased participants.  Regardless, Defendants

4   say nothing about fulfilling their *own* obligations to provide notice to the test subjects, or how

5   Defendants would meet *their* responsibility for providing health care.  Nothing, then, about the

6   DoD's "investigation" satisfies the relevant duties recognized by the Court's January 19, 2010

7   Order.  (Docket No. 59.)  Defendants have failed to fulfill their obligations to the test participants

8   for *several decades*.  Plaintiffs cannot — and should not be expected to — wait any longer.

9               **3.      Defendants' Efforts to Avoid Discovery into the Extent of the
                          CIA's Involvement in the Testing Programs.**
10

11          In their Motion, Defendants assert that staying discovery against the CIA is particularly

12   appropriate because the nexus between the CIA and the testing conducted on military personnel is

13   "limited."  (Docket No. 134 at 1.)  Although Defendants have repeatedly advanced this

14   contention, Defendants are simply wrong — documents already obtained through discovery and

15   Plaintiffs' investigation indicate that the CIA was closely involved with the testing of chemical

16   and biological agents on servicemembers.

17          For example, a 1955 memorandum from the director of the CIA to the Secretary of

18   Defense states that CIA and Army scientists involved in the testing program maintained a close

19   and effective liaison and that the CIA provided financial support for psychochemical experiments

20   conducted by the Army Chemical Corps.  (Docket No. 129, Vecchio Decl. ¶ 11, Ex. G.)  Other

21   documents show that the CIA funded human experimentation of BZ (known by the code name

22   EA-3167) at Edgewood Arsenal as a part of Project OFTEN (Vecchio Decl. ¶ 12, Ex. H), and at

23   least eleven boxes of documents and tapes related to these experiments are still in the CIA's

24   possession (Vecchio Decl. ¶ 13, Ex. I).[13]

25   _____

26   [12] Plaintiffs' proposed Third Amended Complaint names VA as a defendant also.
     Plaintiffs' motion for leave to amend is currently pending.  (*See* Docket No. 88.)

27   [13] Defendants' statements regarding the CIA's lack of involvement in the testing programs
     are particularly suspect in light of the CIA's admitted destruction of documents relating to its
28                                                              (Footnote continues on next page.)

1

**B.      Defendants Did Not Even Attempt to Show "Good Cause" to Modify Case Management Order.**

2

3        Similarly, Defendants have not shown the "good cause" required to modify the Case

4   Management Order.  Fed. R. Civ. P. 16(b)(4); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080,

5   1087-88 (9th Cir. 2002).  Nothing has changed since the Order was issued except the passage of

6   time resulting from Defendants' stalling tactics.  In determining whether to grant a request to

7   modify a case management order, courts consider the moving party's diligence to meet the

8   current case schedule and whether any prejudice will result to the opposing party as a result of the

9   requested modification.  *See Zivkovic*, 302 F.3d at 1087; *Hynix Semiconductor, Inc. v. Rambus

10  Inc.*, 250 F.R.D. 452, 457, n.6 (N.D. Cal. 2008).  Indeed, if the party seeking the modification

11  "was not diligent, the inquiry should end." *Zivkovic*, 302 F.3d at 1087.  That is precisely the case

12  here:  as chronicled above and in Plaintiffs' pending motions to compel, Defendants have shirked

13  their discovery obligations and evidenced their lack of diligence from the inception of this lawsuit

14  until today.

15        Defendants' only asserted reason for modifying the case schedule is because DoD's own

16  investigation covered by the SOW will not be completed until September 2011.  Defendants'

17  asserted justification is flawed for at least two reasons:  First, the request asks the Court to excuse

18  Defendants' from *all* of their discovery obligations in light of the limited work done under the

19  SOW, even though the scope of information covered by the SOW admittedly is far narrower than

20  the scope of information relevant to Plaintiffs' claims.  Second, Defendants have made no

21  showing that they cannot complete the identification of test subjects more quickly — only that

22  they would prefer to rely on the results of the DoD investigation.  This assertion merely

23  underscores the *lack* of diligence by Defendants in performing their discovery obligations and

24  adhering to the case schedule.

25

26  (Footnote continued from previous page.)

27  testing programs.  Plaintiffs are entitled to seek additional evidence of the CIA's participation in the testing programs through discovery.

28

1    While the Court need look no further when the lack of diligence has been established (as it

2    has been here), it is worth noting the substantial prejudice to Plaintiffs should the case

3    management order be revised. Currently, fact-discovery cutoff is May 31, 2011. Defendants now

4    seek an extension of nine months to February 29, 2012 — and a stay of all discovery in the

5    interim.[14] Similarly, while trial is set for March 26, 2012, Defendants want to delay it to

6    December 27, 2012.[15]

7    Since Defendants know that the named Plaintiffs (and other members of the putative

8    class) are aging veterans with myriad ailments, Defendants' strategy of delay and their efforts to

9    escape their discovery obligations are particularly troubling. Because Plaintiffs initiated this

10    action in January 2009, even under the current schedule it will be more than three years from

11    filing to trial. The Court should not allow even more time to lapse unnecessarily before Plaintiffs

12    have the opportunity for the Court to hear their claims and afford them relief by holding

13    Defendants to their legal and ethical obligations.

14

15

16

17

18

19

20    [14] The estimated completion date of the DoD SOW is September 2011. As discussed
      above, that deadline considers the total amount of work done under the SOW, not only the
21    component of the SOW addressed to identifying test participants. In other words, if the DoD
      were to focus on the identification of test participants, it likely could complete that task much
22    earlier than September 2011. Moreover, as alleged in the proposed Third Amended Complaint,
      the scope, content, and operation of the project is fundamentally flawed. *See, e.g.* [Proposed]
23    Third Amended Complaint, Docket No. 88, Attachment 1, at ¶¶ 234-238) (noting that the list of
      names given to the VA by the DoD "omitted the names of all veterans exposed before 1954,
24    which likely numbered in the tens of thousands").

25    [15] In an apparent effort to avoid requesting that the Court delay trial until *2013*,
      Defendants cosmetically propose that trial be postponed until Thursday, December 27, 2012. As
26    a practical matter, however, Defendants are asking the Court to postpone trial until early 2013,
      more than *four years* after this action began and many decades after Defendants should have
27    fulfilled their obligations to Plaintiffs.

28

1

## IV.    CONCLUSION

2          For the reasons stated above, the Court should deny Defendants' motion and compel

3    discovery to move forward according to the current Case Management Order.

4

5    Dated: September 16, 2010                    GORDON P. ERSPAMER
                                                  TIMOTHY W. BLAKELY
6                                                 ADRIANO HRVATIN
                                                  STACEY M. SPRENKEL
7                                                 DANIEL J. VECCHIO
                                                  DIANA LUO
8
                                                  MORRISON & FOERSTER LLP
9

10                                          By:   /s/ Gordon P. Erspamer
                                                  GORDON P. ERSPAMER
11
                                                  Attorneys for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28