IAN GERSHENGORN
        Deputy Assistant Attorney General
MELINDA L. HAAG
        United States Attorney
VINCENT M. GARVEY
        Deputy Branch Director
CAROLINE LEWIS WOLVERTON
        District of Columbia Bar No. 496433
        Senior Counsel
        Telephone: (202) 514-0265
        E-mail:  caroline.lewis-wolverton@usdoj.gov
KIMBERLY L. HERB
        Illinois Bar No. 6296725
        Trial Attorney
LILY SARA FAREL
        North Carolina Bar No. 35273
        Trial Attorney
BRIGHAM J. BOWEN
        District of Columbia Bar No. 981555
        Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
Facsimile:  (202) 616-8470

Attorneys for DEFENDANTS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| VIETNAM VETERANS OF AMERICA, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>CENTRAL INTELLIGENCE AGENCY, *et al.*,<br><br>                    Defendants. | Case No.    CV 09-0037-CW (JL)<br><br>Noticed Motion Date and Time:<br>October 7, 2010<br>2:00 p.m.<br><br>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER STAYING FURTHER DISCOVERY AND FOR MODIFICATION OF CASE MANAGEMENT ORDER |

1

2

# TABLE OF CONTENTS

**PAGE**

3   TABLE OF AUTHORITIES……………………………………………….……………-ii-

4   INTRODUCTION……………………………………………………………..…….1

5   ARGUMENT………………………………………………………………………......2

6

7   1.   Staying Discovery Until the DoD Investigation Is Complete Will Facilitate
         Efficient Discovery and Conserve Resources…………………………………..2

8   2.   A Stay of Discovery as to CIA is in the Interests of Efficiency and
         Conservation of Resources………………………………………………….…....7

9

10  3.   Defendants' Request for a Protective Order Staying Discovery and
         Corresponding Modification of the Case Management Order Is
         Consistent with Their Good Faith Efforts to Achieve an Orderly Plan

11       for Efficient Discovery……………………………………………..………………9

12  CONCLUSION………………………..……………………………………………11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**                                                                                        **PAGE(s)**

Nelson v. Capital One Bank,

    206 F.R.D. 499 (N.D. Cal. 2001) ............................................................................. 6

## RULES

Fed. R. Civ. P. 26(c)............................................................................................................ 2

Fed. R. Civ. P. 45 ............................................................................................................... 4

1

**<u>INTRODUCTION</u>**

2          Defendants' opening memorandum explains that interests of efficiency and conservation

3   of resources warrant a protective order staying discovery until the Department of Defense

4   ("DoD") completes its multi-year, multi-million dollar investigation to identify all

5   servicemembers who participated in the Army's Cold War-era chemical and biological tests.  The

6   investigation is intended to compile as much information as possible about each test in which

7   each individual servicemember participated, including the identity of the chemical or biological

8   agent to which the participant was exposed, the amount of the agent administered, and the route

9   of administration (e.g., oral).  This is much of the information that Plaintiffs have argued they

10  need to pursue their claims for notice and health care.  The results of the DoD investigation,

11  scheduled for completion in September 2011, together with the substantial amount of information

12  about the tests already produced and the additional documents for which DoD and Army are

13  searching should provide most, if not all, of the information necessary to decide the claims before

14  the Court.  Defendants have established good cause for both a protective order staying discovery

15  until the DoD investigation is complete and a corresponding modification of the case

16  management order to extend the case deadlines by nine months.

17          In opposing Defendants' request for a stay, Plaintiffs accuse Defendants of seeking to

18  delay the progress of this case and question the scale of the DoD investigation as well as the

19  significance of the information it is gathering to the issues before the Court.  These arguments are

20  unfounded.  Defendants' stay request is consistent with efficient progress of this action rather

21  than delay.  That the investigation to identify individual test participants and exposure

22  information is part of a DoD contract that includes additional objectives related to chemical and

23  biological agents does not alter the salient fact that the investigation is compiling as much

24  detailed exposure information as possible for each individual test participant.  Plaintiffs'

25  questioning the significance of that detailed information is undermined by the importance to this

26  case that Plaintiffs have attributed to information about what substances were tested, in what

27  amounts and by what route of administration.  Plaintiffs' suggestion that the DoD investigation

28

1   might not be completed is purely speculative and directly at odds with the ongoing Congressional

2   oversight of it.

3          Much of Plaintiffs' opposition reviews various discovery disputes that are before

4   Magistrate Judge Larson and should not distract the Court from the important question of

5   whether, as Defendants maintain, a discovery stay will further orderly and efficient progress of

6   this litigation.  Those disputes stem largely from the parties' disagreement about the appropriate

7   scope of discovery given the relatively discrete claims under the Administrative Procedure Act

8   ("APA") and Declaratory Judgment Act ("DJA") that are before the Court.

9          Plaintiffs' additional spurious attacks should also be given short shrift.  Defendants are not

10  forum-shopping; they noticed this motion for hearing before the District Judge because the

11  request for a discovery stay necessarily requires a request for modification of the case

12  management order entered by the District Judge.  Contrary to Plaintiffs' charges of delay and

13  avoidance of discovery obligations, DoD, Army and the Central Intelligence Agency ("CIA")

14  have made robust productions of documents and have exercised their best efforts to negotiate a

15  resolution of the parties' dispute concerning the scope of discovery — efforts that Plaintiffs have

16  not reciprocated.

17         Defendants have worked and are continuing to work diligently to develop and implement

18  a plan for orderly and efficient discovery that is consistent with the nature of the claims before the

19  Court.  A protective order staying further discovery until the DoD investigation is complete is

20  consistent with such a plan and should be granted.

21                                    **ARGUMENT**

22  **1.   Staying Discovery Until the DoD Investigation Is Complete Will Facilitate Efficient
        Discovery and Conserve Resources.**

23

24         Plaintiffs are incorrect in asserting that the DoD investigation is targeting only a "small

25  portion" or "small subset" of information relevant to the claims at issue.  *See* Pls.' Opp'n at 7-9

26  (Dkt. No. 151).  The investigation is designed to "identify <u>all</u> test volunteers involved in chemical

27  or biological testing programs other than Mustard Gas/Lewisite and Project 112/SHAD from

28

1942 through present."[1]  Decl. of Michael Kilpatrick ¶ 13 (Dkt. No. 134-1, Ex. 1 to Defs.' Mot.

for Pro. Order Staying Further Disc. and for Modification of Case Management Order ("Defs.'

Mot.")) (emphasis supplied).  Contrary to Plaintiffs' assertion that the investigation does not

encompass all relevant test sites, the list of sites that is set forth in the Statement of Work

describing the investigation is not exclusive and the investigation has encompassed records at

additional sites.  *See* Decl. of Anthony Lee ¶ 5 (Dkt. No. 143-2, filed with, *inter alia*, Defs.'

Opp'n to Mot. to Compel Docs.).[2]  At each site, researchers are gathering for each individual test

volunteer detailed information about each test in which the person participated, including "the

chemical or biological agent each was exposed to, and the amount administered and route of

administration (e.g., oral) where available."  Kilpatrick Decl. ¶ 13.  This is a substantial portion of

the information that Plaintiffs have asserted they seek through discovery.  *See* Pls.' Mot. to

Overrule Objections and Compel Prod. of Docs. at 12-15 (Dkt. No. 128) (argument under heading

"Defendants should produce documents about the conduct of the test programs and the identity,

characteristics, and use of substances employed in the test programs.").[3]

     Contrary to Plaintiffs' argument, that the contract under which the investigation is

conducted encompasses additional objectives relating to chemical and biological agents does not

alter the important fact that the identification of personnel potentially exposed to agents is a major

part of the investigation.  The Kilpatrick Declaration explains that the investigation to identify test

---

[1] The Kilpatrick Declaration explains that volunteers in Mustard Gas/Lewisite and Project 112/SHAD tests have been identified through previous investigations.  Kilpatrick Decl. ¶ 12.

[2] Plaintiffs' letter to the Court of September 22, 2010 acknowledges that, based on their review of Mr. Lee's declaration, the Statement of Work encompasses records at Fort Detrick and Edgewood Arsenal.  Dkt. No. 154.  However, the letter, although filed as an "errata," includes argument concerning rule 30(b)(6) depositions, an issue not presented by the instant motion.  To the extent that the Court is interested in the arguments concerning Plaintiffs' notices of rule 30(b)(6) depositions, Defendants respectfully refer the Court to the briefing of Plaintiffs' motion to compel concerning those depositions, Dkt. Nos. 125, 142.

[3] DoD and Army have already produced a large number of documents concerning the Army's chemical and biological tests and are searching for additional documents concerning the tests.  *See* Kilpatrick Decl. ¶ 16; *see also* Defs.' Opp'n to Pls.' Mot. to Compel Prod. of Docs. at 15-17 (Dkt. No. 143) (describing DoD and Army's document productions).

1   volunteers is "all-encompassing" and, again, is designed to identify "all volunteers." Kilpatrick

2   Decl. ¶¶ 13-14 (emphasis supplied). The investigation to identify test volunteers has cost millions

3   of dollars. *Id.* ¶¶ 13-14, 17.[4]

4          There is no reason to doubt that DoD will complete its investigation and achieve the

5   intended result of "consolidat[ing] as much information as possible about the test volunteers,

6   including their names, the chemical or biological agent each was exposed to, and the amount

7   administered and route of administration (e.g., oral) where available," Kilpatrick Decl. ¶ 13.

8   While DoD may not be under a legal obligation to complete the investigation, as Plaintiffs

9   emphasize, Pls.' Opp'n at 9, that the investigation is the subject of Congressional oversight makes

10   it highly likely that the investigation will be completed.[5] *See* Kilpatrick Decl. ¶¶ 10, 13-15; *see*

11   *also, e.g.*, GAO, "Chemical and Biological Defense: DOD Needs to Continue to Collect and

12   Provide Information on Tests and Potentially Exposed Personnel," GAO-04-410 (Washington,

13   D.C.: May 14, 2004), available at http://www.gao.gov/new.items/d04410.pdf. Plaintiffs'

14   suggestion that identification of all of the test volunteers and compilation of information about

15   individual exposures could somehow be accomplished more quickly is wholly speculative; it

16   would be extremely time-consuming and costly to search individual records apart from the

17   ongoing investigation, as well as duplicative and wasteful. *See* Kilpatrick Decl. ¶¶ 13-14.

18          With respect to information concerning health effects that may not be included in the

19   information compiled through the DoD investigation, Plaintiffs' opposition overlooks the fact that

20   Defendants have already produced substantial information concerning health effects and that

21   there is a great deal of health-effects information available publicly. *See id.* ¶¶ 4-9; *see also*

22   

23          [4] Undersigned counsel has no reason to believe that DoD or any other Defendant directed
    Battelle not to respond to Plaintiffs' Fed. R. Civ. P. 45 subpoena, as Plaintiffs suggest, *see* Pls.'
24   Opp'n at 7.

25          [5] That the Department of Veterans Affairs is to notify individual test participants after
    receiving the participant's exposure information from DoD is likewise consistent with
26   Congressional direction. *See, e.g.*, GAO, "Chemical and Biological Defense: DOD Needs to
    Continue to Collect and Provide Information on Tests and Potentially Exposed Personnel," GAO-
27   04-410 (Washington, D.C.: May 14, 2004), available at
    http://www.gao.gov/new.items/d04410.pdf.

28

Defs.' Opp'n to Pls.' Mot. to Compel Prod. of Docs. at 9 (Dkt. No. 143) (describing Defendants'
production concerning health effects).  In addition, DoD and Army are willing, outside of
discovery, to continue searching for additional documents, as noted in Defendants' opening
memorandum, Defs.' Mem. in Supp. of Mot. for Protective Order Staying Further Disc. and for
Modification of Case Management Order ("Defs.' Opening Mem.") at 7 n.2 (Dkt. No. 134).
Similarly, they are willing to continue searching for documents concerning consent in light of
Magistrate Judge Larson's July 13, 2010 Order  indicating that information regarding consent
could be relevant to the secrecy oath claim, Dkt. No. 112 at 5.  *See* Defs.' Opening Mem. at 7 n.2.
With respect to discovery concerning brain implants or "mind control testing" based on Plaintiffs'
allegation that one named Plaintiff received a brain implant, *see* Pls.' Opp'n at 9, Plaintiffs'
opposition fails to recognize that Defendants have previously explained that they have been
unable to find any information on purported "brain implants" on servicemembers.  *See* Defs.'
Resp. to Req. for Prod. ("RFP") No. 7 (Dkt. No. 143-9, Ex. B. to Wolverton Decl. filed with
Defs.' Opp'n to Mot. to Compel Docs.) (explaining that "after [] conducting a reasonable search,
Defendants have identified only information concerning nasal implants used in the 1950s to treat
pilots for disease and radiation contamination").  With respect to individual researcher names,
which Plaintiffs assert they also seek, Pls.' Opp'n at 8, that information might be contained in
documents encompassed in DoD and Army's ongoing search effort.  *See* Decl. of Lloyd Roberts ¶
10 (Dkt. No. 143-4, filed with, *inter alia*, Defs.' Opp'n to Mot. to Compel Docs.).

        Only under an extraordinarily overbroad view of the scope of discovery would the results
of the DoD investigation be insufficient to provide the bulk of information that, given the large
number of documents already produced and DoD and Army's ongoing searches, is relevant to the
claims before the Court.  The Court's January 19, 2010 Order dismissed Plaintiffs' challenge to
the lawfulness of the tests at issue, and the remaining claims are relatively discrete requests for
declaratory and injunctive relief under the APA and DJA in the form of notification, medical care
and release from secrecy oaths.  Dkt. No. 59.  The January 19 ruling identified the following
issues to proceed:  "the lawfulness of the consent forms, to the extent that they required the

1   individual Plaintiffs to take a secrecy oath"; whether Defendants may be compelled to provide

2   test participants with information about the nature of the tests based on the Wilson Directive,

3   Army regulation 70-25 (1962), and the Department of Justice ("DOJ") document cited in the

4   Second Amended Complaint; and whether test participants are entitled to medical care.[6]  *Id.* at

5   12-17.  Yet Plaintiffs have proceeded as if the Court had not narrowed the scope of this case.

6   Their discovery requests in effect seek to conduct a full-scale investigation of the government's

7   Cold War era human testing programs.  *See, e.g.*, Ex. 1 to Wolverton Decl. (Dkt. No. 134-3).[7]

8   The Kilpatrick Declaration explains that the enormous volume of documentation at issue is

9   illustrated by the multiple investigations of the Army's tests over the years as well as the level of

10  effort that is expended in the ongoing DoD investigation.  Kilpatrick Decl. ¶ 17.  It further

11  explains that because a great many of the documents are quite old, they are searchable only by

12  hand.  *See id.*  Plaintiffs' opposition refuses to acknowledge the substantial problem of undue

13  burden presented by not only the volume of documents at issue but also their age, and attempts to

14  dismiss this very real and very large problem by characterizing Dr. Kilpatrick's description of it

15  as "conclusory," Pls.' Opp'n at 1.[8]  The overbreadth and undue burden of Plaintiffs' discovery

16

17      [6] Contrary to Plaintiffs' characterization, the Court has not held that Defendants owe a
18  legal obligation to provide notice and a legal obligation to provide medical care; if it had there
    would be no need for discovery as to those claims and Plaintiffs would be entitled to judgment on
19  them.

20      [7] The extreme overbreadth and burden of the scope of discovery that Plaintiffs have
    pursued is evident from review of their 193 requests for production of documents — each of
21  which seeks "all" documents created between 1940 and the present.  *See* Ex. 1 to Wolverton Decl.
    (Dkt. No. 134-3).  Defendants properly have not served written responses to the second through
22  fourth sets of document requests because they have sought a protective order staying further
    discovery and a protective order limiting the scope of discovery.  *See Nelson v. Capital One*
23  *Bank*, 206 F.R.D. 499, 500 (N.D. Cal. 2001) (Chen, Mag. J.).  Defendants are entitled to guidance
    from the Court on whether further discovery is appropriate at this time and what the appropriate
24  scope of discovery is before they are required to respond to Plaintiffs' additional 115 RFPs that,
    as discussed in Defendants' motion for a protective order limiting the scope of discovery, are
25  vastly overbroad and unduly burdensome.  *See* Dkt. No. 140.

26      [8] The problems of undue burden as well as overbreadth are described in further detail in,
    *inter alia*, Defendants' motion for a protective order limiting the scope of discovery and
27  Defendants' opposition to Plaintiffs' motion to compel production of documents.  *See* Dkt. No.
    140; Dkt. No. 143 at 4-7.

28

1   requests have compelled Defendants to move for a protective order limiting the scope of

2   discovery, which is before Magistrate Judge Larson.[9]  *See* Dkt. No. 140.

3          Plaintiffs have substantial documentation bearing on their claims as a result of

4   Defendants' productions as well as the results of the multiple investigations and inquiries

5   concerning the Army's chemical and biological tests over the years, as discussed above and in

6   Defendants' opening memorandum.  And DoD and Army are willing to continue searching for

7   additional documents pertaining to health effects of tested substances, documents concerning test

8   subjects' consent, and other documents related to the Army's chemical and biological agent

9   testing.  This information together with the results of the DoD investigation should be sufficient

10  to decide the claims remaining in this case.  To the extent that any further discovery is warranted

11  following the investigation, the parties will be better positioned to identify it and then focus their

12  efforts on gathering it efficiently and expeditiously.

13      **2.  A Stay of Discovery as to CIA is in the Interests of Efficiency and Conservation of
            Resources.**

14

15         Plaintiffs' opposition to Defendants' request that a discovery stay extend to CIA ignores

16  the fact that CIA's behavioral research programs have been investigated extensively and

17  exhaustively as a result of multiple Congressional investigations, internal investigations and other

18  public inquiries, and that CIA has already produced the results of its review of the only program

19  that could even arguably be relevant to Plaintiffs' claims.  *See* Decl. of Patricia Cameresi ¶¶ 4-14

20  (Dkt. No. 134-2, Ex. 2 to Defs.' Mot.).  As explained in Defendants' opening memorandum,

21

22          [9] Contrary to Plaintiffs' characterization, Defendants' motion for a protective order
    limiting the scope of discovery seeks a workable scope of discovery, *viz.*, one that is consistent
23  with the three relatively discrete claims that are before the Court and is not unduly burdensome.
    *See* Dkt. No. 140.  With respect to Defendants' argument that discovery should not extend to
24  operational use of chemical and biological agents, which Plaintiffs specifically challenge in their
    opposition to this motion, Pls.' Opp'n at 5, such discovery is not reasonably calculated to lead to
25  the discovery of admissible evidence.  Plaintiffs do not allege operational exposure, such as in a
    war zone, nor is there reason to believe that details about how chemical and biological agents may
26  have been employed in a war zone or other operational use has any bearing on possible long-term
    health effects associated with the tests that Army conducted at Edgewood Arsenal or other Army
27  test sites.  *See* Defs.' Mot. for Pro. Order Limiting Scope of Disc. at 14-15 (Dkt. No. 140.)

28

1    based on the "scouring" searches and review of CIA records conducted as a result of those

2    investigations — including the records that Plaintiffs reference, Pls.' Opp'n at 10 — and

3    extensive interviews of CIA personnel and DoD personnel, the Agency has concluded that its

4    programs did not fund or conduct tests on military personnel. *See* Cameresi Decl. ¶¶ 6-7, 11-12.

5    CIA has already produced to Plaintiffs the results of its review of Project OFTEN, the only CIA

6    behavioral research program that could even arguably be relevant, as well as the results of its

7    search for documents relating to the named Plaintiffs, Edgewood Arsenal and Fort Detrick.[10]  *Id.*

8    ¶¶ 8, 12-13.  With respect to the "at least eleven boxes of documents and tapes" referenced in

9    Plaintiffs' opposition, Pls.' Opp'n at 10, items described in the records retirement request cited by

10   Plaintiffs have been a subject of CIA's searches.  Supplemental Cameresi Decl. ¶ 6 (Dkt. No.

11   143-7, filed with, *inter alia*, Defs.' Opp'n to Mot. to Compel Docs.).  CIA produced to Plaintiffs

12   some of the documents described in that records retirement request as part of its Initial

13   Disclosures and, in response to Plaintiffs' first set of RFPs, searched the items described in that

14   records retirement request but identified no materials therein as responsive.  *Id.*  CIA has also

15   produced 20,000 pages of documents concerning the Agency's behavioral research programs.

16   Cameresi Decl. ¶¶ 6, 12, 24 (Dkt. No. 134-2).[11]

17       Given that the named individual Plaintiffs are former Army personnel who participated in

18   Army tests and that Plaintiffs seek to represent a class of former military personnel, there is no

19   reason to expect that further discovery of CIA will produce any information bearing on the claims

20

21

22       [10] Project OFTEN contemplated tests on volunteers at Edgewood Arsenal but was
23   terminated before any human testing occurred.  Cameresi Decl. ¶ 12.

24       [11] Plaintiffs' assertion that CIA's determination that it did not fund or conduct tests on
     military personnel is "suspect" in light of the admitted destruction of some documents relating to
25   MKULTRA by then-Director Richard Helms, *see* Pls.' Opp'n at 10-11 n.13, is a red herring.  CIA
     has concluded after exhaustive investigation that Project OFTEN was separate from MKULTRA,
26   and CIA's review of its records reflects that only Project OFTEN contemplated research using
     military personnel.  *See* Cameresi Decl. ¶ 12.  Further, many thousands of pages of documents
27   relating to and describing MKULTRA exist and are in Plaintiffs' possession, provided by CIA
     outside of discovery despite their irrelevance to this action.  *See id.* ¶ 6.

28

before the Court.  Staying further discovery of CIA therefore would further interests of efficiency and conservation of resources.

### 3. Defendants' Request for a Protective Order Staying Discovery and a Corresponding Modification of the Case Management Order Is Consistent with Their Good Faith Efforts to Achieve an Orderly Plan for Efficient Discovery.

Plaintiffs' charges that Defendants have proceded other than in good faith are baseless. First, Defendants have not shirked their discovery obligations, nor have they sought or are they seeking to delay the progress of this litigation.  Defendants have made robust productions of documents in response to Plaintiffs' first set of document requests, and CIA has produced over 20,000 additional pages of documents concerning its behavioral research programs, as referenced above.  It is significant to observe in this regard that Defendants' substantial efforts to negotiate a workable scope of discovery and appropriate protective order covering third-party information have not been reciprocated by Plaintiffs.[12]  Defendants' reasons for seeking a protective order staying further discovery are strong, as set forth herein and in Defendants' opening memorandum. Moreover, during the entire time that Defendants' requests for relief in the form of a protective order or orders have been pending, DoD and Army have continued searching for potentially relevant documents as referenced above, further undercutting Plaintiffs' accusations of delay. And DoD and Army are willing to continue those searches, outside of discovery, during a stay of formal discovery.[13]

---

[12] As set forth in Defendants' opposition to Plaintiffs' motion for sanctions, Dkt. No. 144 at 7-9, Defendants' efforts to negotiate a workable scope of discovery include making two proposals to target information bearing on the claims before the Court while avoiding undue burden.  However, Plaintiffs refused to make any counter-proposal to address any deficiencies they perceived in Defendants' proposals or to propose a list of key words or search terms as Plaintiffs indicated they would provide during the parties' June 30 meet-and-confer.  With respect to a protective order covering third-party information, Plaintiffs prematurely cut off the parties' discussion of an appropriate order without providing information that Defendants requested and explained was important in determining the contours of a protective order, to which Defendants had informed Plaintiffs they were amenable.

[13] Contrary to Plaintiffs' assertion that Defendants sought to delay progress of the case at the December 3, 2009 hearing, Pls.' Opp'n at 2 n.3, Defendants asked that the time for their discovery responses run from the Court's ruling on the then-planned Amended Complaint so that they might have as much time as reasonable to respond to Plaintiffs' large number of discovery requests.

1    Second, Defendants are not forum-shopping; this motion is noticed for hearing before the

2  District Judge because the requested stay of discovery would necessarily require a corresponding

3  extension of the case deadlines in the case management order. Plaintiffs' assertion that the

4  request for a protective order could have been filed before Magistrate Judge Larson and then, if

5  he granted it, Defendants could have sought a modification of the case management order from

6  the District Judge, Pls.' Opp'n at 5 n.6, is illogical; the request for a stay and the request for a

7  corresponding modification of the case management order are inextricably intertwined.

8    Third, much of Plaintiffs' opposition recounts the various discovery disputes that are the

9  subject of Plaintiffs' discovery motions before Magistrate Judge Larson. Those disputes do not

10  bear on the propriety of a protective order staying further discovery and corresponding

11  modification of the case management order, and Plaintiffs' rehashing of them appears designed to

12  prejudice the Court with respect to the issue that Defendants have presented. To the extent that

13  the Court is interested in the arguments concerning Plaintiffs' discovery motions, Defendants

14  respectfully refer the Court to the extensive briefing of them, Dkt. Nos. 76, 96, 121, 125, 128,

15  131, 139, 142-144.

16    Lastly, it is important to observe that Plaintiffs continue to rely on a significant

17  mischaracterization of DoD and Army's document searches despite Defendants' having

18  prominently pointed it out in their oppositions to Plaintiffs' discovery motions (which Defendants

19  filed the day before Plaintiffs' opposition to the instant motion). *See* Pls.' Opp'n at 4 ("it is

20  apparent that Defendants have yet to search some of the most basic locations for documents"). In

21  support of their discovery motions, Plaintiffs asserted that it appears DoD and Army have not

22  conducted searches at Edgewood Arsenal, which was the Army's center for chemical research.

23  *E.g.*, Pls.' Mot. for Sanctions at 3 (Dkt. No. 131). To the contrary, DoD and Army focused their

24  search efforts in response to Plaintiffs' first set of RFPs on documents stored at Edgewood, and

25  Defendants explained to Plaintiffs well in advance of Plaintiffs' discovery motions that DoD and

26  Army are continuing to search for additional documents at Edgewood. *See, e.g.*, Lee Decl. ¶¶ 2-3

27  (Dkt. No. 143-2, filed with, *inter alia*, Defs.' Opp'n to Mot. to Compel Docs.); Letter of July 30,

28

2010 from C. Wolverton to Pls. at 2 (Dkt. No. 150-4, Ex. H to Am. Wolverton Decl. filed in support of Defendants' opposition to Plaintiffs' motion for sanctions).  And contrary to the press article that Plaintiffs cite, Pls.' Opp'n at 8 n.11, Fort Detrick was also a focus of DoD and Army's searches in response to Plaintiffs' first set of RFPs.  *See* Lee Decl. ¶¶ 2-3 (Dkt. No. 143-2, filed with, *inter alia*, Defs.' Opp'n to Mot. to Compel Docs.).

## **CONCLUSION**

For the foregoing reasons and those set forth in Defendants' opening memorandum, the Court should find Defendants' motion supported by good cause, grant it, and (i) enter a protective order staying Defendants' obligation to respond to Plaintiffs' discovery requests and any further discovery requests until completion of DoD's investigation, and (ii) modify the Case Management Order to extend the remaining deadlines by nine months.

Dated: September 23, 2010                    Respectfully submitted,

IAN GERSHENGORN
   Deputy Assistant Attorney General
MELINDA L. HAAG
   United States Attorney
VINCENT M. GARVEY
   Deputy Branch Director

   */s/ Caroline Lewis Wolverton*
CAROLINE LEWIS WOLVERTON
   Senior Counsel
KIMBERLY L. HERB
   Trial Attorney
LILY SARA FAREL
   Trial Attorney
BRIGHAM J. BOWEN
   Trial Attorney
   U.S. Department of Justice
   Civil Division, Federal Programs Branch
   P.O. Box 883
   Washington, D.C.  20044
   Telephone: (202) 514-0265
   Facsimile: (202) 616-8470
   E-mail: caroline.lewis-wolverton@usdoj.gov

Attorneys for Defendants