IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VIETNAM VETERANS OF AMERICA; SWORDS TO PLOWSHARES: VETERANS RIGHTS ORGANIZATION; BRUCE PRICE; FRANKLIN D. ROCHELLE; LARRY MEIROW; ERIC P. MUTH; DAVID C. DUFRANE; and WRAY C. FORREST, individually, on behalf of themselves and all others similarly situated,

      Plaintiffs,

  v.

CENTRAL INTELLIGENCE AGENCY, et al.,

      Defendants.

No. C 09-0037 CW

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO FILE A THIRD AMENDED COMPLAINT
(Docket No. 87)

    Plaintiffs Vietnam Veterans of America (VVA), et al., move for leave to file a third amended complaint. Defendants Central Intelligence Agency, et al., oppose Plaintiffs' motion in part. The motion was taken under submission on the papers. Having considered the papers submitted by the parties, the Court GRANTS Plaintiffs' motion in part and DENIES it in part.

BACKGROUND

    Because the Court's Order of January 19, 2010 describes the allegations of this case in sufficient detail, they will not be repeated in their entirety here. In sum, Plaintiffs charge Defendants with various claims arising from the United States' human experimentation programs, many of which were conducted at Edgewood Arsenal and Fort Detrick, both located in Maryland.

    On December 17, 2009, Plaintiffs filed a second amended complaint (2AC), seeking declaratory and injunctive relief. In

their 2AC, Plaintiffs asked the Court to declare that the consent forms signed by the individual Plaintiffs are not valid or enforceable; that the individual Plaintiffs are released from their secrecy oaths; that Defendants are obliged to notify the individual Plaintiffs and other test participants about their exposures and the known health effects and to provide all available documents and evidence concerning their exposures; that Defendants violated the individual Plaintiffs' rights under the Due Process Clause; and that Defendants are obliged to provide medical care to the individual Plaintiffs.  Plaintiffs also sought orders requiring Defendants to notify volunteers of the details of their participation in the human experimentation program; to conduct a thorough search of "all available document repositories" and provide victims with all documents concerning their exposure; to provide examinations and medical care to all volunteers involved in the MKULTRA, Edgewood, and other human experiments, to the extent that the volunteers have a disease or condition related to their exposures; to supply the Department of Veterans Affairs with information on the individual Plaintiffs' participation in the experiments, so that they may seek service-connected death or disability compensation (SCDDC); and to cease committing violations of United States and international law.  Separately, the organization Plaintiffs requested a declaration that the Supreme Court's holding in United States v. Feres, 340 U.S. 135 (1950), is unconstitutional.[1]

---

[1] In Feres, the Court held that injuries that "arise out of or are in the course of activity incident" to military service fall
(continued...)

2

The Court granted in part and denied in part Defendants' motions to dismiss. Plaintiffs' claim for declaratory relief on the lawfulness of the testing program was dismissed with prejudice for lack of standing. The organization Plaintiffs' claim for declaratory relief that the Feres doctrine is unconstitutional was dismissed with prejudice for lack of subject matter jurisdiction.

Plaintiffs now move for leave to file a third amended complaint (3AC). They seek to add two new Plaintiffs, Tim Michael Josephs and William Blazinski. In addition, their proposed 3AC includes claims against two new Defendants, the Department of Veterans Affairs and its Secretary, Eric K. Shinseki (collectively, the DVA).

Plaintiffs allege that the DVA has become involved in the process of notifying veterans about their participation in the United States' chemical and biological experiments. For various reasons, Plaintiffs complain that the DVA's notification efforts have been inadequate and have misled test participants. For instance, they plead that the DVA has disseminated "misrepresentations of material fact" and other information that have discouraged test participants from applying for SCDDC and health care. Pls.' Mot., Ex. A ¶ 238. Plaintiffs also aver that, because of its participation in experimentation programs, the DVA harbors an institutional bias against Plaintiffs and putative class members and, as a result, its adjudication of these veterans'

---

[1](...continued)
outside the sovereign immunity waiver of the Federal Tort Claims Act. 340 U.S. at 146. The Feres doctrine bars suits for money damages involving injuries incident to military service. See Costo v. United States, 248 F.3d 863, 866 (9th Cir. 2001).

3

claims for SCDDC and health care violates their due process rights. Id. ¶ 241.

Based on these new allegations, Plaintiffs seek leave to add two claims against the DVA. The first is for declaratory and injunctive relief. In particular, they ask the Court to declare that

> the notification procedures and efforts by the DVA are inadequate, that Defendants' compliance with their notification obligations has been unreasonably delayed . . . , and that decisions made by the DVA respecting entitlement to SCDDC and/or eligibility for free and/or medical care based upon service connection are null and void due to violations of the due process clause of the Fifth Amendment to the U.S. Constitution.

Id. ¶ 242. They also seek orders

> forbidding defendants from continuing to mislead "volunteers" or their survivors concerning the nature and extent of the testing program, health effects, and the other representations described above, and from continuing to use biased decision makers to decide their eligibility for free, priority health care and for SCDDC . . . .

Id. ¶ 243. In addition, they seek an order

> directing the DVA to propose a plan to remedy denials of affected claims for SCDDC and/or eligibility for medical care based upon service connection and to devise procedures for resolving such claims that comply with the due process clause, which involve, at a minimum, an independent decision maker, all to be submitted to the Court for advance approval.

Id.

In their second proposed claim, Plaintiffs seek to compel agency action pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 706(1). They contend that, in adjudicating claims for SCDDC, the DVA violates 38 C.F.R. § 3.102, an agency regulation

4

that requires resolving reasonable doubts in favor of claimants.[2] They cite Training Letter 06-04, published by the Veterans Benefits Administration (VBA), which allegedly states "that where a medical examiner determines that 'the effects of exposure are unknown,' that exposure 'could be a contributor,' or that exposure 'may have a relationship' to a veteran's disease or disability, that such determinations '<u>are insufficient justification for a grant of service connection</u>.'" Pls.' Mot., Ex. A ¶ 245 (emphasis by Plaintiffs). Plaintiffs also allege that the DVA has "unlawfully withheld and unreasonably delayed notice to" affected veterans about their exposures in the experimentation programs. Pls.' Mot., Ex. A ¶ 246. For their APA claim, Plaintiffs seek "a declaration that DVA's rating procedures and standards for deciding chemical

---

[2] Section 3.102 provides,

> It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence. Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

5

and biological weapons claims violate the rule of reasonable doubt." Id. ¶ 247.  They also seek orders (1) "compelling the DVA to apply the reasonable doubt doctrine to Plaintiffs and all 'volunteers' whose conditions may be related to their participation in testing, or where the effects of their exposure are unknown, and thus may be the cause of their disabilities or diseases" and (2) "forbidding DVA from refusing to notify Plaintiffs and all 'volunteers' of the details of their participation in human experimentation programs and provide them with full documentation of the experiments done on them and all known or suspected health effects." Id.

## DISCUSSION

Federal Rule of Civil Procedure 15(a) provides that leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires."  Leave to amend lies within the sound discretion of the trial court, which discretion "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) (citations omitted).  Thus, Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

Courts consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the plaintiff has previously amended the complaint. Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1055 n.3 (9th Cir. 2009). Futility, on its own, can justify denying a motion to amend. Id.

6

at 1055.  An amendment that adds a cause of action is futile if it fails to state a claim upon which relief could be granted. Townsend v. Univ. of Alaska, 543 F.3d 478, 486 n.6 (9th Cir. 2009).

Defendants do not oppose Plaintiffs' request to add Mr. Josephs and Mr. Blazinski to this action.  Defendants, however, object to the addition of claims against the DVA.

The proposed 3AC is not clear as to the nature of Plaintiffs' new claims.  Plaintiffs' reply, however, clarifies their intended challenges.  First, Plaintiffs seek relief under the Constitution and the APA concerning the DVA's adjudication of test participants' claims for SCDDC.  Second, they assert that the DVA has unlawfully delayed the fulfillment of its obligation to locate and notify test participants of their exposures, in violation of the APA.[3]

I.  Challenges to DVA Claims Adjudication Process

   A.  Futility

Defendants assert that Plaintiffs' proposed claims concerning the DVA's adjudication of claims for SCDDC and health care are futile because section 511(a) of title 38 of the United States Code divests the Court of jurisdiction to hear such challenges.

Section 511(a) provides that the Secretary of the DVA "shall decide all questions of law and fact necessary to a decision . . . under a law that affects the provision of benefits . . . to veterans or the dependents or survivors of veterans."  Subject to some exceptions, "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the

---

[3] Plaintiffs disavow any challenge to the adequacy of the content of the notice.  Reply 10 n.8.

7

nature of mandamus or otherwise." 38 U.S.C. § 511(a); see also Littlejohn v. United States, 321 F.3d 915, 921 (9th Cir. 2003) ("Section 511 provides, with certain exceptions, that decisions related to the provision of veterans' benefits 'may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.'"). One exception concerns individual benefits determinations. 38 U.S.C. § 511(b)(4). After exhausting their administrative remedies, veterans may appeal these decisions exclusively to the Court of Appeals for Veterans Claims (CAVC). Id. §§ 511(b)(4) and 7252(a). Further review may then be sought in the Court of Appeals for the Federal Circuit, which has appellate jurisdiction over the CAVC. Id. § 7292(d)(1).

It is well-settled that section 511 precludes federal district courts from reviewing challenges to individual benefits determinations, even if they are framed as constitutional challenges. See Tietjen v. U.S. Veterans Admin., 884 F.2d 514, 515 (9th Cir. 1989) (interpreting 38 U.S.C. § 211, the predecessor to § 511); see also Vietnam Veterans of Am. v. Shinseki, 599 F.3d 654, 658 (D.C. Cir. 2010) (stating that § 511 bars suits in which plaintiffs challenge "whether the VA 'acted properly' in making a benefit determination"); Beamon v. Brown, 125 F.3d 965, 972 (6th Cir. 1997). Less apparent, however, is the effect of section 511 on actions, like this one, that purport not to challenge individual benefits decisions, but rather the manner in which such decisions are made. The Ninth Circuit has not squarely addressed this issue, and other circuits considering the extent to which section 511 strips district courts of jurisdiction have come to differing conclusions.

In <u>Broudy v. Mather</u>, the plaintiffs complained that the DVA unconstitutionally denied or partially denied benefits by relying on allegedly faulty data provided by the U.S. Department of Defense. 460 F.3d 106, 110 (D.C. Cir. 2006). The D.C. Circuit read section 511 narrowly, explaining,

> Section 511(a) does not give the VA <u>exclusive</u> jurisdiction to construe laws affecting the provision of veterans benefits or to consider all issues that might somehow touch upon whether someone receives veterans benefits. Rather, it simply gives the VA authority to consider such questions when making a decision about benefits, and, more importantly for the question of our jurisdiction, prevents district courts from "review[ing]" the Secretary's decision once made.

<u>Id.</u> at 111 (citations omitted; emphasis and alteration in original). After reviewing out-of-circuit cases, the court stated that

> while the Secretary is the sole arbiter of benefits claims and issues of law and fact that arise during his disposition of those claims, district courts have jurisdiction to consider questions arising under laws that affect the provision of benefits as long as the Secretary has not actually decided them in the course of a benefits proceeding.

<u>Id.</u> at 114.

The <u>Broudy</u> court concluded that section 511 did not preclude review of the plaintiffs' challenge because the Secretary never decided a question concerning the use of the faulty data. <u>Id.</u> The court distinguished its precedent, reasoning that, unlike in cases that necessitated the review of decisions on individual claims, the <u>Broudy</u> plaintiffs did not ask "the District Court to decide whether any of the veterans whose claims the Secretary rejected are entitled to benefits." <u>Id.</u> at 115. Thus, the court concluded, the district court had jurisdiction because the issues raised by the plaintiffs were not "'necessary to a decision by the Secretary.'"

9

1  Id. at 115 (quoting 38 U.S.C. § 511(a)); see also Bates v.
2  Nicholson, 398 F.3d 1355, 1365 (Fed. Cir. 2005) (stating that § 511
3  "only applies where there has been a 'decision by the Secretary'")
4  (citation omitted)).

5   In contrast, the Sixth Circuit has afforded section 511 a
6  broader preclusive effect, holding that the statute can bar
7  district courts from reviewing constitutional challenges to the
8  DVA's claims adjudication process.  Beamon, 125 F.3d at 974.  In
9  Beamon, the plaintiffs complained that the DVA's claims-handling
10 procedures caused unreasonable delays, which violated their due
11 process rights.  Id. at 966.  The court held that the plaintiffs'
12 challenge fell within the scope of section 511, explaining,

> Plaintiffs asked the district court to review the
> legality and constitutionality of the procedures that the
> VA uses to decide benefits claims.  Such a challenge
> raises questions of law and fact regarding the
> appropriate methods for the adjudication of veterans'
> claims for benefits.  Determining the proper procedures
> for claim adjudication is a necessary precursor to
> deciding veterans benefits claims.  Under § 511(a), the
> VA Secretary shall decide this type of question.

18 Id. at 970.  In reaching its decision, the Sixth Circuit rejected
19 the plaintiffs' argument that they were attacking the process and
20 not individual determinations.  The court reasoned, "To adjudicate
21 this claim, the District Court would need to review individual
22 claims for veterans benefits, the manner in which they were
23 processed, and the decisions rendered by the regional office of the
24 VA and the BVA."  Id. at 971.  Thus, while Broudy limits the effect
25 of section 511 to decisions "actually decided . . . in the course
26 of a benefits proceeding," 460 F.3d at 114, Beamon takes a more
27 expansive view, concluding that the statute encompasses decisions
28 that are "necessary precursor[s] to deciding veterans benefits

10

claims," 125 F.3d at 970.

Here, Plaintiffs raise two legal challenges concerning the DVA's adjudication of test participants' claims for SCDDC and medical care. First, Plaintiffs assert a challenge under the Fifth Amendment. They contend that the DVA, in adjudicating test participants' claims for SCDDC and medical care, acts as "an inherently biased decision maker" and, as a result, violates "the due process rights of test participants across the board." Pls.' Reply at 6. As noted above, Plaintiffs maintain that the DVA's bias arises from its participation in experiments on human subjects. Second, Plaintiffs assert that the DVA violates the APA because its decision-making procedures, as embodied in a VBA training letter, are contrary to 38 C.F.R. § 3.102.

Section 511 does not bar Plaintiffs' claim under the Fifth Amendment. Under this theory, they mount a facial attack on the DVA as the decision-maker. They do not challenge the DVA's procedures or seek review of an individual benefits determination. Nor do they attack any particular decision made by the Secretary. The crux of their claim is that, because the DVA allegedly was involved in the testing programs at issue, the agency is incapable of making neutral, unbiased benefits determinations for veterans who were test participants. This bias, according to Plaintiffs, renders the benefits determination process constitutionally defective as to them and other class members. Whether the DVA is an inherently biased adjudicator does not implicate a question of law or fact "necessary to a decision by the Secretary" related to the provision of veterans' benefits. See Thomas v. Principi, 394 F.3d 970, 975 (D.C. Cir. 2005). Accordingly, even under Beamon,

11

section 511 does not bar Plaintiffs from raising a facial due process challenge in this Court, and their amendment to add such a claim is not futile.

Plaintiffs' APA challenge, however, fares differently. They base this claim on a training letter published by the VBA. Although they have not proffered the letter, Plaintiffs allege that it embodies the "DVA's rating procedures" and guides how service connection determinations are made. Pls.' Mot., Ex. A ¶ 245. These allegations suggest that the letter reflects a decision made by the VBA, a department overseen by a delegee of the Secretary,[4] as to how to evaluate claims for benefits. This decision, in turn, impacts individual benefits determinations. Thus, in contrast to the constitutional challenge and the facts in Broudy, the APA claim concerning the training letter implicates a decision on a question of law necessary to the provision of benefits. Thus, under section 511, the Court lacks jurisdiction to consider whether the training letter violates 38 C.F.R. § 3.102.

Plaintiffs maintain that "no review of any decision on any individual veteran's benefits claim will be necessary" to decide whether the training letter violates 38 C.F.R. § 3.102. Reply at 7. However, this contention was rejected in Beamon, and Plaintiffs offer no persuasive argument that the Sixth Circuit's reasoning was unsound. Further, the D.C. Circuit's recent decision in Vietnam

---

[4] The BVA is under the control of the "Under Secretary for Benefits, who is directly responsible to the Secretary for the operations of the Administration." 38 U.S.C. § 7701(b). Pursuant to a delegation by the Secretary, the Under Secretary has "authority to act on all matters assigned to the Veterans Benefits Administration . . . and to authorize supervisory or adjudicative personnel within his/her jurisdiction to perform such functions as may be assigned." 38 C.F.R. § 2.6(b)(1).

12

Veterans of America is instructive. In that case, the plaintiffs complained that the DVA violated the APA and their due process rights based on the average length of time it takes to adjudicate veterans' claims. 599 F.3d at 656. The D.C. Circuit did not decide whether section 511 precluded the federal district court's review of the challenge. However, the court opined, "Whether looking at an individual case or a mass of cases, a decision or decisions as to when to issue opinions would appear to be a preliminary decision necessary to a final decision -- and although more precisely an administrative determination, it would seem to be covered by the broad cloak 'law and fact' phrase of § 511." Id. at 658. Here, the training letter reflects "a preliminary decision necessary to a final decision," which the Court cannot review.

Plaintiffs also argue that, if they could not challenge the training letter in this Court, they would be foreclosed from seeking any relief. However, as Plaintiffs allege, individual benefits determinations are based in part on the procedures allegedly set forth in the training letter. Thus, Plaintiffs and putative class members may appeal these individual determinations to the CAVC and, in that forum, raise a challenge against the training letter.

Consequently, under section 511, the Court lacks jurisdiction to hear Plaintiffs' APA claim concerning the training letter, rendering the addition of this claim futile. Section 511, however, does not preclude the Court's review of Plaintiffs' constitutional challenge to the DVA as an inherently biased decision-maker as to them and putative class members.

13

B.   Addition of a "Separate and Distinct Subject"

Defendants alternatively argue that Plaintiffs should be denied leave to add any claim concerning the adjudicatory process because doing so "would add a separate and distinct subject to this lawsuit . . . ." Opp'n at 7. Defendants complain that the discovery associated with such a claim would delay the resolution of this case.

Fact discovery is not scheduled to close in this action until May 31, 2011. The Court is not persuaded that Plaintiffs' claim that the DVA functions as a biased decision-maker would inject any undue delay.

Accordingly, Plaintiffs are granted leave to amend their complaint to add claims against the DVA and Secretary Shinseki for due process violations based on the DVA's alleged bias in rendering decisions on Plaintiffs' and putative class members' claims for benefits.

II.  Challenge to DVA's Efforts to Locate and Notify Test Participants

As noted above, Plaintiffs assert that the DVA has unreasonably delayed in fulfilling its obligation to locate and notify test participants, and they seek to compel agency action pursuant to 5 U.S.C. § 706(1). Plaintiffs disavow any challenge to the content of the notice provided by the DVA.

Defendants assert that an amendment to add this challenge would be futile because Plaintiffs have not identified a statute or regulation compelling the DVA to undertake any effort to provide notice to test participants of their exposures. In addition, they contend that Plaintiffs unduly delayed in seeking to amend their

14

complaint to add such a claim.

Section 706(1) of the APA enables federal courts to "compel agency action unlawfully withheld or unreasonably delayed." A court's "ability to 'compel agency action' is carefully circumscribed to situations where an agency has ignored a specific legislative command.'" <u>Hells Canyon Preservation Council v. U.S. Forest Svc.</u>, 593 F.3d 923, 932 (9th Cir. 2010).

In <u>Norton v. Southwest Utah Wilderness Alliance</u> (<u>SUWA</u>), the Supreme Court established that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a <u>discrete</u> agency action that it is <u>required to take</u>." 542 U.S. 55, 64 (2004) (emphasis in original). "Discrete" actions include providing "rules, orders, licenses, sanctions, and relief." <u>Hells Canyon</u>, 593 F.3d at 932. A discrete action is legally required when "the agency's legal obligation is so clearly set forth that it could traditionally have been enforced through a writ of mandamus." <u>Id.</u> (citing <u>SUWA</u>, 542 U.S. at 63). "The limitation to <u>required</u> agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." <u>SUWA</u>, 542 U.S. at 65 (emphasis in original).

Plaintiffs contend that DVA's legal obligation to notify test participants flows from two statements. They point to a website, apparently maintained by the Department of Defense, that states,

> The Department of Defense (DoD) and the Department of Veterans Affairs (VA) play distinct roles in dealing with chemical and biological (CB) exposures. DoD identifies and validates veteran's exposure to CB agents (What was he exposed to? When and Where was he exposed?) and provides the names of these individuals along with their exposure information to the VA. The VA then notifies

15

>      individuals of their potential exposure, provides
>      treatment, if necessary, for these individuals and
>      adjudicates any claim for compensation.

<u>Welcome to the Chemical-Biological Warfare Exposures Site</u>, Force Health Protection & Readiness Policy & Programs, http://fhpr.osd.mil/CBexposures/index.jsp (last visited Nov. 15, 2010). Plaintiffs also refer to letters, sent by former DVA Secretary R. James Nicholson to two members of Congress, which discuss "the Department of Veterans Affairs (VA) effort to conduct outreach to veterans who may have received hazardous chemical, biological, or radiological exposure" and states that the "VA is committed to this effort as evidenced by previous and on-going departmental activities regarding atmospheric testing of nuclear weapons, Project 112/Shipboard Hazard and Defense, and mustard gas." <u>E.g.</u>, Reply, Ex. 1 at VVA-VA0009309.

These statements are not sufficient to establish a legally enforceable obligation. Plaintiffs do not identify any statute or regulation that compels the DVA to participate in the notification process. Nor do they cite controlling precedent that empowers the Court to impose a binding legal obligation on the agency based on such statements. Thus, Plaintiffs cannot bring a claim under section 706(1) to compel the DVA to redouble its notification efforts.

Plaintiffs cite <u>Soda Mountain Wilderness Council v. Norton</u>, in which the court opined that an agency's statement, in connection with the adoption of a management plan, constituted a legally binding commitment. 424 F. Supp. 2d 1241, 1260 (E.D. Cal. 2006). There, the Bureau of Land Management, in a record of decision, stated,

16

> The public impressed upon BLM the desire to consolidate public lands in areas with outstanding recreational opportunities and unusual or imperiled biological resources. Conversely, existing public lands with limited recreational potential and/or commonplace natural resources were identified for disposal. <u>This document represents BLM's commitment to these public desires and constitutes a compact with the public.</u>

Id. (citation omitted; emphasis by Soda Mountain court). Although the plaintiffs sought relief under section 706(2)(A), not section 706(1), the court opined, "It seems clear that the agency went out of its way to make clear it was committing to a certain process, and withdrawing from that 'compact with the public' would appear to subject the agency to suit under § 706(1)." Id.

Even if such a statement could bind an agency, Soda Mountain is distinguishable. There, the agency's statement was associated with a specific and detailed management plan, which clearly set forth obligations that could be enforced by a court. Here, the statements Plaintiffs cite are not connected with a similarly specific plan. Further, the DVA did not purport to make a compact with the public. The website merely states the DVA's role in a joint endeavor with the DoD. And the letters by then-Secretary Richardson did not create a legal obligation or commit the DVA to a particular course of action. Cf. Porter v. Bowen, 496 F.3d 1009, 1017 (9th Cir. 2007) (noting that letter by California secretary of state to assembly speaker would not "typically create legal obligations"). Although the letters listed steps the agency was taking to notify exposed veterans, they do not indicate that it was obliged to do so or on what timeline its task would be completed. Indeed, the letters state that such a timeline had not been developed. As noted above, Plaintiffs offer no authority that such

17

letters impose enforceable legal obligations.

Plaintiffs cannot state a claim under section 706(1) against the DVA based on the website and the Richardson letters. Accordingly, an amendment to add this claim would be futile.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion for leave to file a 3AC. (Docket No. 87.) Plaintiffs may amend their complaint to add Tim Michael Josephs and William Blazinski as Plaintiffs and the Department of Veterans Affairs and Secretary Eric K. Shinseki as Defendants. They may also make any correction necessitated by the passing of Plaintiff Wray Forrest. Plaintiffs are also granted leave to add a claim for declaratory and injunctive relief under the Fifth Amendment concerning the DVA's alleged bias in adjudicating Plaintiffs' and putative class members' claims for SCDDC and health care. They may not include their other proposed additions.

Plaintiffs shall file their 3AC within three days of the date of this Order. Defendants may not file a motion to dismiss based on the arguments made in this motion.

IT IS SO ORDERED.

Dated: 11/15/2010

CLAUDIA WILKEN
United States District Judge