IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIETNAM VETERANS OF AMERICA; SWORDS TO PLOWSHARES: VETERANS RIGHTS ORGANIZATION; BRUCE PRICE; FRANKLIN D. ROCHELLE; LARRY MEIROW; ERIC P. MUTH; DAVID C. DUFRANE; TIM MICHAEL JOSEPHS; and WILLIAM BLAZINSKI, individually, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>CENTRAL INTELLIGENCE AGENCY; LEON PANETTA, Director of Central Intelligence; UNITED STATES DEPARTMENT OF DEFENSE; DR. ROBERT M. GATES, Secretary of Defense; UNITED STATES DEPARTMENT OF THE ARMY; PETE GEREN, United States Secretary of the Army; UNITED STATES OF AMERICA; ERIC H. HOLDER, Jr., Attorney General of the United States; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; and ERIC K. SHINSEKI, UNITED STATES SECRETARY OF VETERANS AFFAIRS.<br><br>    Defendants. | No. C 09-0037 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS IN PART PLAINTIFFS' THIRD AMENDED COMPLAINT AND DENYING PLAINTIFFS' MOTION TO STRIKE (Docket Nos. 187 and 211) |

Defendants United States of America; U.S. Attorney General Eric Holder; the Central Intelligence Agency and its Director Leon Panetta (collectively, CIA); and the U.S. Department of Defense, its Secretary Robert M. Gates, the U.S. Department of the Army, and its Secretary Pete Geren (collectively, DOD) move to dismiss Plaintiffs Vietnam Veterans of America, et al.'s Third Amended Complaint (3AC). Defendants U.S. Department of Veterans Affairs

(DVA) and its Secretary Eric K. Shinseki do not join the motion.[1] Plaintiffs oppose the motion in part and move to strike the CIA's administrative record lodged by Defendants. Defendants oppose Plaintiffs' motion to strike. The motions were taken under submission on the papers. Having considered the papers submitted by the parties, the Court GRANTS in part Defendants' motion to dismiss and DENIES it in part, and DENIES Plaintiffs' motion to strike.

BACKGROUND

Because the Court's Order of January 19, 2010 describes the allegations of this case in sufficient detail, they will not be repeated here in their entirety. In sum, Plaintiffs charge Defendants with various claims arising from the United States' human experimentation programs, many of which were conducted at Edgewood Arsenal and Fort Detrick, both located in Maryland. At issue in this motion are the following: (1) Plaintiffs' claims against the CIA for notice of their exposure to chemicals and for medical care; (2) their claims against Attorney General Holder; and (3) their claims against the DOD for medical care.

Plaintiffs contend that their claim for notice against the CIA has three bases. First, they cite a Department of Justice (DOJ) letter, issued in response to a CIA request for an opinion on the CIA's "obligations to the subjects of the Project MKULTRA drug-testing activities sponsored by the CIA in the 1950s and 1960s." Compl., Ex. A, at A-006. The DOJ letter stated that

> the CIA may well be held to have a legal duty to notify

---
[1] For simplicity, the Court refers to the Moving Defendants as Defendants below.

2

>those MKULTRA drug-testing subjects whose health the CIA has reason to believe may still be adversely affected by their prior involvement in the MKULTRA drug-testing program; that an effort should be made to notify these subjects; that legal constraints and a concern for these subjects' privacy mandate that any notification effort be a limited and circumspect one; and, while the CIA might lawfully ask another agency to undertake the notification effort in this instance, the CIA also has lawful authority to carry out this task on its own.

Id. Specifically, the DOJ opined that, "under the common law of torts," "a duty would be found to exist on the part of the government to notify those subjects of the MKULTRA program whose health can be reasonably determined to be still adversely affected by their prior involvement in MKULTRA drug-testing." Id. at A-014.

Plaintiffs' second and third bases for their claim against the CIA for notice are testimony by its former director, Admiral Stansfield Turner, and the agency's conduct after Turner made his comments. At congressional hearings in 1977, Turner indicated that the CIA was working "'to determine whether it is practicable . . . to attempt to identify any of the persons to whom drugs may have been administered unwittingly,' and . . . 'if there are adequate clues to lead to their identification, and if so, how to go about fulfilling the Government's responsibilities in the matter.'" 3AC ¶ 13. At one of the hearings, Senator Edward Kennedy apparently asked, "Do you intend to notify those individuals?," to which Turner replied, "Yes." Additionally, Plaintiffs rely on the administrative record lodged by the CIA in this case, which contains statements made after the hearings which Plaintiffs believe demonstrate the CIA's understanding that it had a duty to afford notice.

To support their claim against the DOD for medical care,

3

Plaintiffs rely on a June 30, 1953 Memorandum from the Department of the Army Office of the Chief of Staff (CS: 385) and the 1962 iteration of Army Regulation 70-25 (AR 70-25 (1962)). CS: 385 provided "guidance for all participants in research in atomic, biological and/or chemical warfare defense using volunteers," whereas AR 70-25 (1962) governed "the use of volunteers as subjects in Department of Army research." 3AC ¶¶ 125 and 126. Both provided that medical treatment and hospitalization "will be provided for all casualties" of the experiments. Id. ¶¶ 125b and 128. An appendix to AR 70-25 (1962) provided "opinions of The Judge Advocate General" that were intended to "furnish specific guidance for all participants in research using volunteers." Defs.' Mot., Ex. B, at 4. There, the Judge Advocate General opined,

> Compensation for the disability or death of a civilian employee resulting from personal injury or disease proximately caused by his employment is payable under the Federal Employees Compensation Act, regardless of whether his employment was of a hazardous nature. The amount and type of disability compensation or other benefits payable by reason of the death or disability of a member of the Army resulting from injury or disease incident to service depends upon the individual status of each member, and is covered by various provisions of law. It may be stated generally that under present laws no additional rights against the Government will result from the death or disability of military and civilian personnel participating in experiments by reason of the hazardous nature of the operations.

Id. (citations omitted). This opinion was nearly identical to an opinion issued by the Judge Advocate General regarding CS: 385. See id., Ex. A, at 3.

On November 18, 2010, Plaintiffs filed their 3AC, which named the DVA and Secretary Shinseki as additional Defendants. On December 6, 2010, Defendants filed the current motion to dismiss.

4

This was their third such motion and raised arguments not contained in their two previous motions. On February 18, 2011, Defendants lodged with the Court an administrative record developed by the CIA. On February 25, 2011, Plaintiffs moved to strike the administrative record.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

## DISCUSSION

In response to Defendants' request for dismissal of their claim against the CIA for medical care, Plaintiffs state that "the medical care remedy they seek for test participants does not depend on the CIA's provision of that care." Pls.' Supp. Opp'n at 2 n.2. Plaintiffs do not offer any other response to Defendants' arguments

5

regarding this claim. Further, Plaintiffs do not oppose dismissal of their claims against Attorney General Holder. Accordingly, these claims are dismissed. The balance of Defendants' motion is considered below.

I.  Claim Against the CIA for Notice

Plaintiffs' claim against the CIA for notice arises under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702 and 706(1). Defendants contend that Plaintiffs' claim cannot arise under the APA, but rather must be brought under the Federal Tort Claims Act because Plaintiffs seek liability based on a duty to warn imposed by state tort law. See 28 U.S.C. § 1346(b); see also Broudy v. United States, 661 F.2d 125, 127 (9th Cir. 1981). Plaintiffs respond that they "do not rely on state tort law at all." Pls.' Supp. Opp'n at 3:5-6 (emphasis in original). Instead, Plaintiffs assert, they rely on the "DOJ Letter's conclusion," Turner's testimony before Congress and the CIA's course of conduct after Turner testified. Id. at 3-5 (emphasis in original).

Section 706(1) of the APA enables federal courts to "compel agency action unlawfully withheld or unreasonably delayed." A court's "ability to 'compel agency action' is carefully circumscribed to situations where an agency has ignored a specific legislative command.'" Hells Canyon Preservation Council v. U.S. Forest Serv., 593 F.3d 923, 932 (9th Cir. 2010).

In Norton v. Southwest Utah Wilderness Alliance (SUWA), the Supreme Court established that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." 542 U.S. 55, 64 (2004) (emphasis in original). "Discrete" actions include

6

1  providing "rules, orders, licenses, sanctions, and relief." Hells
2  Canyon, 593 F.3d at 932.  A discrete action is legally required
3  when "the agency's legal obligation is so clearly set forth that it
4  could traditionally have been enforced through a writ of mandamus."
5  Id. (citing SUWA, 542 U.S. at 63).  "The limitation to required
6  agency action rules out judicial direction of even discrete agency
7  action that is not demanded by law (which includes, of course,
8  agency regulations that have the force of law)."  SUWA, 542 U.S. at
9  65 (emphasis in original).  "Even a less formal agency 'plan' may
10 'itself create[] a commitment binding on the agency,' if there is
11 'clear indication of binding commitment in the terms of the plan.'"
12 Veterans for Common Sense v. Shinseki, ___ F.3d ___, 2011 WL
13 1770944, at *19 (9th Cir.) (quoting SUWA, 542 U.S. at 69, 71); see
14 also Soda Mountain Wilderness Council v. Norton, 424 F. Supp. 2d
15 1241, 1260 (E.D. Cal. 2006).

16  Nothing now cited by Plaintiffs supports their claim against
17 the CIA for notice.  The DOJ's opinion on a legal matter, on its
18 own, does not impose an obligation on the CIA.  The opinion was not
19 promulgated pursuant to APA procedures, nor did it reflect the
20 CIA's commitment to a particular plan.  The DOJ's conclusion was
21 based on state tort law, which Plaintiffs now assert is not the
22 basis of their claim.

23  Nor did Turner's testimony legally bind the CIA.  Turner
24 simply responded "yes" to Senator Kennedy's inquiry into whether
25 the agency intended to provide notice.  Intention and commitment
26 are different concepts.  Cf. Benitec Australia, Ltd. v. Nucleonics,
27 Inc., 495 F.3d 1340, 1347 (Fed. Cir. 2007) (noting distinction
28 between intention not to sue and commitment not to sue).

Furthermore, an agency may only be compelled to take discrete action. Turner's response, even if deemed to be a commitment, did not specify any particular steps the Court can order the CIA to undertake.

Finally, the CIA's conduct after Turner testified did not commit the agency to any particular action. Plaintiffs point to a July 24, 1978 memorandum from the CIA's general counsel to Turner, indicating that Turner had "already committed the Agency to supporting a [notification] program."[2] AR VET022-000012. However, this was "an internal administrative communication that lacks the force of law." Veterans for Common Sense, 2011 WL 1770944, at *19 (citing Rank v. Nimmo, 677 F.2d 692, 698-99 (9th Cir. 1982)). None of the internal memoranda cited by Plaintiffs legally bound the agency to take discrete agency action.

Accordingly, the Court dismisses Plaintiffs' claim against the CIA for its alleged failure to notify them about their chemical exposures and the known health effects, and failure to provide all available documents and evidence concerning their exposures.

II. Claim for Medical Care Against the DOD

As noted above, Plaintiffs' claim for medical care against the DOD is premised on CS: 385 and AR 70-25 (1962). Defendants argue that the Judge Advocate General's interpretations of CS: 385 and AR 70-25 (1962) demonstrate that the DOD never intended to provide

---

[2] Defendants complain that this argument requires consideration of material beyond Plaintiffs' complaint. However, Plaintiffs' complaint relies on the July 24 memorandum, 3AC ¶ 14, which Defendants provided to the Court as part of the CIA's administrative record. Thus, the Court may consider this evidence without converting Defendants' motion into one for summary judgment. See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001).

8

lifetime medical care for experiment participants.

The Judge Advocate General's interpretations do not bear the weight of Defendants' argument. The Judge Advocate General opined that the benefit owed to military employees of the Army "by reason of the death or disability. . . depends upon the individual status of each member, and is covered by various provisions of law." Defs.' Mot., Ex. B, at 4. Defendants contend that this statement shows that neither CS: 385 nor AR 70-25 (1962) can provide a basis for a medical care claim because "neither the 1952 memorandum nor AR 70-25 is a law." Id. 22:9. However, as this Court stated in its January 19, 2010 Order on Defendants' first and second motions to dismiss, Army regulations have the force of law. See Nat'l Med. Enters. v. Bowen, 851 F.2d 291, 293 (9th Cir. 1988); Kern Copters, Inc. v. Allied Helicopter Serv., Inc., 277 F.2d 308, 310 (9th Cir. 1960). Thus, under the Judge Advocate General's opinion, AR 70-25 (1962), as a provision of law, supports Plaintiffs' claim.

Defendants also point to the Judge Advocate General's opinion that "under present laws no additional rights against the Government will result from the death or disability of military . . . personnel participating in experiments by reason of the hazardous nature of the operations." Defs.' Mot., Ex. B, at 4. This statement, however, does not establish that experiment participants are not entitled to medical care under AR 70-25 (1962). The passage states only that the "hazardous nature" of the experiments does not create additional rights. This is not inconsistent with providing medical care for injuries caused by the experiments.

Finally, Defendants argue that, because AR 70-25 (1962) was

9

promulgated pursuant to 5 U.S.C. § 301,[3] it cannot confer an entitlement, such as medical care. Section 301 provides heads of executive and military departments with authority to establish regulations pertaining to "'housekeeping' matters like internal policies and procedures." Schism v. United States, 316 F.3d 1259, 1277 (Fed. Cir. 2002). Because regulations issued pursuant to the statute are so limited, such regulations "cannot authorize the creation of a benefit entitlement." Id. However, there is nothing in AR 70-25 (1962) or Plaintiffs' complaint to suggest that the regulation was issued pursuant to section 301.

Accordingly, Defendants do not justify dismissal of Plaintiffs' claim against the DOD for medical care.

III. Plaintiffs' Motion to Strike Administrative Record

Plaintiffs move to strike the CIA's Administrative Record, lodged by Defendants on February 18, 2011, asserting that its submission violates the Civil Local Rules. Striking the Administrative Record is not necessary. Notably, Plaintiffs relied on the Administrative Record in their opposition to Defendants' motion to dismiss.

Accordingly, Plaintiffs' motion to strike is denied.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part

---

[3] In full, section 301 provides,

The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

10

Defendants' motion to dismiss and DENIES it in part (Docket No. 187), and DENIES Plaintiffs' motion to strike (Docket No. 211). Plaintiffs' notice and medical care claims against the CIA and their claims against Attorney General Holder are dismissed. In all other respects, Defendants' motion to dismiss is DENIED.

Pursuant to the Court's April 14, 2011 Order, Defendants DVA and Eric K. Shinseki shall answer Plaintiffs' complaint within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: May 31, 2011

CLAUDIA WILKEN
United States District Judge