United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIETNAM VETERANS OF AMERICA, et al.,<br><br>             Plaintiffs,<br><br>     v.<br><br>CENTRAL INTELLIGENCE AGENCY, et al.,<br><br>             Defendants. | Case No.: 09-cv-0037 CW (JSC)<br><br>**ORDER RE: DEFENDANTS' MOTION FOR A PROTECTIVE ORDER (Dkt. No. 252), PLAINTIFFS' MOTION TO COMPEL (Dkt. No. 255), PLAINITFFS' MOTION TO COMPEL RULE 30(B)(6) DEPOSITIONS AND PRODUCTION OF DOCUMENTS (Dkt. No. 258), AND PLAINTIFFS' MOTION TO EXTEND DISCOVERY (Dkt. No. 260)** |

Pending before the Court are several discovery motions including Defendants' Motion for Protective Order Limiting Discovery (Dkt. No. 252), Plaintiffs' Motion to Compel Discovery (Dkt. No. 255), Plaintiffs' Motion to Compel Rule 30(b)(6) Depositions and Production of Documents (Dkt. No. 258), and Plaintiffs' Motion to Extend Discovery of CIA (Dkt. No. 260).   Having considered the parties' written submissions, and having had the benefit of oral argument on August 4, 2011 and September 22, 2011, the Court GRANTS Defendants' Motion for Protective Order Limiting Discovery (Dkt. No. 252) in part, GRANTS Plaintiffs' Motion to Compel Discovery (Dkt. No. 255) in part, GRANTS Plaintiffs' Motion to Compel Rule 30(b)(6) Deposition and Production of Documents (Dkt.

No. 258) in part, and GRANTS Plaintiffs' Motion to Extend Discovery of CIA (Dkt. No. 260).

### FACTUAL & PROCEDURAL BACKGROUND

The Court incorporates by reference the factual summary of the case in Judge Wilken's January 19, 2010 order.  (Dkt. No. 59).

Plaintiffs' remaining claims challenge: 1) the validity of the secrecy oaths; 2) whether the individual Plaintiffs are entitled to notice of chemicals to which they were exposed and any known health effects; 3) whether Defendants are obligated to provide medical care to the individual Plaintiffs; and 4) whether the Department of Veterans Affairs ("DVA") is an inherently biased decision-maker.  (Dkt. Nos. 177, 178 & 233).

On July 1, 2011, the parties filed joint letters detailing on-going discovery disputes regarding document production and Rule 30(b)(6) depositions.[1]   The parties appeared for a hearing regarding these disputes on August 4, 2011 and a briefing schedule was set for Plaintiffs to file a motion to compel.   On August 15, 2011, Defendants CIA and DOD filed a Motion for a Protective Order Limiting Discovery with Judge Wilken.  Judge Wilken subsequently issued an order addressing Section I.A. of Defendants' motion and referring the remainder to the undersigned judge for a decision.  (Dkt. No. 281).  With respect to Section I.A., Judge Wilken held that Plaintiffs only have a constitutional secrecy oath claim remaining against the CIA.  (Dkt. No. 281, 8:17-23).

Accordingly, now pending before the Court are:  Plaintiffs' Motion to Compel directed at the DVA, their separately filed Motion to Compel Rule 30(b)(6) Depositions and Production of Documents directed at the Central Intelligence Agency ("CIA") and Department of Defense ("DOD"), Plaintiffs' Motion to Extend the Discovery Cut-Off Period

---

[1] In late 2010, the parties filed motions to compel and for a protective order before Magistrate Judge Larson addressing many of the same issues underlying the present motions.  On November 12, 2010, Judge Larson issued orders resolving these motions.  (Dkt. No. 176 & 178).  The parties take varying positions regarding the applicability of these orders to their current disputes.  Because the procedural posture of the parties has changed considerably since Judge Larson issued his orders, the Court considers these issues anew.

United States District Court
Northern District of California

by 30-days, and part of Defendants CIA and DOD's Motion for a Protective Order Limiting Discovery.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1).  District courts have broad discretion in determining whether evidence is relevant for discovery purposes.  See Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005).

Federal Rules of Civil Procedure 33 and 34 provide that discovery requests must be responded to within 30 days.  "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."  Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992)) (internal citations omitted).

Pursuant to Northern District Local Rule 37–2, a party moving to compel discovery must "detail the basis for the party's contention that it is entitled to the requested discovery and show how the proportionality and other requirements of Fed.R.Civ.P. 26(b)(2) are satisfied." See also Fed.R.Civ.P. 26(b)(2) (requiring that when determining the appropriateness of discovery requests courts consider whether the discovery is duplicative or overly burdensome and whether the burden and expense of discovery outweighs the benefit).

Where a party contends that discovery requests are improper, the party can file a motion for a protective order pursuant to Rule 26(c).   In ruling on a motion for protective order, the Court may "issue an order to protect a ... person from ... undue burden," including "forbidding the disclosure or discovery; … prescribing a discovery method other than the one selected by the party seeking discovery; [or] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." See Fed. R. Civ. P. 26(c). Under Rule 26(c), district courts have "broad discretion … to decide when a protective order

United States District Court
Northern District of California

is appropriate and what degree of protection is required." See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

### DISCUSSION

This action was filed on January 7, 2009.  Discovery has been on-going for eighteen months and the present dispute is the latest in a series of discovery disputes between the parties.  In November 2010, Judge Larson issued an order resolving a number of outstanding disputes; however, much of the discovery Judge Larson ordered has not taken place and the parties have continued to meet and confer regarding outstanding requests.  Furthermore, the procedural posture of the parties has changed through the Court's rulings on various dispositive motions.  In the pending motions, Plaintiffs seek production of documents from the CIA, DVA and DOD and ask the Court to compel the CIA to designate witnesses for three Rule 30(b)(6) depositions.  The CIA and DOD move to offensively limit the scope of discovery sought by Plaintiffs.

The Court is cognizant of the seriousness of the issues in this litigation.  This putative class action concerns the conduct of four different government agencies over the course of several decades, much of which pre-dates any type of electronic record-keeping.   Plaintiffs are entitled to discovery regarding their allegations; however, the Court must weigh Plaintiffs' right to discovery against the burden any such discovery places on Defendants.  To date, Defendants have produced over a million pages of documents and the parties have taken numerous depositions.  At the hearing, Plaintiffs' counsel conceded that they had not yet reviewed these documents and were evaluating the cost of doing so.  (Dkt. No. 293, 103:6-10).

Under the principle of proportionality in discovery, the Court must limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).   Given that Plaintiffs have yet to review a significant amount of the discovery already produced in this action, the Court must view their additional requests for discovery with a critical eye.  The discovery at issue is enormous both in terms of its scope

United States District Court
Northern District of California

and the effort required to identify, review and produce.  The rules of discovery are rooted in proportionality and reasonableness – Plaintiffs' request that these government agencies provide limitless additional discovery at significant cost without first having reviewed the discovery they have already been provided is neither.  Nevertheless, where Plaintiffs can point to specific discovery that is relevant to their claims and that satisfies Rule 26's proportionality requirement, they are entitled to such discovery.

**A.      Plaintiffs' Motion to Compel Rule 30(b)(6) Depositions**

Plaintiffs seek Rule 30(b)(6) deposition testimony from the CIA on three topic areas: 1) health effects arising from participation in the testing programs, 2) the use of DVA patients in testing conducted or funded by the CIA related to chemical/biological weapons, and 3) the CIA's involvement in test programs.

Although Plaintiffs initially stated claims against the CIA for notice and health care, Judge Wilken's September 2, 2011 order makes clear that their only remaining claim against the CIA is a challenge to the secrecy oath.   As a result, Judge Wilken held that Plaintiffs were "not entitled to discovery on their notice and health care claims."  (Dkt. No. 281, 8:21-22).  Plaintiffs are entitled to discovery regarding their secrecy oath claim and their related allegation concerning "the CIA's pervasive involvement in planning, funding and executing the experimentation programs."  (Dkt. No. 281, 5:26-27).

**1.  Plaintiffs are not entitled to a Rule 30(b)(6) Deposition on health effects**

Plaintiffs seek Rule 30(b)(6) testimony and documents from the CIA concerning the health effects resulting from exposure to test substances and from participation in Defendants' testing programs.   In their motion to compel, Plaintiffs alleged that this evidence was relevant to Plaintiffs' health care and notice claims.  After Judge Wilken issued her order limiting Plaintiffs' claims against the CIA to the secrecy oath claim, Plaintiffs argued that the discovery was still appropriate given that "the CIA possesses key information concerning the effects of the substances used during the testing programs" as demonstrated by the fact that the DOD and Army copied the CIA on reports about the results of tests. (Dkt. No. 289, pp. 6-7).   In response to questioning at oral argument as to why Plaintiffs

United States District Court
Northern District of California

United States District Court
Northern District of California

could not get this evidence from the DOD or Army, against whom they still have a health effects claim, Plaintiffs indicated that it was unclear the other agencies still have these documents.

The CIA has produced over 17,000 pages of documents during the course of discovery in this action and represents that it "has conducted searches for documents concerning any project that involved testing on volunteer service members from 1947-1980." (Dkt. No. 279-26, ¶35).   The Court has reviewed the Declaration of Patricia Cameresi, the Information Review Officer for the CIA's Directorate of Science & Technology, which details the CIA's historical document review, as well as the review conducted for purposes of this litigation.  (Dkt. No. 279-26).   Ms. Camersi represents that the CIA has produced "all information in [the CIA's] possession about the health effects of the substances EA 3167 and the Boomer, which are the only substances mentioned as potentially being been [sic]tested on service members."  (Dkt. No. 279-26, ¶ 55).  Ms. Camersi states that to produce the additional documents Plaintiffs seek regarding health effects and prepare a witness to testify on this subject would take 12-18 months and cost over half a million dollars.

The Court must weigh the burden on the CIA to provide this additional health effects discovery against the discovery's potential relevance.   Given that this discovery is not relevant to a claim Plaintiffs currently have against the CIA and the possibility that such discovery would be cumulative of discovery Plaintiffs either already have or could obtain from another agency, the Court finds that under Rule 26's proportionality analysis Plaintiffs are not entitled to a Rule 30(b)(6) deposition from the CIA on the subject of health effects.[2]

## 2.  Plaintiffs are not entitled to a Rule 30(b)(6) Deposition regarding use of DVA patients in testing

Plaintiffs seek Rule 30(b)(6) testimony concerning the use of DVA patients in testing conducted or funded by the CIA related to chemical and/or biological weapons.   Plaintiffs have a facial bias claim against the DVA and allege that DVA's involvement in testing

---

[2] Although not fully briefed by either party, there is a suggestion that the CIA has refused to respond to some of Plaintiffs' Requests for Admission ("RFA").  In accordance with this Order, the CIA shall respond to RFAs that deal with Plaintiffs' secrecy oath claim.

programs makes the DVA an inherently biased decision-maker.  Accordingly, Plaintiffs

allege that evidence of any DVA involvement in the testing programs sponsored by other

Defendants, including the CIA, may demonstrate DVA's bias in adjudicating the claims filed

by test subjects for health problems caused by those same tests.  To the extent that this is

true, Plaintiffs could seek this evidence through a Rule 30(b)(6) deposition directed at the

DVA.  Plaintiffs are not entitled to a Rule 30(b)(6) deposition from the CIA on this topic.

### 3.   Plaintiffs are entitled to a Rule 30(b)(6) Deposition regarding the CIA's involvement in testing programs

Plaintiffs seek Rule 30(b)(6) testimony from the CIA concerning the CIA's

involvement in the testing programs.  Specifically, Plaintiffs have asked the CIA to designate

a witness on the following topic:

> the CIA's involvement (whether direct or through financial support)
> in the TEST PROGRAMS, including — but not limited to — CIA
> involvement of any kind in any test or experiments involving TEST
> SUBJECTS, for example, as reflected in the December 3, 1955
> memorandum produced at MKULTRA 0000146141_002-03, and
> any CIA experimentation involving substances identified on
> Plaintiffs' March 21, 2011 narrowed list also administered to any
> TEST SUBJECT as part of the TEST PROGRAMS. Plaintiffs also
> seek testimony CONCERNING the CIA's Victims Task Force.

Judge Wilken's September 2, 2011 order stated that the CIA's involvement in the testing

programs is relevant to Plaintiffs' secrecy oath claim and that Plaintiffs are entitled to

discovery on this subject.  (Dkt. No. 281 pp. 5-6).

The CIA objects to this discovery as overly burdensome and argues that the request is

so broad that it would encompass "discovery on 1) CIA programs that had nothing to do with

testing on volunteer service members, and 2) any and all aspects of those programs,

including those that have nothing do with so-called 'health effects.'"  (Dkt. No. 279-26 ¶ 89).

The CIA alleges that, as written, preparing a witness to testify on this subject would take 9-

12 months and cost several hundred thousand dollars.  (Dkt. No. 279-26 ¶ 93).   Although

Plaintiffs are entitled to some discovery regarding the test programs, it should be limited to

discovery that is relevant to their claims in this case.  Accordingly, the CIA is ordered to

United States District Court
Northern District of California

1  designate a witness pursuant to Rule 30(b)(6) regarding the CIA's involvement (whether

2  direct or through financial support) *in test programs involving service members*, including

3  information regarding the Victims Task Force activities *relating to service members*.

4  **B.     Plaintiffs' Request for the Production of Documents**

5        Plaintiffs' requests for the production of documents can be divided into six general

6  categories: 1) health effects, 2) pre-1953 discovery, 3) documents identified in the DTIC, 4)

7  DOD emails, 5) Battelle Documents, and 6) DVA documents.  With respect to the first five

8  categories of documents, the CIA and DOD object to producing each category individually,

9  and also collectively based on an Administrative Procedures Act ("APA") objection.

10        The Court will briefly address the CIA's APA objection.  The CIA alleges that review

11  of Plaintiffs' claims is limited to the administrative record under 5 U.S.C. § 706 because

12  Plaintiffs challenge a federal agency's actions.[3]  As an initial matter, Plaintiffs' secrecy oath

13  claim is a constitutional claim, and as such, Defendant's objection to discovery under the

14  APA is misplaced.  However, even if the claim were rooted in the APA, the Court finds that

15  discovery is not limited to the administrative record.

16        The CIA waived any objection under the APA by failing to raise the objection until

17  now, over eighteen months into discovery.  See Richmark Corp. v. Timber Falling

18  Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to

19  object to discovery requests within the time required constitutes a waiver of any objection.")

20  (internal citations omitted).   The parties had a fully briefed motion to compel before Judge

21  Larson covering many of these same subjects of discovery, and the CIA did not assert an

22  APA objection; in fact, the CIA did not even produce an administrative record until February

23

24

25  _____

26  [3] The parties disagree as to whether Plaintiffs' claims against the CIA are governed by 5 U.S.C. §
   706(1) or § 706(2).  Although the Court finds it unnecessary to reach this issue, Plaintiffs persuasively

27  argue that the claims are governed by 5 U.S.C. § 706(1) because they challenge the CIA's *failure* to
   act, and thus "review is not limited to the record as it existed at any single point in time, because there

28  is no final agency action to demarcate the limits of the record."  Friends of the Clearwater v.
   Dombeck, 222 F.3d 552, 560 (9th Cir. 2000).

United States District Court
Northern District of California

8

18, 2011.[4]   (Dkt. No. 208).   The CIA attempts to negate its waiver by alleging that it responded to discovery requests in the "spirit of compromise" while maintaining its APA objections to the discovery.   This argument is unpersuasive as there is nothing in the record before the Court that suggests that such an objection was "maintained."   To the contrary, it appears to be a new objection raised for the first time earlier this year in letters to Plaintiffs' counsel.  (Dkt. Nos. 286-4 & 286-4).   The Court finds that any objection to discovery the CIA or any of the other Defendants may have had under the APA has been waived.

The Court now turns to the individual categories of documents sought in Plaintiffs' two motions to compel.

### 1.  Health Effects

Plaintiffs assert that the CIA should expand the search parameters it is using to respond to Plaintiffs' Requests for Production to include documents reflecting the possible health effects of the narrowed list of 51 substances.   For the reasons outlined above, the Court finds that Plaintiffs are not entitled to any further document production from the CIA on the subject of health effects.   However, the CIA must still produce those documents it already agreed to produce, including documents responsive to Plaintiffs' Request for Production No. 60 regarding the drugs and substances the CIA obtained from the DVA and other government agencies.   Accordingly, to the extent that the CIA seeks a protective order preventing Plaintiffs from obtaining further health effects discovery that request is granted in part.

### 2.  Request for pre-1953 information from the DOD

Plaintiffs seek documents from the entire time-frame of the testing programs, which allegedly began in approximately 1942.   The Third Amended Complaint contains allegations regarding testing programs which date back until at least 1942.  (Dkt. No. 180 ¶ 100-105).   The DOD contends that pre-1953 documents are not relevant to Plaintiffs' claims because Plaintiffs claims against the DOD arise under the APA.   However, the Third

---

[4] Neither the DOD nor the Army have identified an administrative record; however, the CIA's motion for a protective order indicates that the Army and DOD intend to seek leave of the Court to file an administrative record.  (Dkt. No. 252, p. 16, n. 7).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Amended Complaint alleges both constitutional and APA violations and the district court has

2   not limited Plaintiffs' claims against the DOD.  Accordingly, Plaintiffs' discovery requests to

3   the DOD are not limited to their APA claims, and even if they were, the Court would find

4   that DOD had waived any objection under the APA as discussed above.  Accordingly, to the

5   extent that the DOD seeks a protective order preventing Plaintiffs from obtaining pre-1953

6   discovery, that request is denied.

7          The DOD also objects to Plaintiffs' discovery requests as overly burdensome and

8   suggests that Plaintiffs have obtained all the information they need from the DOD through

9   the DOD's responses to Plaintiffs' Request for Admissions.  However, DOD's responses to

10  requests for admission do not foreclose Plaintiffs' ability to obtain other discovery from the

11  DOD.  Among other issues, it appears that the DOD has limited its responses to the findings

12  of the 1993 National Academy of Sciences Report "Veterans at Risk: The Health Effects of

13  Mustard Gas and Lewisite."  The DOD somewhat confusingly states that "[a]lthough the

14  DOD has not generally run specific searches targeted at documents regarding testing before

15  1953, its searches to date have resulted in the identification and production of approximately

16  10,000 documents that pre-date 1953."  (Dkt. No. 279  ¶ 9(i)).

17         As a result of the 1993 report, the DOD formed the Chemical Weapons Exposure

18  Study ("CWEST") project, which sought to identify veterans who had been exposed to

19  mustard gas or lewisite between 1942 and 1953 and compiled a 1,250 page report about

20  these efforts.  (Dkt. No. 279-12 ¶ 2).   The CWEST team identified "voluminous material

21  during the approximately three-year course of study," which was compiled into a 147-page

22  index containing over 5,000 distinct entries.   (Dkt. No. 279-12 ¶ 4).  Although the DOD

23  states that it produced the CWEST report to Plaintiffs, it does not appear that it has produced

24  the 5,000 documents identified in the 147-page index.   However, DOD asserts that it would

25  take 833 employee hours to review the CWEST documents.

26         Plaintiffs raise important questions regarding whether the DOD has produced all the

27  information regarding pre-1953 health effects not covered by the 1993 study.  Plaintiffs are

28  entitled to discovery beyond the 1993 study, as well as discovery regarding the 55,000

mustard gas and lewisite test subjects who did not receive the DVA notification letter.   The Court must nevertheless consider the burden on Defendant to review and identify further documents relating to pre-1953 testing.  The Court notes that it is unclear what further pre-1953 information might exist and that Plaintiffs may already have the necessary evidence since Plaintiffs have not yet reviewed the million pages of documents already produced. (Dkt. No. 279-12 ¶ 5).  In the interests of proportionality, to the extent that the DOD alleges that this information is contained in the CWEST study or the materials identified by the CWEST team, DOD shall produce the 147-page index of identifying materials to Plaintiffs who may review the list and request those documents from the list which they believe are relevant.  Similarly, to the extent that additional information regarding pre-1953 mustard gas and lewisite exposure is available through the Defense Technical Information Center ("DTIC") database, Plaintiffs should share some of the burden of reviewing these documents, as discussed more fully below.

### 3.  Documents Identified in the DTIC database

Plaintiffs seek production of documents DOD has identified using keyword searches of the DTIC database.  The DTIC database is the central repository for DOD technical documents, including technical documents concerning the testing programs.  DOD conducted two searches based on Plaintiffs' discovery requests in this case.  The first search resulted in 223 bibliographies containing 37,793 document references and the second search, based on the specific list of chemical substances at issue in this case, resulted in 23,906 document references.  (Dkt. No. 279-13, ¶¶ 11-12).  The process of generating these search results took six DOD employees 300 hours.  (Dkt. No. 279-13 ¶  16).  The bibliographies contain the author, title, an abstract, and information regarding the DOD organization that generated the document.  The DOD contends that the bibliographies contain sufficient information for Plaintiffs to tell which documents would have relevant information and that bibliographies such as these are routinely used by scientists, technical researchers and the general public to identify relevant documents.  (Dkt. No. 279-13, ¶ 15).

The parties dispute who should have the burden of reviewing the bibliographies. DOD asserts that it would be an undue burden for it to do so because it would take another 87 weeks.  (Dkt. No. 279-21, ¶ 22).  Given the significance of the burden to review these bibliographies and the extensive discovery already produced to date, Plaintiffs should share some of the burden of reviewing the bibliographies.  Plaintiff shall provide DOD with a narrowed list of search terms and DOD shall regenerate the bibliographies using this narrowed list of terms.  Plaintiffs shall then review the bibliographies and select those documents which Plaintiffs believe are relevant.   The DOD shall provide Plaintiffs with the identified relevant documents.  Plaintiffs are cautioned to exercise reasonableness and discretion with respect to their document request.

### 4.  DOD emails

Plaintiffs allege that DOD has failed to search for and produce email correspondence in response to Plaintiffs' discovery requests.  In their opposition to Plaintiffs' motion to compel, DOD indicated that it was "currently conducting searches for relevant emails of pertinent custodians, and will produce all responsive, non-privileged documents that it can reasonably locate and obtain."  (Dkt. No. 278, 22:11-13).  Plaintiffs have raised concerns that DOD may be inappropriately limiting its searches for relevant emails.   At the hearing, DOD was ordered to tell Plaintiffs in writing by September 23, 2011: 1) whose emails it had searched, 2) what search terms were used, and 3) what time period the search encompassed. The parties were then directed to meet and confer regarding DOD's email production.  To the extent that the parties have been unable to resolve this dispute, they may raise the issue at the October 13, 2011 discovery status conference.

### 5.  Battelle Documents

Plaintiffs allege that DOD has not produced documents related to the efforts of Battelle Memorial Institute to collect testing information and create the Chem-Bio Database. Specifically, Plaintiffs allege that DOD is withholding documents concerning: the 1993-94 notification efforts, lists of personnel and team leaders assigned to the Battelle Chem-Bio database and document collection projects, and documents reflecting gaps in the files and

12

explaining how those gaps are reconciled.  Plaintiffs allege this information is necessary because it goes to why Defendants abandoned the notification efforts despite the 55,000 unnotified test subjects and the 30(b)(6) witness offered by the DOD and Army, Dr. Michael Kilpatrick, lacked personal knowledge on the issue of the unnotified test subjects.  DOD alleges it has produced all reports generated during the Battelle project and that the additional information Plaintiffs seek is not relevant and burdensome as it would take more than 20 weeks to produce the remaining documents.

The issue of the 55,000 lost test subjects is clearly relevant to Plaintiffs' claims.  Plaintiffs are entitled to evidence regarding the 1993-1994 notification efforts and documents regarding how the Chem-bio database was created since it was the source of the information regarding to whom notification letters were sent.  At the hearing, Plaintiffs indicated that Battelle was willing to have two Rule 30(b)(6) depositions take place and Defendants stated that they have withdrawn their objections to the these depositions.  Defendants also indicated that Battelle had agreed to produce the contract documents relating to the pre-1953 testing.  To the extent the parties are unable to reach an agreement regarding scheduling the Rule 30(b)(6) depositions or production of the documents from Battelle, Plaintiffs can raise these issues at the discovery status conference scheduled for October 13, 2011.  In light of the pending depositions, however, the Court does not order production of additional Battelle documents at this time.

### 6.  DVA Documents

Plaintiffs filed a separate motion to compel regarding DVA's discovery responses.  Plaintiffs assert a facial bias claim against DVA.  They allege that because DVA was involved in the Edgewood testing program and similar programs, the agency is incapable of making neutral, unbiased benefits determinations for veterans who were test subjects.  Plaintiffs' facial bias claim challenges DVA's decision-making as a whole as opposed to any individual claim determination.

A court's jurisdiction to hear claims against the DVA is limited by 38 U.S.C. § 511(a) which provides that the Secretary of the DVA "shall decide all questions of law and fact

United States District Court
Northern District of California

necessary to a decision … under a law that affects the provision of benefits … to veterans or the dependants or survivors of veterans."   With limited exceptions, "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court."  38 U.S.C. § 511(a).  In Judge Wilken's order granting and denying Plaintiffs leave to file the Third Amended Complaint,  she found that "[it] is well-settled that section 511 precludes federal district courts from challenges to individual benefits determinations, even if they are framed as constitutional challenges."  (Dkt. No. 177, 8:13-22 citing <u>Tietjen v. U.S. Veterans Admin</u>., 884 F.2d 514, 515 (9th Cir. 1989).)   Judge Wilken went on to find that Plaintiffs' facial bias claim did not run afoul of Section 511 because "[w]hether the DVA is an inherently biased adjudicator does not implicate a question of law or fact 'necessary to a decision by the Secretary' related to the provision of veterans' benefits."  (Dkt. No. 177, 11:24-27 (internal citations omitted)).   Accordingly, DVA's jurisdictional objections to Plaintiffs' discovery requests are misplaced – Plaintiffs are entitled to discovery regarding DVA's decision-making process as a whole, which is a distinct question from DVA's individual claim determination process.

Plaintiffs contend that DVA's discovery responses thus far have been inadequate and seek an order compelling DVA to 1) produce documents withheld or redacted on the basis of deliberative process privilege, 2) provide the Chem-Bio statistics as requested in Interrogatory No. 19, 3) search for and produce documents that evidence DVA involvement in research regarding the substances tested during the Edgewood test programs, 4) search for and produce documents related to testing that occurred prior to 1953, and 5) produce death certificates of deceased test subjects.

### a.      Documents withheld based on the Deliberative Process Privilege

Plaintiffs challenge DVA's withholding of documents based on the deliberative process privilege.  DVA has withheld or redacted 483 documents asserting a deliberative

United States District Court
Northern District of California

14

process privilege.  Of these, 44 documents are covered by other claims of privilege as well.

The documents fall within the following subject areas: [5]

> (1) documents concerning the adjudication of an individual plaintiff's claim for VA disability compensation;

> (2) documents concerning VA Executive correspondence with members of Congress, Veterans Service Organizations, and other federal government agencies;

> (3) documents concerning collaboration between DOD and VA regarding providing notice to test subjects;

> (4) documents concerning the content of VA's notice letter within the Veterans Health Administration;

> (5) documents concerning DOD's "Fact Sheet" regarding VA health care and examinations;

> (6) documents concerning legislative proposals, including draft legislative proposals and analyses of those proposals;

> (7) emails and memoranda discussing drafts of the Under Secretary for Health's Information Letter;

> (8) documents concerning the Veterans Benefits Administration, including draft training letters, outreach reports and meeting summaries, emails regarding outreach efforts, drafts of the notification letter to test volunteers, and emails regarding the development of those notification letters; and

> (9) documents concerning the Veterans Health Administration ("VHA"), including emails regarding a potential response to congressional inquiry about Edgewood Arsenal and emails discussing the possibility of future registries within VHA.

(Dkt. No. 276, 8:12-9:9).

"The deliberative process privilege permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and polices are formulated."  Hongsermeier v. Commissioner of Internal Revenue, 621 F.3d 890, 904 (9th Cir. 2010) (internal citations omitted).  Plaintiffs

---

[5] Because DVA is the only party to have seen these documents, the Court relies upon its categorization of the documents.  (Dkt. No. 276, 8:12-9:9).

United States District Court
Northern District of California

allege that the privilege does not apply where a plaintiff's cause of action is directed at the government's intent. This appears to be an open question in the Ninth Circuit. Plaintiffs rely on a DC Circuit case, In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 145 F.3d 1422 (D.C. Cir. 1998), on rehearing 156 F.3d 1279 (D.C. Cir. 1998), which found that "[i]f the plaintiff's cause of action is directed at the government's intent… it makes no sense to permit the government to use the privilege as a shield." Id. at 1424. Another district court in this Circuit, in Thomas v. Cate, 715 F.Supp.2d 1012 (E.D. Cal. 2010), noted the absence of authority in this Circuit, and described the court's rationale in In re Subpoena as persuasive. Id. at 1022. The Court finds that it is unnecessary to decide this issue as DVA's intent is properly considered as a factor in the substantial need analysis as explained below.

The deliberative process privilege is qualified and may be overcome by a strong showing of relevance and an inability to obtain the information from other sources.[6]  See Schwarzer, Tashima & Wagstaffe, Fed. Civ. P. Before Trial § 11:767 (TRG 2010) (citing Sanchez v. City of Santa Ana, 936 F.2d 1027, 1034 (9th Cir. 1990). Courts consider the following factors in determining substantial need: 1) the relevance of the evidence, 2) the availability of other evidence, 3) the government's role in the litigation, and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.  See F.T.C. v. Warner Comms. Inc., 742 F.2d 1156, 1161 (9th Cir. 1984).

Relevance of the evidence: Plaintiffs have characterized their bias claim as follows:

Plaintiffs seek a declaration that DVA, because of its active role in the chemical and biological testing programs, is an inherently biased decision maker, and is thus violating the due process rights of test participants across the board. Plaintiffs also

---

[6]  Plaintiffs assert that DVA has not complied with the procedural requirements for asserting the deliberative process privilege. They allege that Defendants must make a formal claim of privilege lodged by the head of department. In response to Plaintiffs' Motion to Compel, Defendants proffered the declaration of John J. Spinnelli, Senior Advisor to the Secretary to the Department of Veterans Affairs. In the absence of controlling authority requiring the privilege to be invoked by the head of the department, the Court concludes that DVA's belated proffer of this declaration is sufficient to assert the privilege.

16

seek an injunction forbidding DVA from using biased decision makers, and compelling DVA to devise procedures to resolve the claims of test participants that do not violate the due process clause and which involve, at a minimum, a neutral decision maker.

(Dkt. No. 113, p. 6).  Plaintiffs contend they need two types of evidence to prove this claim: "(1) evidence of the reasons for DVA's bias (such as evidence of DVA involvement in the Edgewood testing program and similar programs); and (2) evidence of the manifestation of DVA's bias (such as evidence that DVA deliberately misled test subjects about the health effects of the testing in order to discourage them from filing claims and statistical evidence regarding claims)."  (Dkt. No. 255, p. 5).  In its answer to the Third Amended Complaint DVA admitted that it has been involved in human testing generally. (Dkt. No. 236, ¶ 226). With respect to the second prong, Plaintiffs allege that evidence of bias could be found in the notification letters and other materials DVA sent to veterans which contained misrepresentations of material facts and language seeking to deter applications from applying for benefits.  (Dkt. No. 180, ¶ 231).  Evidence regarding the notification process and DVA's intent with respect to the notice and claim process is essential to Plaintiffs' bias claim.  For example, if there was evidence that DVA deliberately framed the notice documents or structured the notice process in such a way as to reduce the number of claims, this evidence would be extremely relevant to Plaintiffs' bias claim.  In F.T.C. v. Warner Communications Inc., the Ninth Circuit considered whether there was evidence of "evidence of bad faith or misconduct" on the part of the government agency as a factor in the substantial needs analysis.  Id. at 1162.  Here, Plaintiffs allege both bad faith and misconduct with respect to the notification process.

*Availability of other evidence*:  Plaintiffs contend that the only source for information regarding why DVA understated the risks of the program is correspondence and memoranda prepared during the decision-making process.  DVA counters that it is only relevant whether the final versions of the documents evidence bias on their face.   Documents detailing DVA's decision-making process are the best source of the evidence regarding whether, why and how DVA was biased.

*Government's role in the litigation*: "The fact that a governmental entity's action is the focal point of litigation weighs against upholding the deliberative process privilege." Thomas v. Cate, 715 F.Supp.2d 1012, 1028 (E.D.Cal. 2010).  DVA's actions are a central issue in the DVA bias claim in this litigation and hardly a collateral matter as DVA suggests.

*Extent to which the disclosure would hinder frank and independent discussion*: "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001).  This factor weighs in the DVA's favor.  Disclosure of the decision-making documents at issue could hinder frank discussions, but this factor alone is not dispositive.

Plaintiffs have demonstrated substantial need sufficient to overcome the deliberative process privilege for some of the documents sought.  For example, Category Two documents concerning DVA executive correspondence with other agencies (including agencies which are a party to this action) is described as including "memoranda identifying the implications of various types of notice that VA could employ, editorial commentary, and contemplation of the risks for these options."  (Dkt. No. 276-7, ¶¶ 9-12).  These types of documents are directly relevant to Plaintiffs' bias claim.   Similarly, Category Three documents include "email communications between VA employees and between VA and DOD containing analysis of the DOD Database and information provided by the CIA in response to correspondence from the Secretary of Veterans Affairs, recommendations about how to potentially improve the Database for VA purposes, and suggestions for responding to congressional inquiries about VA notice efforts, and formulation of VA's policy with regard to the content of the notice and to which test subjects notice would be provided. "  (Dkt. No. 276-7, ¶ 19).   Plaintiffs have demonstrated a substantial need for discovery regarding these communications which go to the heart of their claims against DVA and the other Defendants.  See  F.T.C. v. Warner Communications Inc., 742 F.2d at 1161 ("A litigant may obtain

deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure") (internal citations omitted).

The Court is nonetheless cognizant of the requirement that it balance Plaintiffs' need for this discovery with the purpose of the deliberative process privilege and thus will review the documents in Categories Two through Nine <u>in camera</u> to determine whether they are appropriate for disclosure.   DVA shall provide the Court with the documents within Categories Two through Nine that are not subject to another claim of privilege within seven days.  DVA shall simultaneously provide the Court with the complete privilege log previously produced to Plaintiffs for these documents.  The Court finds that the Category One documents relate to an individual claim adjudication and are not relevant to Plaintiffs' facial bias claim.

### b.    Updated statistics re: Chem-Bio claims

Plaintiffs seek updated statistics regarding "Chem-Bio" claims for service-connected benefits based on test subjects' exposure to the test substances administered during the test programs.  DVA argues that this discovery is overly burdensome, unlikely to produce additional relevant discovery, and unreliable.  Specifically, DVA asserts that it does not have these statistics and if it was required to recreate the statistics using End Product 683 (a designator DVA used in certain electronic databases to denote claims related to chemical or biological exposure in Edgewood Arsenal testing programs), the results would be unreliable because End Product 683 has been used to track claims that are not part of this litigation and would not reflect any claims filed prior to September 2006.  DVA asserts that "[t]he only way to accurately count Chem-Bio claims is to review the claims files for each test veteran." (Dkt. No. 276-5, ¶ 18).  Plaintiffs counter that it is actually a simple matter for DVA to recreate the statistics and that DVA's claims of unreliability are overstated.

DVA offers instead to provide Plaintiffs with the claim files for all identifiable test subjects who have sought VA service-connected disability compensation or whose survivors have sought DIC based upon the veteran's alleged service-connected deaths.  The claim files would allow Plaintiffs to perform their own statistical analysis.  While this is a start,

Plaintiffs are also entitled to know any statistical evidence upon which DVA may rely at trial.  To the extent that DVA conducts a statistical analysis regarding claims, whether using the Chem-Bio database or another source, the Court understands that Defendants will produce such an analysis to Plaintiffs.  The Court, however, declines Plaintiffs' request to require DVA to compile statistics it does not intend to compile.

### c.  Documents regarding pre-1953 testing

Plaintiffs allege that Defendants should produce documents for the entire testing period of 1942-1975 relying on the same arguments made in their other motion to compel. DVA contends that it has already produced some documents relating to pre-1953 testing and that under a proportionality analysis, the burden of any further discovery outweighs the potential relevance.

Prior to becoming a party in this action, DVA produced 14,000 documents to Plaintiffs in response to a Rule 45 subpoena and then it produced another 195,000 documents once joined as a party to this action.  (Dkt. No. 276-5, ¶¶ 22, 27).  The Veterans Benefits Administration ("VBA"), the organization within DVA responsible for claims, has represented that it "is unaware [of] any records relating to pre-1953 testing exists within VBA, aside from the documents it has already produced to Plaintiffs regarding mustard gas and Lewisite."  (Dkt. No. 276-5 ¶ 35).   DVA alleges that expanding its search to specifically search for pre-1953 information would require a manual search through each VBA storage facility to review the inventory logs and retrieve a record, which would take three hours and twenty minutes per record at a cost of approximately $54.27 in personnel costs per each record.  (Dkt. No. 276-5, ¶ 40).

Given the burden on DVA to do a further search, the possibility that documents discovered as a result of further search could be cumulative of those produced by DVA or other agencies, and the fact that Plaintiffs have not reviewed the documents already produced, the Court finds that the burden and expense associated with further discovery on this subject outweighs the discovery's relevance at this stage.  Should Plaintiffs determine *following* review of the documents already produced, that it appears that DVA has not

United States District Court
Northern District of California

produced documents relating to pre-1953 testing and that such documents are relevant, then Plaintiffs may renew their motion to compel.  Accordingly, Plaintiffs' motion to compel further discovery from the DVA relating to pre-1953 testing is denied without prejudice.

### d.    Documents concerning DVA's involvement in Edgewood

The parties have agreed to limit DVA's response to requests concerning DVA's involvement in the Edgewood Program to the narrowed list of test substances Plaintiffs have used with the other Defendants.

### e.    Death Certificates

The parties also appear to have reached a compromise on Plaintiffs' request for the death certificates for deceased test subjects.

## C.    Motion to Extend Discovery

Plaintiffs request that the discovery period be extended by 30 days beyond the date by which the CIA complies with the discovery ordered herein.  The CIA has indicated that it does not oppose this request and the Court agrees that this extension is appropriate.

### CONCLUSION

Based on the foregoing, Defendants' Motion for Protective Order Limiting Discovery (Dkt. No. 252) is GRANTED in part, Plaintiffs' Motion to Compel Discovery (Dkt. No. 255) is GRANTED in part, Plaintiffs' Motion to Compel Rule 30(b)(6) Depositions and Production of Documents (Dkt. No. 258) GRANTED in part, and Plaintiffs' Motion to Extend Discovery of CIA is GRANTED (Dkt. No. 260).


**IT IS SO ORDERED.**


Dated: October 5, 2011

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

*United States District Court
Northern District of California*