United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIETNAM VETERANS OF AMERICA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CENTRAL INTELLIGENCE AGENCY, et al.,<br><br>    Defendants. | Case No.: 09-cv-0037 CW (JSC)<br><br>**ORDER RE: JOINT LETTER CONCERNING DISCOVERY STATUS AND DISPUTES (Dkt. No. 318)** |

Pending before the Court is the parties' Joint Letter Concerning Discovery Status and Disputes ("Joint Statement"). (Dkt. No. 318). Having reviewed the Joint Statement, the Court orders the parties to appear for a hearing on December 15, 2011 at 9:00 a.m. to discuss the issues set forth below.

**DISCUSSION**

In response to the Court's October 31, 2011 order, the parties have filed a Joint Statement representing the totality of outstanding discovery obligations and disputes in this action. This Court has recommended a December 23, 2011 date for the close of fact discovery and considerable discovery appears to be outstanding. The parties shall be

prepared to discuss the timing and logistics of this discovery at the hearing on December 15, 2011.

The Joint Statement highlights five areas of dispute: 1) production of Department of Veterans ("DVA") claim files; 2) production of Magnetic Tapes; 3) documents concerning the March 9, 1993 memorandum, "Chemical Weapons Research Programs Using Human Subjects" issued by Deputy Secretary of Defense William Perry ("the Perry Memo"); 4) DVA's designation of Dr. Michael Peterson as a Federal Rule of Civil Procedure 30(b)(6) designee regarding two topics; and 5) redaction of Central Intelligence Agency ("CIA") Freedom of Information Act ("FOIA") documents. The Court addresses each of these disputes in turn.

**1. DVA Claim Files**

The parties appear to have different understandings regarding which claim files the DVA is producing. Plaintiffs contend that they are entitled to the claim files for all putative class members; in contrast, DVA contends that it only agreed to produce the approximately 862 claim files for "identifiable test subjects." Identifiable test subjects appears to refer to those test subjects whose participation in Edgewood Arsenal testing has been verified by the Department of Defense ("DOD"). The Court understands identifiable test subjects to be something different from those test subjects to whom DVA mailed notice letters; that is, there may be a category of individuals who received notice letters from the DVA, but whose claims were not subsequently verified by the DOD. See Dkt. No. 256-16. As the Court understands it, these individuals fall in the "unverified" category of claimants for whom DVA is not producing claim files.

Defendant shall be prepared to clarify the Court's understanding of these issues at the hearing and shall be prepared to explain whether there is some method by which DVA can identify these individuals, or at least the number of individuals who fall in this unverified category, to Plaintiffs.[1] Plaintiffs are entitled to discovery regarding those individuals to

---

[1] For example, the authorization procedures outlined in Attachment B to the Information Letter distributed to all VA Regional Offices and Centers indicates that there was a procedure for obtaining verification of participation from the DOD which included sending an email to

2

whom DVA sent notice, but whose claims were either denied or not verified, but the Court needs further information regarding this matter before it can rule on Plaintiffs' request.

**2.    Magnetic Tapes**

The CIA has located multiple magnetic computer tapes which it believes were obtained from DOD employees at Edgewood Arsenal in the 1970s.  Defendants represent that they have been unable to retrieve any data from the tapes.  The Court has ordered the parties to meet and confer regarding possible alternative means for accessing the data.  These meet and confer efforts do not appear to have been successful, although the Joint Statement indicates that Defendants are still waiting for a response to their Request For Information soliciting assessments from civilian companies concerning extraction, and a response from the Defense Logistics Agency ("DLA") regarding DLA's capabilities for transcribing the tapes.

Plaintiffs believe the tapes contain information regarding the identities of test subjects, the substances and doses administered, and any observed health effects.   The tapes were discussed in a 2007 letter from then-CIA Director Michael V. Hayden stating that the CIA had located "some magnetic tapes associated with Project Often that Agency officers believe are copies of computer databases that the Agency received from Edgewood Arsenal in the early 1970's."   These tapes appear to contain information relevant to Plaintiffs' claims and without knowing what is on the tapes it is impossible to know if this information is cumulative of discovery already produced.  The Court is also not convinced by Defendants' rather circular argument that they cannot produce the tapes because they have been designated as confidential, and they cannot review the confidential designation because they cannot retrieve any data from the tapes, and thus they do not have to produce the tapes.  Accordingly, at the hearing on December 15, Defendants should be prepared to discuss why, if they contend that it is impossible to view any of the data on the tapes, Plaintiffs should not

---

the CBRNE mailbox.  See Dkt. No. 256-16, p. 5.  Is it possible to cross-reference these emails with the list of verified claimants and thereby create a list of those claimants who went to a VA Regional Office or Center for an exam, but whose participation DOD did not verify?

be provided with one tape from which they can attempt to retrieve any data (subject to a protective order) as a compromise.

### 3. Perry Memo Documents

Plaintiffs seek all drafts and versions of the Perry Memo and all communications between Norma St. Claire and Martha Hamed regarding drafting the memo. Plaintiffs contend that the Perry Memo is the key legal document concerning secrecy oaths. Defendants allege that Plaintiffs already have all the information they need on the subject of the scope of the release from any secrecy oath and this request is cumulative of other discovery produced in this action. However, Defendants have not alleged any specific burden involved in producing the documents requested, and Defendants presumably obtained and reviewed at least some of these documents in responding to the interrogatories and requests for admission referenced in the Joint Statement. In the absence of any evidence that producing these documents would be unduly burdensome, the Court finds that Plaintiffs have established that these documents are relevant to their claims and should therefore be produced.

### 4. Rule 30(b)(6) Designee Dr. Peterson

The DVA designated Dr. Michael Peterson to testify pursuant to Federal Rule of Civil Procedure 30(b)(6) regarding two topics: (1) DVA's involvement with testing at Edgewood, and (2) the diseases or conditions reported, claimed, or experienced by test subjects. Plaintiffs allege that Dr. Peterson was not sufficiently knowledgeable regarding either subject. The DVA has offered to designate another individual, Paul Black, to testify regarding the later topic. Thus, the parties' dispute is limited to whether DVA should be required to designate someone else to testify regarding Topic One given Dr. Peterson's limited knowledge.

The DVA contends that Dr. Peterson's knowledge, like that of any other Rule 30(b)(6) designee on this subject, is necessarily limited because DVA was not involved in testing at Edgewood. Absent evidence from Plaintiffs that DVA's assertions in this regard

4

were made in bad faith, the Court must accept them as true. Plaintiffs are not entitled to a further Rule 30(b)(6) designee from DVA on this subject.

### 5. Redactions of CIA FOIA documents

Plaintiffs shall identify to Defendants the documents from the CIA's MKULTRA FOIA set they contend are relevant by December 6, 2011. Plaintiffs should limit their request to documents that have not already been produced during the course of litigation. At the hearing on December 15, the CIA should be prepared to provide its position regarding the burden involved in reviewing those documents Plaintiffs identify and providing Plaintiffs with either an unredacted version of the documents or a privilege log.

The Court's proportionality analysis regarding Plaintiffs' entitlement to further health effects discovery relied upon the CIA's representation that it had already provided Plaintiffs with extensive documentation regarding health effects. (Dkt. No. 294). To the extent the CIA intends to rely on the MKULTRA FOIA production to satisfy or relieve it of discovery obligations in this case, then the production should be in accordance with Federal Rule of Civil Procedure 26(b)(5).[2]

### 6. Privilege Logs

Although it was not one of the subjects of dispute formally identified by Plaintiffs, the Court will address Plaintiffs' concerns regarding privilege logs. To the extent that any documents are withheld based on a claim of privilege by any of the Defendants in this action, Defendants must provide a privilege log. Defendants appear to have directed Battelle to withhold a document(s) based on a claim of privilege. If Defendants have done so, then either they or Battelle should produce a privilege log for the document(s). Similarly, Defendants shall produce a privilege log for any documents from the Defense Technical Information Center bibliographies which are withheld on a claim of privilege.

---

[2] The CIA should also ensure that the privilege log identifies the basis for any redaction or the withholding of any document. See, e.g., VET019-33.

**CONCLUSION**

The parties should be prepared to address the issues outlined above at the hearing on December 15, 2011 at 9:00 a.m. in Courtroom F.

**IT IS SO ORDERED.**

Dated: November 30, 2011

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE