1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VIETNAM VETERANS OF AMERICA,
et al.,

　　　　　Plaintiffs,

　　　v.

CENTRAL INTELLIGENCE AGENCY,
et al.,

　　　　　Defendants.

Case No.: 09-cv-0037 CW (JSC)

**ORDER RE: MAGNETIC TAPES
DISPUTE (Dkt. No. 425)**

On May 21, 2012, Plaintiffs filed a supplemental submission regarding the parties'
ongoing dispute over certain 40-year old magnetic tapes in Defendants' possession.  (Dkt.
No. 425).  Having reviewed the parties' submissions and having had the benefit of oral
argument on June 21, 2012, for the reasons stated herein and on the record the Court
GRANTS Plaintiffs' Motion to Compel in part and DENIES it in part.

### BACKGROUND

This dispute is the latest in a series of disputes regarding magnetic computer tapes in
Defendants' possession which Plaintiffs believe contain "original human clinical data from
Edgewood."  (Dkt. Nos. 300, 318, 334, 404).  The magnetic tapes were referenced in three
documents produced with Defendants' Rule 26(a)(1) Disclosures.  The first, entitled

"Records Retirement Request," with an Attachment B, is a manifest from May 14, 1974 that lists the contents of eleven boxes containing Project Often records, six of which specifically refer to Edgewood Arsenal. (Dkt. No. 291, VET001_009230-9238). The second document is a May 22, 1974 memorandum for the Director of Central Intelligence entitled "Project OFTEN Records" that discusses project files and magnetic tapes containing information relating to Project Often. (Id. at VET001_009238). The third document is a 2007 letter from then-Central Intelligence Agency ("CIA") Director Michael V. Hayden to then-Secretary of Veterans Affairs R. James Nicholson stating that the CIA had located "some magnetic tapes associated with Project Often that Agency officers believe are copies of computer databases that the Agency received from Edgewood Arsenal in the early 1970's." (Dkt. No. 318, p. 25).

Defendants again referenced the magnetic tapes in their January 5, 2011 response to Plaintiff's Interrogatory No. 9 which sought information regarding databases used to record or preserve information regarding test subjects or test programs. Defendants' response stated that "[t]he CIA has located some magnetic computer tapes associated with Project OFTEN that CIA officers believe are copies of computer databases that the CIA received from DOD employees at Edgewood Arsenal in the early 1970s, and the CIA believes that some of the databases contain information about human testing. However, the CIA does not know whether the information contained on the magnetic tapes is understandable or even retrievable using available technology." (Dkt. No. 291-2, p. 4).

In the fall of 2010, the CIA transferred six of the twenty-four tapes contained within these boxes to Defendant Department of Defense ("DOD") for processing in response to Plaintiffs' discovery requests. (Dkt. No. 441-6 ¶ 5). In October 2011, Plaintiffs sought the Court's assistance to obtain access to these magnetic tapes and the data thereon. (Dkt. No. 300, p. 2). From the onset of this dispute Defendants have maintained that it appeared technologically infeasible to retrieve the data on the tapes. (Id. at 5). The Court encouraged the parties to meet and confer and attempt to see if the data on the tapes could be accessed in some way; however, the parties were unable to jointly resolve the matter, and

over the last several months, Plaintiffs have repeatedly sought the Court's assistance. During this time Defendants have maintained that they are making their best efforts to access the data on the tapes. Defendants ultimately sent the six magnetic tapes to the Defense Logistics Agency ("DLA"), an entity within Defendant Department of Defense, to attempt data retrieval.

On March 15, 2012, Defendant DOD informed the Court that it had been able to access the data on two of the six tapes and had determined that the remaining four tapes were unreadable. (Dkt. No. 371, p. 19). At a hearing on April 5, 2012, Defendant DOD represented that it would send Plaintiffs the data from those two tapes (which contained only animal testing data) within a week. The Court declined to issue any further order regarding the remaining tapes until Plaintiffs reviewed the contents of the two tapes from which DLA had obtained data. This dispute follows Plaintiffs' review of the contents of the two readable magnetic tapes.

## DISCUSSION

Plaintiffs raise two issues in their pending motion to compel: 1) Plaintiffs contend that Defendants' efforts to access the data on the six tapes sent to DLA were deficient; and 2) Plaintiffs contend that they are entitled to the data on the eighteen tapes still in the CIA's possession. In response, Defendants maintain that their efforts to access the data on the six tapes sent to DLA exceeds the requirements of Federal Rule of Civil Procedure 26, and further assert that Plaintiffs should bear the costs of any additional data retrieval efforts. With respect to the eighteen tapes still in the CIA's possession, Defendants insist that Plaintiffs have waived any request for the data on these tapes by failing to specifically seek relief regarding these tapes until now. They argue further that even if there is no waiver, Plaintiffs are not entitled to the tapes because it is reasonable to conclude that the tapes do not possess information relevant to Plaintiffs' claims.

### A. The Six Tapes in DOD's Possession

In December 2011, DOD sent the six tapes which the CIA identified as potentially containing human clinical data to DLA to determine if DLA could access the data on the

United States District Court
Northern District of California

1   tapes.  Defendant choose to send the tapes to DLA, rather than one of the two outside

2   vendors who responded to Requests for Information ("RFI") seeking bids for accessing data

3   on the tapes, because as an entity within DOD DLA already had the requisite security

4   clearance.  Julie Parrish, an IT Specialist at DLA was placed in charge of data retrieval.

5   (Dkt. No. 400-1).  Ms. Parrish ultimately recovered data from two of the six tapes and

6   transferred the accessible data to the DOD on March 14, 2012.  Ms. Parrish determined that

7   any data on the remaining four tapes is irretrievable.

8       Plaintiffs are convinced that data may in fact be retrievable from these four tapes and

9   question Ms. Parrish's methods and qualifications; however, she spent over 60 hours

10  attempting to access the data on the tapes, consulted outside vendors, obtained additional

11  hardware, and ultimately successfully accessed the data on two of the tapes.  (Dkt. No. 400-

12  1).  Under these circumstances, the Court questions whether any further efforts to obtain data

13  on the remaining four tapes would be successful.

14      According to Federal Rule of Civil Procedure 26(b)(2)(B), "[a] party need not provide

15  discovery of electronically stored information from sources that the party identifies as not

16  reasonably accessible because of undue burden or cost."  Here, Defendants have expended

17  considerable resources to attempt to access the information on the six magnetic tapes

18  transferred from the CIA to the DOD.[1]  Given that it is unknown whether any further

19  information can be obtained from the tapes, the Court finds that the data on the tapes is not

20  reasonably accessible and it would be an undue burden to require Defendants to engage in

21  any further data recovery efforts.  See Fed. R. Civ. P. 26(b)(2)(B), (C)(iii).

22      Nevertheless, to the extent Plaintiffs wish to independently engage in further efforts to

23  retrieve data from the remaining four tapes, they shall have an opportunity to do so at their

24  _____

25  [1] In addition to Ms. Parrish's efforts, the DOD consulted numerous governmental and non-
    governmental organizations for assistance with the tapes, including UNISYS, the successor

26  company to the one that made the UNIVAC, which appears to be the system that generated
    the previously provided printouts from the magnetic tapes.  UNISYS informed Defendants

27  that it was unable to convert the tapes and that even if DOD found the hardware and software
    to read the tapes, it was likely that the data contained on the tapes was degraded and

28  potentially unreadable after decades of storage.  (Dkt. No. 441, p. 7).

own cost.  The Court finds that cost-shifting is appropriate because Plaintiffs should bear the risk that Defendants are right that the tapes are inaccessible.  Plaintiffs have indicated that there are outside vendors with the requisite qualifications who also have the necessary "Secret" security clearance.  (Dkt. No. 425, n.4).  At the hearing, the parties agreed that Plaintiffs would provide Defendants with the name of such a vendor within ten days. Defendants shall then expeditiously transfer custody of the four tapes to the outside vendor for processing at Plaintiffs' expense.  Should the vendor determine that the data on the tapes is in fact retrievable, Plaintiffs may file a motion for cost-shifting seeking to recover some or all of the costs of data retrieval.

**B. The Eighteen Tapes in the CIA's possession**

For the reasons set forth at oral argument, the Court finds that Plaintiffs did not intend to waive their request for production of the remaining eighteen tapes, which are still in the CIA's custody.  At the hearing, Plaintiffs identified eight tapes out of the eighteen which they believe are the most critical.  The eight tapes consistent of four sets of tapes each of which has a duplicate:  tapes 283 and 366 (duplicate) from Box 9 and tapes 103, 192 (duplicate), 296, 186 (duplicate), 307 and 398 (duplicate) from Box 10.  The tapes either: 1) reference EARL (Edgewood Arsenal Research Laboratories) on the label, or 2) reference Edgewood on the manifest describing the tapes.   The parties agreed that these eight tapes would be sent to the same outside vendor as the four tapes discussed above for processing at Plaintiffs' expense.  Should the vendor successfully obtain data from the tapes that Plaintiffs contend is relevant to their claims (i.e., human clinical data), the Court will entertain a motion for cost-shifting at that time.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Plaintiffs' motion in part and DENIES it in part.  (Dkt. No. 425).  Within 10 days from the date of this Order, Plaintiffs shall provide Defendants with the name of a computer forensics vendor with the necessary security clearance.  As expeditiously as possible thereafter, Defendants shall transfer the twelve tapes referenced herein to the vendor for processing at Plaintiffs' cost.  Plaintiffs'

United States District Court
Northern District of California

request for cost-shifting is DENIED without prejudice to renewal should the tapes be found to have data which is relevant to Plaintiffs' claims that otherwise should have been produced by Defendants in this action.

The Court finds that Plaintiffs' objections to the Declaration of Patricia Cameresi submitted with Defendants' opposition go to the weight rather than the admissibility of the declaration.  Accordingly, Plaintiffs' Motion to Strike the Declaration of Patricia Cameresi (Dkt. No. 446) is DENIED.

**IT IS SO ORDERED.**

Dated:  June 22, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

6