**United States District Court**
For the Northern District of California

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

| | |
|---|---|
| 4   VIETNAM VETERANS OF AMERICA;<br>SWORDS TO PLOWSHARES: VETERANS<br>5   RIGHTS ORGANIZATION; BRUCE PRICE;<br>FRANKLIN D. ROCHELLE; LARRY<br>6   MEIROW; ERIC P. MUTH; DAVID C.<br>DUFRANE; TIM MICHAEL JOSEPHS; and<br>7   WILLIAM BLAZINSKI, individually,<br>on behalf of themselves and all<br>8   others similarly situated,<br><br>9           Plaintiffs,<br><br>10       v.<br><br>11   CENTRAL INTELLIGENCE AGENCY;<br>DAVID H. PETRAEUS, Director of<br>12   the Central Intelligence Agency;<br>UNITED STATES DEPARTMENT OF<br>13   DEFENSE; LEON E. PANETTA,<br>Secretary of Defense; UNITED<br>14   STATES DEPARTMENT OF THE ARMY;<br>JOHN M. MCHUGH, United States<br>15   Secretary of the Army; UNITED<br>STATES OF AMERICA; ERIC H.<br>16   HOLDER, Jr., Attorney General of<br>the United States; UNITED STATES<br>17   DEPARTMENT OF VETERANS AFFAIRS;<br>and ERIC K. SHINSEKI, United<br>18   States Secretary of Veterans<br>Affairs,<br><br>19           Defendants.<br>20                              / | No. C 09-0037 CW<br><br>ORDER GRANTING IN<br>PART, AND DENYING<br>IN PART,<br>PLAINTIFFS' MOTION<br>FOR CLASS<br>CERTIFICATION<br>(Docket No. 346),<br>DENYING<br>DEFENDANTS'<br>MOTIONS FOR LEAVE<br>TO FILE A MOTION<br>FOR<br>RECONSIDERATION<br>AND FOR RELIEF<br>FROM A<br>NONDISPOSITIVE<br>ORDER OF<br>MAGISTRATE JUDGE<br>(Docket Nos. 431<br>and 471), AND<br>GRANTING IN PART,<br>AND DENYING IN<br>PART, PLAINTIFFS'<br>MOTION TO<br>SUBSTITUTE (Docket<br>No. 439) |

21    Plaintiffs Vietnam Veterans of America, Swords to Plowshares:

22    Veterans Rights Organization, Bruce Price, Franklin D. Rochelle,

23    Larry Meirow, Eric P. Muth, David C. Dufrane, Tim Michael Josephs

24    and William Blazinski move for class certification and to

25    substitute Kathryn McMillan-Forrest as a named Plaintiff in this

26    action in place of her late husband, former Plaintiff Wray C.

27    Forrest.  Defendants United States of America; U.S. Attorney

28    General Eric Holder; the Central Intelligence Agency and its

Director David H. Petraeus (collectively, CIA); the U.S.
Department of Defense and its Secretary Leon Panetta
(collectively, DOD); the U.S. Department of the Army and its
Secretary John M. McHugh; and the U.S. Department of Veterans
Affairs and its Secretary Eric K. Shinseki (collectively, DVA)
oppose Plaintiffs' motions, and move for relief from a
nondispositive order of the Magistrate Judge.  The DVA also seeks
leave to file a motion for reconsideration of the Court's November
15, 2010 Order, which allowed Plaintiffs to amend their complaint
to assert a claim against DVA.  Plaintiffs oppose Defendants'
motions.  Having considered the arguments made by the parties in
their papers and the hearing on the motion for class
certification, the Court GRANTS in part Plaintiffs' motions for
class certification and DENIES it in part and DENIES Defendants'
motions.  The Court construes Plaintiffs' motion to substitute as
a motion to amend and GRANTS it in part and DENIES it in part.

BACKGROUND

"Military experiments using service member[s] as subjects
have been an integral part of U.S. chemical weapons program,
producing tens of thousands of 'soldier volunteers' experimentally
exposed to a wide range of chemical agents from World War I to
about 1975."  Sprenkel Decl., Ex. 1 at VET001_015677.[1]  See also
Herb Decl., Ex. 1, 1 (describing the establishment of the Army's
Medical Research Division in 1922 and related research
activities).  "Formal authority to recruit and use volunteer

---

[1] Plaintiffs also offer evidence that volunteers for testing "were
being recruited into 1993," but not that experiments took place
through that time.  Sprenkel Decl., Ex. 3, at VET125-07490.

United States District Court
For the Northern District of California

subjects in [chemical warfare] experiments was initiated in 1942."
Id.; see also Herb Decl., Ex. 2, VET002_001801 (describing World
War II (WWII) era testing of mustard agents and Lewisite involving
"over 60,000 U.S. servicemen").  "From 1955 to 1975, thousands of
U.S. service members were experimentally treated with a wide range
of agents, primarily at U.S. Army Laboratories at Edgewood
Arsenal, Maryland."  Sprenkel Decl., Ex. 1 at VET001_015677.  See
also Answer ¶ 5 (admitting "that the DOD used approximately 7,800
armed services personnel in the experimentation program at
Edgewood Arsenal" and that it "administered 250 to 400 chemical
and biological agents during the course of its research at
Edgewood Arsenal involving human subjects").  The experiments had
a variety of purposes, including increasing the country's
defensive and offensive capabilities for war and researching
behavior modification.  Answer ¶ 3.

Plaintiffs contend that participants were administered
secrecy oaths[2] and told that they could not discuss the
experimentation program with anyone, under threat of a general
court martial.  Defendants have been unable to locate written
secrecy oaths administered during WWII or the Cold War.

Various memoranda and regulations were intended to govern
these experiments.  In February, 1953, the Secretary of Defense
issued the Wilson Directive to the Army, Navy and Air Force
governing "the use of human volunteers by the Department of

---

[2] Plaintiffs define "secrecy oath" to include "all promises or
agreements, whether written or oral, and whether formal or
informal, made by test participants after being told that they
could never speak about their participation in the testing
programs."  Mot. at 2, n.2.

United States District Court
For the Northern District of California

Defense in experimental research in the fields of atomic, biological and/or chemical warfare." Sprenkel Decl., Ex. 26, C001. The Wilson Directive stated, "The voluntary consent of the human subject is absolutely essential," and provided that, before such consent can be given, the participant must be informed of, among other things, the nature of the experiment, "all inconveniences and hazards reasonably to be expected; and the effects upon his health and person which may possibly come from his participation in the experiment." Id. at C001-02. It further provided, "Proper preparation should be made and adequate facilities provided to protect the experimental subject against even remote possibilities of injury, disability, or death." Id. at C003. A June 1953 Department of the Army memorandum, CS:385, repeated these requirements and further stated, "Medical treatment and hospitalization will be provided for all casualties of the experimentation as required." Sprenkel Decl., Ex. 27, 1-2, 7. These requirements were codified in Army Regulation (AR) 70-25, which was promulgated on March 26, 1962 and reissued in 1974. Sprenkel Decl., Ex. 28; Herb Decl., Exs. 11, 12.

Plaintiffs contend that, despite the memoranda and regulations discussed above, all volunteers participated without giving informed consent because the full risks of the experiments were not fully disclosed. See, e.g., Blazinski Depo. 97:8-11.

In 1990, the Army issued an updated version of AR 70-25. Herb Decl., Ex. 13. Among other changes, this version added a provision stating,

> Duty to warn. Commanders have an obligation to ensure that research volunteers are adequately informed concerning the risks involved with their participation

4

in research, and to provide them with any newly acquired
information that may affect their well-being when that
information becomes available.  The duty to warn exists
even after the individual volunteer has completed his or
her participation in research. . . .

Id. at 5.  It also required the Army to create and maintain a

"volunteer database" so that it would be able "to readily answer

questions concerning an individual's participation in research"

and "to ensure that the command can exercise its 'duty to warn.'"

Id. at 3, 13-14.  It further provided, "Volunteers are authorized

all necessary medical care for injury or disease that is a

proximate result of their participation in research."  Id. at 3.

In 1991, the DOD issued regulations addressing the protection

of human test subjects.  56 Fed. Reg. 28003 (codified at 32 C.F.R.

§§ 29.101-124).  These regulations adopted some of the basic

principles of informed consent set forth in the Wilson Directive.

See 32 C.F.R. § 219.116.

In 2002, Congress passed section 709 of the National Defense

Authorization Act for Fiscal Year 2003 (NDAA), Pub. L. No. 107-

314, Div. A, Title VII, Subtitle A, § 709(c), 116 Stat. 2586,

which required the Secretary of Defense to work to identify

projects or tests, other than Project 112,[3] "conducted by the

Department of Defense that may have exposed members of the Armed

Forces to chemical or biological agents."

The DOD has issued two memoranda releasing veterans in part

or in full from secrecy oaths that they may have taken in

_____

[3] Project 112 referred to "the chemical and biological weapons
vulnerability-testing program of the Department of Defense
conducted by the Deseret Test Center from 1963 to 1969," including
"the Shipboard Hazard and Defense (SHAD) project of the Navy."
NDAA § 709(f).

conjunction with testing.  The first, issued by former Secretary

of Defense William Perry in March 1993, releases

> any individuals who participated in testing, production,
> transportation or storage associated with any chemical
> weapons research conducted prior to 1968 from any non-
> disclosure restrictions or written or oral prohibitions
> (e.g., oaths of secrecy) that may have been placed on
> them concerning their possible exposure to any chemical
> weapons agents.

Herb Decl. Ex. 44 (the Perry memorandum).  The second, issued by

the Office of the Deputy Secretary of Defense on January 11, 2011,

after the instant litigation began, does not have a date

restriction and states,

> In the 1990s, several reviews of military human subject
> research programs from the World War II and Cold War
> eras noted the common practice of research volunteers
> signing "secrecy oaths" to preclude disclosure of
> research information.  Such oaths or other non-
> disclosure requirements have reportedly inhibited
> veterans from discussing health concerns with their
> doctors or seeking compensation from the Department of
> Veterans Affairs for potential service-related
> disabilities.
>
> . . .
>
> To assist veterans seeking care for health concerns
> related to their military service, chemical or
> biological agent research volunteers are hereby released
> from non-disclosure restrictions, including secrecy
> oaths, which may have been placed on them.  This release
> pertains to addressing health concerns and to seeking
> benefits from the Department of Veterans Affairs.
> Veterans may discuss their involvement in chemical and
> biological agent research programs for these purposes.
> This release does not affect the sharing of any
> technical reports or operational information concerning
> research results, which should appropriately remain
> classified.
>
> . . .
>
> This memorandum, which is effective immediately, does
> not affect classification or control of information,
> consistent with applicable authority, relating to other
> requirements pertaining to chemical or biological
> weapons.

Herb Decl. Ex. 46 (the 2011 memorandum).

United States District Court
For the Northern District of California

The DVA, which Plaintiffs contend participated in some capacity in some of the other Defendants' testing programs, processes service-connected death or disability compensation (SCDDC) claims of class members.  See Sprenkel Decl., Ex. 44 at MKULTRA0000190090_0325; Sprenkel Decl., Ex. 45 VET001_009241. Plaintiffs also contend that the DVA engaged in human testing of similar substances, including LSD and Thorazine.  Sprenkel Decl., Ex. 46.  To establish that a death or disability is connected to a veteran's participation in the testing programs for the purposes of SCDDC claims, individuals seeking survivor or disability benefits must establish that "it is at least as likely as not that such a relationship exists."  Sprenkel Decl., Ex. 47, VET001_015127-28; see also Sprenkel Decl., Ex. 23, 41:2-6.

Defendants have undertaken some efforts to provide notice to participants in the testing program.  In recent years, the DVA, with the assistance of the DOD, sent notice letters to certain individuals who participated in some WWII and Cold War era testing programs.  For the first round of letters related to WWII era testing sent in 2005, DOD compiled a database of approximately 4,495 individuals who had been exposed to mustard gas or Lewisite and sent letters to approximately 321 individuals or their survivors for whom Defendants could locate contact information. Sprenkel Decl., Ex. 56.[4]  These letters stated in part,

---

[4] In 1990, DVA contacted 128 veterans who participated in mustard gas testing.  Herb Decl., Ex. 27, DVA014 001257.  Defendants have offered no evidence about what information was provided to these veterans at that time or whether these 128 veterans were among the 321 veterans contacted more recently.

> You may be concerned about discussing your participation in mustard agent or Lewisite tests with VA or your health care provider.
>
> On March 9, 1993 the Deputy Secretary of Defense released veterans who participated in the testing, production, transportation or storage of chemical weapons prior to 1968 from any non-disclosure restriction. Servicemembers who participated in such tests after 1968 are permitted to discuss the chemical agents, locations, and circumstances of exposure only, because this limited information has been declassified.

Herb Decl., Ex. 30.

For the second round of letters, the DOD compiled a database of approximately 10,000 individuals who participated in Cold War era testing, sent letters to fewer than 4,000 people for whom they located contact information, and provided the database to the DVA. Sprenkel Decl., Exs. 38-40. The DOD excluded from this database individuals who fell into a number of categories, such as those who participated in particular types of chemical and biological tests. See, e.g., Sprenkel Decl., Ex. 36. Defendants did not include in the letters the names of the chemical or biological agents to which the participants were exposed. Sprenkel Decl., Ex. 34. The letters sent by the DVA stated,

> You may be concerned about releasing classified test information to your health care provider when discussing your health concerns. To former service members who have participated in these tests, DoD has stated:
>
> "You may provide details that affect your health to your health care provider. For example, you may discuss what you believe your exposure was at the time, reactions, treatment you sought or received, and the general location and time of the tests. On the other hand, you should not discuss anything that relates to operational information that might reveal chemical or biological warfare vulnerabilities or capabilities."
>
> . . .
>
> If you have questions about chemical or biological agent tests, or concerns about releasing classified information, contact DoD at (800) 497-6261, Monday through Friday, 7:30 a.m. to 4:00 p.m. Eastern Standard time.

Sprenkel Decl., Ex. 77. The letter also provided information about obtaining a clinical examination from the DVA and contacting the DVA to file a disability claim.  Id.  The DVA also included a fact sheet from the DOD.  The DVA's own expert in chemical agent exposures recognized that this fact sheet "has some significant inaccuracies."  Sprenkel Decl., Ex. 52, DVA052 000113.  The DOD also placed some information on its public website, including the contents of the Perry memorandum.

In the instant motion, Plaintiffs seek certification of a class consisting of

> All current or former members of the armed forces, or in the case of deceased members, the personal representatives of their estates, who, while serving in the armed forces, were test subjects in any human Testing Program that was sponsored, overseen, directed, funded, and/or conducted by the Department of Defense or any branch thereof, including but not limited to the Department of the Army and the Department of the Navy, and/or the Central Intelligence Agency, between the inception of the Testing Programs in approximately 1922 and the present.  For the purposes of this definition, "Testing Program" refers to a program in which any person was exposed to a chemical or biological substance for the purpose of studying or observing the effects of such exposure.

Reply, at 17.  Plaintiffs exclude "persons who were exclusively test participants in Project 112/SHAD (Shipboard Hazard and Defense)."  Id. at 17 n.15.

As stated in their motion for class certification and clarified at the hearing, Plaintiffs seek to prosecute various claims arising under the United States Constitution and the Administrative Procedures Act (APA), 5 U.S.C. §§ 701, et seq., on behalf of the class against the DOD, the Army, the CIA and the DVA.  Against the DOD, the Army and the CIA, Plaintiffs seek on behalf of the class a declaration that the secrecy oaths are

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

invalid and an injunction requiring Defendants to notify class members that they have been released from such oaths. Against the DOD and the Army, Plaintiffs seek to prosecute claims on behalf of the class asserting (1) under the APA, that these Defendants are required to provide class members with notice[5] of their exposures and known health effects, and medical care as set forth in the agencies' own policies; (2) under the Fifth Amendment, that these Defendants' failure to provide class members with notice, medical care and a release from secrecy oaths violated their substantive due process liberty rights, including their right to bodily integrity; (3) under the Fifth Amendment, that these Defendants' failure to provide class members with any procedures whatsoever to challenge this deprivation violated their procedural due process rights; (4) under the Fifth Amendment, that these Defendants' failure to comply with their own regulations and procedures regarding notice and medical care deprived class members of their due process rights; and (5) under the First and Fifth Amendment, that the failure to provide a release from secrecy oaths prevented class members from filing claims for benefits with the DVA and thereby violated their right of access to the courts. Against the DVA, Plaintiffs seek to prosecute a claim on behalf of the class under the Fifth Amendment's due process clause asserting the agency is an inherently biased adjudicator of class members'

---

[5] Plaintiffs define "notice" as "notice to each test participant regarding the substances to which he or she was exposed, the doses to which he or she was exposed, the route of exposure (e.g., inhalation, injection, dermal, etc.) and the potential health effects associated with those exposures or with participation in the tests." Mot. at 2.

claims for benefits.  They seek appointment of named Plaintiffs
Tim Josephs, William Blazinski and Vietnam Veterans of America
(VVA) as class representatives.

Although Plaintiffs seek to substitute Kathryn McMillan-Forrest as a named Plaintiff in this action in place of her late husband, former Plaintiff Wray Forrest, they do not seek appointment of Ms. McMillan-Forrest as a representative for the class.

DISCUSSION

I.   Motion for Class Certification

A. Legal Standard

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

Plaintiffs must also establish that one of the subsections of Rule 23(b) is met.  In the instant case, Plaintiffs seek certification under subsections (1)(A) and (2).  A court may certify a class pursuant to Rule 23(b)(1)(A) if the plaintiffs establish that "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent

United States District Court
For the Northern District of California

or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). The court must conduct a "'rigorous analysis,'" which may require it "'to probe behind the pleadings before coming to rest on the certification question.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Falcon, 457 U.S. at 160-61). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." Dukes, 131 S. Ct. at 2551. To satisfy itself that class certification is proper, the court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

B. Claims at Issue

Defendants contend that Plaintiffs improperly seek certification to prosecute claims that are not asserted in their

third amended complaint (3AC) or that have been abandoned or dismissed, and to pursue relief not requested in the 3AC.

Defendants argue that, because in the 3AC Plaintiffs requested only declaratory relief regarding the validity of the secrecy oaths and did not demand injunctive relief requiring Defendants to notify test participants that they are released from the oaths, Plaintiffs cannot now properly seek certification of a class to pursue such a remedy. Opp. at 9. Defendants cite no authority in support of this contention. Although Federal Rule of Civil Procedure 8(a) requires that a "pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief," a court is not limited to the relief sought in this demand when entering a final judgment. See Fed. R. Civ. P. 54(c) (final judgments other than default judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). The Ninth Circuit has applied this rule to uphold a court's power to award declaratory relief when that relief was not requested in the complaint. See Arley v. United Pacific Ins. Co., 379 F.2d 183, 186-187 (9th Cir. 1967). Defendants make no showing that they would be prejudiced by a request for injunctive relief. Accordingly, the Court rejects their argument that a class, if certified, may not pursue injunctive relief on this claim.

Defendants also contend that Plaintiffs seek certification of a class to pursue claims that were previously dismissed. Specifically, Defendants point to Plaintiffs' request in their proposed order that the class be certified to pursue declarations

13

that, by "subjecting members of the Proposed Class to
participation in the human testing programs, DOD put members of
the Proposed Class at risk of adverse health effects," and that
"DOD violated the Official Directives by failing to implement
procedures to determine whether members of the Proposed Class have
particular diseases--mental or physical--as a result of the
testing programs."  Opp. at 10 (citing Proposed Order ¶¶ 1.e,
1.f).  Defendants argue that these requests challenge the
lawfulness of the testing program itself, claims which the Court
has already dismissed with prejudice.  These requests, however,
can more properly be viewed as part of Plaintiffs' claims for
notice and health care.  A declaration that the DOD has not
implemented procedures that would allow it to recognize and
diagnose whether members have illnesses related to their
participation in the testing programs, for example, is part of a
claim that the DOD and the Army have systematically failed to
provide proper medical care to remedy such diseases.  Similarly,
the request for a declaration that the DOD put Plaintiffs at risk
of adverse health effects is part of Plaintiffs' claim that the
DOD and the Army failed to notify class members of such risks.
These requests for relief have not been dismissed.

Defendants also contend that Plaintiffs' statement that
"factual issues underpinning" the due process claims include
whether Defendants "obtained the informed consent of test
participants, adopted reasonable testing protocols and procedures,
and complied with their obligations to adopt procedures for
continued medical care and treatment of casualties" improperly
re-asserts claims about the lawfulness of the testing program that

were already dismissed with prejudice.  Opp. at 11.  If Plaintiffs seek to litigate whether Defendants had "adopted reasonable testing protocols and procedures" to challenge the lawfulness of the testing itself, such a claim was previously dismissed and a class will not be certified to pursue it.  However, Plaintiffs' argument that Defendants lacked reasonable testing protocols to obtain informed consent, so that the secrecy oaths given by class members were void from the beginning, relates to a claim that the Court has not dismissed.

Finally, Defendants argue that Plaintiffs are trying now to pursue constitutional claims for notice and health care that they previously abandoned or did not include in the 3AC and that they should be limited to prosecuting claims under the APA.  Defendants contend that they previously moved to dismiss Plaintiffs' claims in their entirety and suggest that, in response, Plaintiffs disavowed any constitutional basis for their notice and health care claims.  However, in their opposition to that motion, Plaintiffs clearly asserted the constitutional basis for these claims.  See, e.g., Docket No. 43, at 22-23 ("Defendants violated due process and fundamental constitutional rights (and binding regulations) by subjecting Plaintiffs to testing without informed consent and by failing to provide follow-up information and health care.").  Further, the 3AC does allege constitutional claims related to notice and health care against the DOD and the Army, see, e.g., 3AC ¶¶ 184-86, which this Court has not previously dismissed, unlike the corresponding claims previously asserted against the CIA.  The constitutional claims contained in these paragraphs of the 3AC were not limited to substantive due process

challenges and can be fairly read to encompass procedural due
process claims, particularly in conjunction with the extensive
allegations of procedural deficiencies alleged elsewhere in the
3AC.

C. Standing and Identification of Representatives

Defendants argue that Plaintiffs have not identified a proper
representative.  They state that, because in the 3AC Plaintiffs
stated, "The proposed class representatives are Plaintiffs VVA and
Swords to Plowshares," 3AC ¶ 175, they cannot now seek to have
Josephs and Blazinski appointed as class representatives, in that
this would be a "functional" amendment of their complaint.  Opp.
at 12.  However, in a separate paragraph of the 3AC, Plaintiffs
did identify Blazinski and Josephs as proposed class
representatives.  In that pleading, Plaintiffs added Blazinski and
Josephs for the first time, referring to them as the Additional
Plaintiffs, see 3AC at 62, and stated, "Together with one or more
of the original Plaintiffs, Plaintiffs may seek approval for the
Additional Plaintiffs to serve as class representatives," 3AC
¶ 222.

Defendants also argue that VVA does not have standing and
cannot serve as a class representative, because it itself is not a
class member and did not suffer the same injuries as class
members.  Plaintiffs respond that VVA has associational standing.
Although Defendants admit that the Ninth Circuit has recognized
associational standing in such situations, they argue that the
Supreme Court has recently made a "pronouncement" that "a class
representative must be part of the class and possess the same
interest and suffer the same injury as the class members."  Opp.

**United States District Court**
For the Northern District of California

at 12-13 (quoting Dukes, 131 S. Ct. at 2550).  As Plaintiffs point out, this was not a new requirement set forth by the Supreme Court in Dukes, which did not deal with associational standing; instead, this was a quote from several earlier cases.  See Dukes, 131 S. Ct. at 2550 (quoting East Tex. Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974)).  Although it is true that a class representative must fulfill this requirement, "many courts have held that organizations with associational standing may serve as class representatives, at least where the underlying purpose of the organization is to represent the interests of the class."  Monaco v. Stone, 2002 U.S. Dist. LEXIS 28646, at *127 (E.D.N.Y.) (collecting cases); see also International Union, United Auto., etc. v. LTV Aerospace & Defense Co., 136 F.R.D. 113, 123-124 (N.D. Tex. 1991) (collecting cases). Thus, the Ninth Circuit has rejected the argument that the unions cannot serve as class representatives because they "are not members of the class they seek to represent" as "without merit, since, in their associational capacity, the unions are acting on behalf of" the class members.  California Rural Legal Assistance, Inc. v. Legal Services Corp., 917 F.2d 1171, 1175 (9th Cir. 1990). See also Prado-Steiman v. Bush, 221 F.3d 1266, 1267 (11th Cir. 2000) (remanding to district court to ensure that "at least one of the named class representatives possesses the requisite individual or associational standing to bring each of the class's legal claims"); In re Pharm. Indus. Average Wholesale Price Litig., 277 F.R.D. 52, 61-62 (D. Mass. 2011) (finding that organizations with associational standing may serve as class representatives).

The Supreme Court has held that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). See also Oklevueha Native Am. Church of Haw., Inc. v. Holder, 676 F.3d 829, 839 (9th Cir. 2012) (applying the standard for associational standing set forth in Hunt).

Defendants do not dispute that the VVA has met the last two requirements; instead, they argue that the VVA cannot meet a purported additional requirement for associational standing, that there must be a "compelling need" for VVA to serve as a class representative to vindicate the rights of class members not currently before the Court. Opp. at 13. In support of such an additional requirement, Defendants cite Black Coalition v. Portland School Dist., 484 F.2d 1040 (9th Cir. 1973), in which the Ninth Circuit stated that "an association has standing to represent its members in a class suit only if 'there is a compelling need to grant [it] standing in order that the constitutional rights of persons not immediately before the court might be vindicated.'" Id. at 1043 (quoting Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 937 (2d Cir. 1968)). However, Black Coalition was decided before the Supreme Court enunciated the three part test for associational standing in Hunt and has not been cited for this proposition thereafter. In later cases, the Ninth Circuit has relied on the Hunt test alone when

assessing associational standing.  See, e.g., Oklevueha Native Am. Church, 676 F.3d at 839; Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1109-1113 (9th Cir. 2003).  Further, at least one other Court of Appeals has since rejected the contention "that associations never have representational standing without a showing of compelling need" because any such requirement "was substantially undercut by later associational standing cases," including Hunt.  See Associated General Contractors v. Otter Tail Power Co., 611 F.2d 684, 688-689 (8th Cir. 1979).  Indeed, after Hunt, the Ninth Circuit has allowed associations to represent classes along with individual plaintiffs.  California Rural Legal Assistance, 917 F.2d at 1175.  Accordingly, the Court finds that the VVA has associational standing to represent the class, as long as some of its members would otherwise have standing to sue in their own right.[6]

Defendants argue that Plaintiffs have not met their burden to show, on a claim-by-claim basis, that at least one of the proposed class representatives has standing to pursue each claim.  "In a class action, standing is satisfied if at least one named plaintiff meets the requirements."  Bates v. UPS, 511 F.3d 974,

---

[6] To meet this requirement, VVA relies on two of the named Plaintiffs in this action, Josephs and David Dufrane, as well as four individuals who are not named Plaintiffs, but are members of the VVA.  Defendants argue that three of the VVA members do not have standing because they did not participate in chemical or biological testing and participated as test subjects instead in equipment testing or "blood work."  Opp. at 15 n.25.  Plaintiffs reply that servicemen who were "exposed to nerve agents or other chemical substances during 'equipment tests' are part of the proposed class."  Reply, at 7.  The Court need not reach this contention because Defendants and Plaintiffs agree that at least VVA members Josephs, Dufrane and Doe were exposed to biological or chemical testing.

United States District Court
For the Northern District of California

985 (9th Cir. 2007) (citing <u>Armstrong v. Davis</u>, 275 F.3d 849, 860 (9th Cir. 2001)).

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting <u>Friends of the Earth, Inc., v. Laidlaw Ent'l Serv., Inc</u>, 528 U.S. 167, 180-81 (2000)).  This Court has previously recognized, "In the context of declaratory relief, a plaintiff demonstrates redressability if the court's statement would require the defendant to 'act in any way' that would redress past injuries or prevent future harm." <u>Vietnam Veterans of Am. v. CIA</u>, 2010 U.S. Dist. LEXIS 3787, at *15 (N.D. Cal.) (quoting <u>Mayfield v. United States</u>, 588 F.3d 1252, 2009 WL 4674172, at *6 (9th Cir. 2009), <u>replaced by</u> 599 F.3d 964 (2010)). Where a "plaintiff seeks prospective injunctive relief, he must demonstrate 'that he is realistically threatened by a repetition of [the violation],'" which may be shown by demonstrating "that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'" <u>Armstrong</u>, 275 F.3d at 860-61 (internal citations omitted).

Defendants contend primarily that Plaintiffs cannot establish injury-in-fact or redressability for each claim.

**United States District Court**
For the Northern District of California

1. Notice

Plaintiffs seek an order requiring that Defendants provide notice to class members regarding the substances to which they were exposed, the dosage of the substances, the route of exposure and potential health effects of exposure or participation in the experiments, and a declaration that Defendants have a continuing duty to provide updated notice to all class members as more information about exposures and medical effects is learned or acquired.

Defendants argue that the proposed representatives cannot demonstrate that they have a redressable injury regarding notice, because "they have already received all the information that they could receive through this suit." Opp. at 15. Defendants rely on the fact that Blazinski, Josephs, Dufrane and Doe requested and received what Defendants refer to as their "service member test files" from the DOD, which Defendants contend included information regarding the substances to which they were exposed, dosage and routes of exposure. Defendants further contend that Blazinski and Josephs received a notice letter from the DVA with similar information.

Defendants conflate standing with the ultimate merits of Plaintiffs' claims. See, e.g., Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits."). Further, the documents to which Defendants point are not so clear as to establish as a matter of law that these individuals received the notice that

United States District Court
For the Northern District of California

Plaintiffs demand in this case.[7]  Many of the test files are

partially illegible and list substances by internally-used codes

or agent numbers, which were indecipherable to the recipients.

See, e.g., Dufrane Depo. 81:15-82:10.  Defendants argued at the

hearing that the test files also "oftentimes"--but not

always--contained information about the chemical compounds to

which service members were exposed; however, the documents

themselves do not make clear which codes corresponded with

compounds listed elsewhere in the test files, and which were

undefined.  Further, Defendants' contention at the hearing that

the proposed representatives could have called the DOD to ask what

the codes meant does not establish that the DOD and the Army

affirmatively provided notice of this information to Blazinski,

Josephs, Dufrane and Doe.  Plaintiffs also contend that the test

files were largely unintelligible to the class members who did

receive them and that this has interfered with their ability to

access medical care.  See, e.g., Dufrane Depo. Tr. 141:1-142:13.

Defendants have not challenged this contention.  The test files

also contain little or no information about potential health

effects.

Defendants rely on the letters from the DVA to assert that

each of the proposed representatives has received notice of the

---

[7] Defendants cite "Ex. 525" apparently as the service member test
file for Doe, see Opp. at 16 (citing Ex. 525); see also Herb
Decl., Ex. 52 (Doe Depo.), 42:4-22 (Doe identifying an exhibit
"marked as Exhibit 525" as the volunteer test file that the Army
mailed him in 2011 at this request).  However, Defendants did not
provide this exhibit to the Court.  Accordingly, Defendants have
not established that Doe's test file contained sufficient
information to provide the notice demanded by Plaintiffs in the
instant case.

known potential health effects associated with substances to which
he was exposed or with participation in studies.  Defendants
contend that the DOD "is unaware of any general long-term health
effects associated with the chemical and biological testing
programs," and that the DVA notices were accompanied by a fact
sheet from the DOD which stated that a study "did not detect any
significant long-term health effects in Edgewood Arsenal
volunteers" from "exposure to the chemicals tested."  Opp. at 17;
Herb Decl. Ex. 53.  Defendants argue that the DOD has thus
fulfilled any obligation to provide notice of known potential
health effects.  These letters do not establish that, as a matter
of law, the proposed representatives lack standing.  First, the
letters from the DVA were not sent by the DOD and the Army, which
Plaintiffs claim have a duty to provide such notice.[8]  Further,
the letters only provided general information regarding the
testing programs, without any individualized information about
substances to which the particular recipient was exposed, doses or
possible health effects.  See Herb Decl., Exs. 33, 34.[9]  Finally,
the conclusion expressed in the letters, that there are no long

---

[8] The DOD testified that this form letter was "a VA document," and
that the DOD could only give "advisory" recommendations of changes
to the letter, but that the DVA ultimately decided whether to
accept or reject those suggestions and was responsible for the
content.  Sprenkel Reply Decl., Ex. 88 (Kilpatrick Depo.),
518:8-519:16).

[9] The Court also notes that the DVA sent Blazinski this letter
after Defendants took his deposition in this case, at which he
testified that he did not recall receiving any such letter.  See
Blazinski Decl. ¶¶ 2-3; Blazinski Depo. 112:112:4-113:10; Sprenkel
Reply Decl. ¶ 4, Ex. 77.  Defendants may not attempt to moot
Plaintiffs' claims on behalf of the class by picking off the named
representatives in such a way.

United States District Court
For the Northern District of California

term health effects from the testing, is contradicted by Defendants' own documents. Specifically, an internal DVA memorandum to its clinicians stated that "long-term psychological consequences . . . are possible from the trauma associated with being a human test subject," Sprenkel Decl., Ex. 49, 3, and long-term psychological health effects were not included in the DVA notice letter. Further, Mark Brown, the DVA's own expert in chemical agent exposures, stated that the representations about health effects in the letter were "clearly incorrect." Sprenkel Decl., Ex. 52, DVA052 000113. Specifically, he rejected the letter's statement that a particular study "did not detect any significant long-term health effects in Edgewood Arsenal volunteers" because the study did find some such effects, and he suggested that the letter be rephrased to state that the study found "few significant long-term health effects." Id. This change was not made in the fact sheet sent to the proposed representatives. See Herb Decl., Exs. 33, 34. Accordingly, these letters do not establish that the proposed class representatives have received notice of the potential health effects associated with participating in the testing. Thus, they could benefit individually from receiving the notice that they seek on behalf of the class. Accordingly, the Court concludes that Blazinski, Josephs, and the VVA, through Josephs, Dufrane and Doe, have standing to prosecute the claims for notice.

　　　　　　　2. Health care

　　Plaintiffs seek declaratory and injunctive relief requiring the DOD and the Army to provide medical care to all participants for conditions arising from the testing program.

United States District Court
For the Northern District of California

Defendants challenge on several grounds the standing of the proposed representatives to assert this claim.  First, Defendants argue that Josephs, Blazinski and Doe have not sought medical care from the DOD and the Army since they left the service.  Rather, they have only sought such care from the DVA and therefore cannot establish that they were injured by the failure of the DOD and the Army to provide health care.  Defendants do not dispute that Dufrane did attempt to seek medical care from the DOD and the Army, by sending them a letter about his health issues, and that "[n]othing ever happened" as a result.  See Sprenkel Decl., Ex. 79 at 77:2-12, 77:25-79:9.  Further, as Defendants acknowledge, the DOD and the Army did not have any mechanism for individuals to make a claim for medical treatment.  See Opp. at 18.  The fact that the proposed representatives had no way to make such a request is itself an injury that could be remedied by their claim.

Second, Defendants contend that the proposed class representatives were able to seek care from the DVA and thus cannot establish that they suffered any injury from their inability to seek medical care from the DOD and the Army.  However, this does not necessarily relieve the DOD and the Army from being required independently to provide medical care, particularly because Plaintiffs may be able to establish that the scope of their duty may be different than that of the DVA.

Finally, Defendants argue that Plaintiffs' claim for medical care is in fact for money damages, not for equitable relief, and thus that the APA's waiver of sovereign immunity does not apply to this claim.  Defendants claim that, because the Court would thus not have jurisdiction to afford relief, Plaintiffs' injuries

cannot be redressed.  Defendants raised the same argument in their second motion to dismiss the health care claims, <u>see</u> Docket No. 218, 12-13, which the Court denied, <u>see</u> Docket No. 233, 8-10.

Further, the cases upon which Defendants rely do not counsel the result that they urge.  In <u>Schism v. United States</u>, 316 F.3d 1259 (Fed. Cir. 2002), the Federal Circuit held that compensation of members of the military, including claims for benefits that are compensation for services rendered, is governed by statute and not contract.  316 F.3d at 1273.  There, the plaintiffs were seeking full, free lifetime health care coverage as a form of deferred compensation for military service, premised on an implied-in-fact contract for such coverage.  Here, Plaintiffs are not seeking medical care as a form of deferred compensation for their military service.

In <u>Jaffee v. United States</u>, 592 F.2d 712 (3d Cir. 1979), the plaintiff sought "either the provision of medical services by the Government or payment for the medical services," which the Third Circuit characterized as "a traditional form of damages in tort compensation for medical expenses to be incurred in the future." <u>Id.</u> at 715.  Because the "payment of money would fully satisfy" the plaintiff's claim, the court concluded that it was actually a claim for money damages.  <u>Id.</u>  The Third Circuit subsequently explained that the principle derived from <u>Jaffee</u> is "that an important factor in identifying a proceeding as one to enforce a money judgment is whether the remedy would compensate for past wrongful acts resulting in injuries already suffered, or protect against potential future harm." <u>Penn Terra, Ltd. v. Dept. of Envtl. Res.</u>, 733 F.2d 267, 276-277 (3d Cir. 1984).  Here,

**United States District Court**
For the Northern District of California

Plaintiffs' injury could not be fully remedied by money damages. Further, they seek to end purported ongoing rights violations, not compensation for harms that took place completely in the past.

Finally, in Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001), the Ninth Circuit did not "rule[] that a claim seeking service connection for an ailment or entitlement to ongoing medical care is essentially one for damages," as Defendants represent.  Opp. at 40.  In that products liability case, which did not involve military service, the Ninth Circuit found, in determining whether the relevant claim was equitable or for money damages, the "salient facts" were that the operative complaint sought the creation of a "medical monitoring fund" and requested an award of compensatory and punitive damages.  Zinser, 253 F.3d at 1194 (emphasis in original).  Such requests are not at issue here.

Accordingly, the Court concludes that Josephs, Blazinski, and the VVA, through Josephs, Dufrane and Doe, have standing to prosecute the claims for medical care.

### 3. Secrecy Oaths

Defendants argue that, because Blazinski, Josephs, Dufrane and Doe no longer feel constrained by any secrecy oath and Defendants have already released all putative class members from any secrecy oath through the 1993 and 2011 memoranda, Plaintiffs cannot establish any injury that could be redressed through the relief sought here.

Plaintiffs reply that Defendants' argument would mean that anyone who feels unconstrained enough by the secrecy oath to come forward to represent the class would thereby lose standing.

United States District Court
For the Northern District of California

1    Plaintiffs also offer evidence that Dufrane testified that he

2    continued to feel bound by the secrecy oath to some extent.  See

3    Dufrane Depo. 93:13-20.  Further, as Plaintiffs point out, the

4    fact that these individuals have made some disclosures about the

5    testing, including to their spouses, counsel and other named

6    Plaintiffs, does not mean that they do not suffer ongoing effects

7    of the secrecy oaths, such as a continuing fear of prosecution.

8         Further, Defendants have not issued a complete release for

9    the proposed representatives and VVA members who participated in

10   testing after 1968, including Josephs, Blazinski and Doe.  Herb

11   Decl., Exs. 19, 49; Doe Depo. 47:5-18.  The 2011 memorandum only

12   allows test participants to speak about their involvement in

13   chemical and biological agent testing for the limited purposes of

14   addressing health concerns and seeking benefits from DVA.  It is

15   not clear, for example, whether they are allowed to obtain

16   therapeutic counseling, participate in group therapy or discuss

17   their experiences with their spouses or other family members,

18   without fear of prosecution.

19        Further, Defendants have not established that they

20   communicated the release provided in the Perry memorandum to

21   Dufrane, who participated in testing prior to 1968.  See Herb

22   Decl., Ex. 80.  Dufrane received the notice letter from the DVA

23   quoted above, which allowed only disclosure of "details that

24   affect your health to your health care provider."  See Dufrane

25   Depo. 92:17-23; Herb Decl., Ex. 82.  Defendants cite no evidence

26   that they communicated an unconditional release to him.

27        Accordingly, Josephs, Blazinski, Doe and Dufrane could

28   benefit from equitable relief that would invalidate the secrecy

oaths altogether and that would require Defendants to communicate that release clearly to class members.

Defendants also assert that the proposed representatives lack standing to prosecute the secrecy oath claim against the CIA, because "Plaintiffs' 3AC contains not a single allegation that the CIA was involved in the administration of secrecy oaths or that any of the named Plaintiffs or VVA members believes he has a secrecy oath with the CIA," because none of the Plaintiffs and individual VVA members testified to personal knowledge of the CIA's involvement and because the CIA itself has determined that "no such agreements" with these individuals exist.  Opp. at 21. In denying the CIA's motion for judgment on the pleadings, the Court has already held that

> Plaintiffs plead facts about the CIA's pervasive involvement in planning, funding and executing the experimentation programs.  Plaintiffs also plead that the CIA had an interest in concealing the programs from "enemy forces" and "the American public in general." 3AC ¶ 145 (citation and internal quotation marks omitted).  These allegations, construed in Plaintiffs' favor, suggest that the challenged secrecy oath could be traced fairly to the CIA and that a court order directed at the CIA could redress Plaintiffs' alleged injuries.
>
> Based on their pleadings, Plaintiffs have standing to bring claims against the CIA regarding the secrecy oath.

Docket No. 281, 5-6.  Thus, Defendants' argument has already been rejected.  The CIA's self-serving statement that it cannot locate records of secrecy oaths that it directly administered, and thus does not believe that such oaths were made, does not establish this fact or that other secrecy oaths cannot be traced fairly to the CIA.  Similarly, the fact that Plaintiffs stated in a response to an interrogatory prior to the completion of discovery that, at the time, they did not have "facts identifying specific

United States District Court
For the Northern District of California

circumstances where the Central Intelligence Agency directly administered secrecy oaths to Plaintiffs" does not prove as a matter of law that the CIA was not involved in the secrecy oaths at all, especially because Plaintiffs also stated that they had evidence that the CIA financially supported testing by other entities with the knowledge that secrecy oaths were administered. Herb Decl., Ex. 43.

Accordingly, the proposed representatives have standing to bring claims against the CIA related to the secrecy oath.

### 4. Claims of a biased adjudication by the DVA

Defendants argue that the proposed representatives cannot establish that they suffered an actual injury from the DVA's allegedly biased adjudications of their claims. Defendants direct their arguments to Blazinski and Josephs only, contending that these individuals cannot show how the outcomes of their disability claims was in error or would be altered if they win relief on this claim.[10]  Defendants argue that Josephs was granted forty percent disability based on his exposure to Agent Orange while serving in Vietnam and would not be granted a higher rating if the DVA were to find that his illness was also connected to the testing to which he was exposed at Edgewood Arsenal, although they admit that the DVA never issued a decision regarding this issue.  Defendants also contend that the denial of Blazinski's claim for benefits would not have been different if DVA were unbiased, because he did not submit sufficient documentation of his illnesses to the DVA

---

[10] Defendants do not contend that Dufrane or Doe do not have standing to assert this claim.

and did not appeal the denial of his claim to the Board of
Veterans' Appeals.

Defendants misconstrue the nature of this claim.  Plaintiffs
need not establish that they were denied benefits; instead, the
cause of action is based on the denial of a procedural due process
right to a neutral, unbiased adjudicator.  See Raetzel v.
Parks/Bellemont Absentee Election Bd., 762 F. Supp. 1354, 1356 (D.
Ariz. 1990) ("When a person is denied the procedural opportunity
to influence an administrative decision, standing is based on the
denial of that right, even if that decision would not have been
affected.").  The Supreme Court has held that the denial of
procedural due process is an injury in its own right, "does not
depend on the merits of the claimant's substantive assertions,"
and is actionable even without proof of other injury.  Carey v.
Piphus, 435 U.S. 247, 266 (1978).  See also Clements v. Airport
Auth., 69 F.3d 321, 333 (9th Cir. 1995) ("the 'absolute' right to
adequate procedures stands independent from the ultimate outcome
of the hearing"); Kuck v. Danaher, 600 F.3d 159, 165 (2d Cir.
2010) ("The viability of [the plaintiff's] due process claim does
not turn on the merits of his initial challenge; rather, it
concerns whether he received the process he was due.").  Because
both Blazinski and Josephs applied for benefits, they have
standing to pursue this claim, regardless of whether or not they
will ultimately receive more benefits as a result of this action.

Defendants also contend that, to assess whether Plaintiffs
were injured, the Court would be required to review DVA's
procedures, which it lacks jurisdiction to do under 38 U.S.C.
§ 511.  The Court has already addressed, and rejected, this

contention.  In granting Plaintiffs leave to assert this claim

against the DVA, the Court acknowledged that § 511 "precludes

federal district courts from reviewing challenges to individual

benefits determinations, even if they are framed as constitutional

challenges."  Docket No. 177, 8.  Nonetheless, the effect of § 511

on claims that "purport not to challenge individual benefits

decisions, but rather the manner in which such decisions are

made," has not been addressed by the Ninth Circuit.  Id.  The

Court then reviewed several decisions from other Circuit Courts of

Appeals that did address this issue.  Id. at 9-11 (discussing in

detail Broudy v. Mather, 460 F.3d 106 (D.C. Cir. 2006); Beamon v.

Brown, 125 F.3d 965, 972 (6th Cir. 1997)).  Applying the standards

set forth in Broudy and Beamon, the Court held,

> Section 511 does not bar Plaintiffs' claim under the
> Fifth Amendment.  Under this theory, they mount a facial
> attack on the DVA as the decision-maker.  They do not
> challenge the DVA's procedures or seek review of an
> individual benefits determination.  Nor do they attack
> any particular decision made by the Secretary.  The crux
> of their claim is that, because the DVA allegedly was
> involved in the testing programs at issue, the agency is
> incapable of making neutral, unbiased benefits
> determinations for veterans who were test participants.
> This bias, according to Plaintiffs, renders the benefits
> determination process constitutionally defective as to
> them and other class members.  Whether the DVA is an
> inherently biased adjudicator does not implicate a
> question of law or fact "necessary to a decision by the
> Secretary" related to the provision of veterans'
> benefits.  See Thomas v. Principi, 394 F.3d 970, 975
> (D.C. Cir. 2005).

Docket No. 177, 11.  Defendants have moved for leave to file a

motion for reconsideration of the Court's conclusion, asserting

that the Ninth Circuit's recent decision in Veterans for Common

Sense v. Shinseki, 678 F.3d 1013 (2012), compels a different

result.  Docket No. 431.  Arguing that such reconsideration would

preclude the sole claim against the DVA, Defendants also have
moved for relief from a nondispositive order of the magistrate
judge granting discovery from DVA that was related to this claim.
Docket No. 471.

Veterans for Common Sense does not require reconsideration of
the Court's prior conclusion.  In that case, two nonprofit
organizations challenged delays in the provision of care and
adjudication of claims by the DVA and the lack of adequate
procedures during the claims process.  The court found that the
challenges to delays were barred by § 511, because to adjudicate
those claims, the district court would have to examine the
circumstances surrounding the DVA's provisions of benefits to
individual veterans and adjudication of individual claims.  Id. at
1027-30.  However, after discussing the decisions reached by other
circuits in Broudy, Beamon and several other cases, the court
concluded that it did have jurisdiction over the claims seeking
review of the DVA's procedures for handling benefits claims at its
regional offices.  Id. at 1033-35.  In so holding, the court
stated that, unlike the other claims, this claim "does not require
us to review 'decisions' affecting the provision of benefits to
any individual claimants" and noted that the plaintiff "does not
challenge decisions at all."  Id. at 1034.  The court explained,

A consideration of the constitutionality of the
procedures in place, which frame the system by which a
veteran presents his claims to the VA, is different than
a consideration of the decisions that emanate through
the course of the presentation of those claims.  In this
respect, VCS does not ask us to review the decisions of
the VA in the cases of individual veterans, but to
consider, in the "generality of cases," the risk of
erroneous deprivation inherent in the existing
procedures compared to the probable value of the
additional procedures requested by VCS. . . . Evaluating

**United States District Court**
For the Northern District of California

under the Due Process Clause the need for subpoena
power, the ability to obtain discovery, or any of the
other procedures VCS requests is sufficiently
independent of any VA decision as to an individual
veteran's claim for benefits that § 511 does not bar our
jurisdiction.

Id. at 1034.[11]  Thus, the Ninth Circuit considered some of the same

authority and applied a similar standard as this Court did in its

earlier order.  This Court would have reached the same conclusion

if it had had the benefit of the decision in Veterans for Common

Sense at that time.[12]  Accordingly, the Court DENIES Defendants'

---

[11] The court also found that the fact that the organizational
plaintiff could not "bring its suit in the Veterans Court, that
court cannot claim exclusive jurisdiction over the suit," and
because it could not assert the claim within the exclusive review
scheme set forth by the Veterans' Judicial Review Act, "that
scheme does not operate to divest us of jurisdiction."  Veterans
for Common Sense, 678 F.3d at 1034-35.  However, such a finding
was not necessary to the decision.  The court noted, "Even if an
individual veteran could raise these claims in an appeal in the
Veterans Court or the Federal Circuit, that fact alone does not
deprive us of jurisdiction here."  Id. at 1035 n.26.  Because the
claim raised here "is sufficiently independent of any VA decision
as to an individual veteran's claim for benefits," id. at 1034,
the Court need not reach this alternative ground.

[12] Nor does the Supreme Court's decision in Elgin v. Dept. of
Treasury, 132 S. Ct. 2126 (2012), compel a different result.  In
Elgin, the Supreme Court considered whether the statutory scheme
of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101,
et seq., provided "the exclusive avenue to judicial review when a
qualifying employee challenges an adverse employment action by
arguing that a federal statute is unconstitutional."  132 S. Ct.
at 2130.  Elgin is inapplicable for a number of reasons.  First,
the Court considered a statutory scheme other than that at issue
here, while in Veterans for Common Sense, the Ninth Circuit
considered the precise statutory scheme at issue in this case.
Second, in Elgin, the petitioners challenged the specific adverse
employment actions that were taken against them, and sought relief
including reinstatement to their former positions and backpay.
132 S. Ct. at 2131.  It was central to the Court's decision that
they brought such challenges, because it found that the CSRA was
the exclusive method by which covered employees could obtain
review of adverse employment actions taken against them, whatever
the grounds for the challenge were, with one limited exception.
See id. at 2133-34, 2138-40.  Here, Plaintiffs do not seek to
challenge any particular DVA decision as to an individual

1  motions for leave and for relief (Docket Nos. 431 and 471) and

2  reaffirms its conclusion that it does have jurisdiction to

3  adjudicate this claim.

4     D. Class Definition

5        While it is not an enumerated requirement of Rule 23, courts

6  have recognized that "in order to maintain a class action, the

7  class sought to be represented must be adequately defined and

8  clearly ascertainable." DeBremaeker v. Short, 433 F.2d 733, 734

9  (5th Cir. 1970) (citing Weisman v. MCA Inc., 45 F.R.D. 258 (D.

10 Del. 1968)).  "A class is ascertainable if it identifies a group

11 of unnamed plaintiffs by describing a set of common

12 characteristics sufficient to allow a member of that group to

13 identify himself or herself as having a right to recover based on

14 the description." Hanni v. Am. Airlines, Inc., 2010 U.S. Dist.

15 LEXIS 3410, at *24 (N.D. Cal. 2010) (quoting Moreno v. Autozone,

16 Inc., 251 F.R.D. 417, 421 (N.D. Cal. 2008)).  "The identity of

17 class members must be ascertainable by reference to objective

18 criteria." 5 James W. Moore, Moore's Federal Practice, § 23.21[1]

19 (2001).  Thus, a class definition is sufficient if the description

20 of the class is "definite enough so that it is administratively

21 feasible for the court to ascertain whether an individual is a

22 member." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319

23 (C.D. Cal. 1998).  Where the class definition proposed is overly

24 broad or unascertainable, the court has the discretion to narrow

25 it.

26

27

28 veteran's claim for benefits and the review of their claim would
   not necessitate such an inquiry.

United States District Court
For the Northern District of California

In their opposition, Defendants made three arguments that the proposed class definition was unascertainable. Plaintiffs subsequently revised their proposed definition to address two of Defendants' contentions, that the definition did not require that class members were service members when they were test subjects and that it did not explain testing programs. At the hearing, Defendants confirmed that Plaintiffs' modifications resolved their concerns about these two issues.

In their third argument, Defendants contend that the class definition is overly broad because it includes individuals who have not applied for DVA benefits based on testing or whose applications were approved or otherwise not rejected. This argument is essentially the same as Defendants' contention that Blazinski and Josephs do not have standing to prosecute the claim that the DVA is a biased adjudicator. As discussed above, the cause of action seeks to remedy, not the denial of benefits, but the denial of a neutral, unbiased adjudicator to review a claim for benefits. Further, when a plaintiff pursues injunctive relief to prevent future harm based on a policy or practice generally applicable to the class, it is not required that all of the class members have already been injured by the unlawful policy or practice. See Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998) (explaining that, for a class to be certified under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole[,] [e]ven if some class members have not been injured by the challenged practice"). Thus, test participants who have applied or may apply for benefits in the future may all be class members

for the purposes of the claim against the DVA.  The proposed

definition is not overly broad.

E. Rule 23(a) Requirements

   1. Numerosity

   Plaintiffs contend that they have met the numerosity

requirement because "the Proposed Class has at least tens of

thousands of members."  Mot. at 11.  Plaintiffs also assert that

"Defendants admit that as many as 100,000 military personnel, at

numerous facilities over several decades, were subjected to the

testing programs."  Id.  Defendants do not dispute that Plaintiffs

have satisfied the numerosity requirement, and the Court finds

that they have.

   2. Adequacy

   Rule 23(a)(4) of the Federal Rules of Civil Procedure

establishes as a prerequisite for class certification that "the

representative parties will fairly and adequately protect the

interests of the class."  Plaintiffs argue that there are no

conflicts of interest between the proposed representatives and the

absent class members and that their counsel has extensive

experience prosecuting complex litigation involving veterans, as

well as sufficient resources available for the representation.

Mot. at 23.  Defendants do not challenge the adequacy of the

proposed representatives or their counsel.  Accordingly, the Court

finds that Plaintiffs have fulfilled their burden to establish

that this requirement is satisfied.

   3. Commonality

   Rule 23(a)(2) requires that there be "questions of law or

fact common to the class."  Fed. R. Civ. P. 23(a)(2).  It requires

that such common questions exist; it does not require that they predominate over individual questions, unlike Rule 23(b)(3), under which Plaintiffs do not seek certification.

The Ninth Circuit has explained that Rule 23(a)(2) does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). That "commonality only requires a single significant question of law or fact" was recently recognized both by the Supreme Court and the Ninth Circuit. See Dukes, 131 S. Ct. at 2556; Mazza v. Amer. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012). Thus, for class certification, there must be at least one "common contention . . . of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2551.

> a. APA claims for notice and medical care and constitutional claim for due process violations based on failure to adhere to policies and regulations

Defendants contend that commonality cannot be found for these claims. They assert that there is no common source of a legal duty to provide health care or notice to test participants because different regulations and memoranda were in effect throughout the class period; each can only apply to individuals who were later

subjected to testing and none can retroactively provide benefits.
Defendants also argue that to ascertain whether the Army or DOD
has failed to provide medical care or notice will require an
examination of whether each individual class member knew about the
substances to which he or she was exposed or has suffered health
effects as a result of the test.[13]

Plaintiffs reply that the regulations and directives upon
which they rely contain similar provisions, which are "forward-
looking obligations to all test participants regardless of the
date of their testing."  Reply at 20.

Plaintiffs are correct.  The various regulations and
documents contain identical or similar provisions.  Further,
Plaintiffs do not seek retroactive application of these
obligations.  Plaintiffs do not contend that the regulations
created additional entitlements with respect to the medical care
test participants may have received prior to the creation of any
relevant regulations.  For example, they do not ask that the Army
and DOD be held liable for failure to provide medical care based
on the regulations prior to such date.  Instead, Plaintiffs'
contention is that the regulations create prospective obligations
to provide for future testing-related medical needs for all test
volunteers, and an ongoing duty to warn.  There is nothing in any
version of the regulations or other documents that limits these

United States District Court
For the Northern District of California

---

[13] Defendants also challenge commonality regarding these claims
based on their argument that "Plaintiffs' proposed class is
overbroad."  Opp. at 29, 32.  As previously noted, Plaintiffs
revised their proposed class definition to address the particular
issues raised in this section, and Defendants agreed at the
hearing on this motion that the revisions addressed their
concerns.

forward-looking provisions to those people who became test volunteers after the regulation was created.

In the 1990 version of AR 70-25, the definition for human subject or experimental subject included, with limited exceptions, "a living individual about whom an investigator conducting research obtains data through interaction with the individual, including both physical procedures and manipulations of the subject or the subject's environment." Herb Decl., Ex. 13, 16. The definition does not exclude individuals who were subjected to testing prior to the date of the regulations. Further, by its terms, the section in the 1990 regulation regarding the duty to warn contemplates an ongoing duty to volunteers who have already completed their participation in research. Id. at 5. Defendants maintain that the human experimentation programs ended in 1975. Whether the 1990 regulations created such duties toward any of the class members is a common question, which is central to the validity of these claims and can be accomplished on a class-wide basis.

Defendants point to potential questions of fact that may affect whether they ultimately will be found to have violated a duty toward any particular class member. Defendants argue that their liability will differ based on whether the class member was provided some amount of notice, whether there are actually any known health effects related to the testing of the particular substances to which the class member was exposed or whether the class member suffered adverse health effects that Defendants failed to treat. Not all questions of law and fact must be identical for this requirement to be met. Because there is a

common question of law regarding whether Defendants had duties to provide notice and health care to class members, the Court finds that Plaintiffs have met their burden to establish commonality on these claims.

b. Secrecy oath claims

Plaintiffs argue that their claim seeking a declaration that the secrecy oaths taken by members of the proposed class are invalid and that Defendants must notify test participants that they are released from any secrecy oaths raises common questions "whether [the] secrecy oaths are valid, and whether members of the Proposed Class should be unconditionally released from any such oaths." Reply at 23. The Court finds that Plaintiffs have not met their burden to establish these questions are common to the class.

First, Plaintiffs have offered no evidence that class members were required uniformly to take secrecy oaths or that the contents of such oaths were similar. Without a showing of such a factual predicate, the Court is unable to make a class-wide determination whether the oaths are unenforceable. In support of their contention that "Participants were required to swear to Secrecy Oaths and told that they could never speak about their participation, under threat of general court martial," Plaintiffs cite several pieces of evidence. One of these documents is a National Academy of Sciences study, entitled "Veterans at Risk," and written in response to a request for research made by the DVA. Sprenkel Decl., Ex. 13, VET123-002589. In discussing the mustard and Lewisite testing during WWII, the report states, "All of the men in the chamber and field tests, and some of the men in the

United States District Court
For the Northern District of California

patch tests, were told at the time that they should never reveal the nature of the experiments." Herb Decl., Ex. 2, VET002-001801. The authors also state, "It is clear that there may be many exposed veterans and workers who took an oath of secrecy during WWII and remain true to that oath even today." VET123-002593, 2606-2607; see also Sprenkel Decl., Ex. 1, VET001_015682 (quoting the "Veterans at Risk" study). In their reply brief, Plaintiffs also provided a National Academies report titled, "Health Effects of Perceived Exposure to Biochemical Warfare Agents." Sprenkel Reply Decl., Ex. 80. In summarizing findings of an earlier study about predictive factors for post-traumatic stress disorder in veterans who participated in mustard gas and Lewisite testing during World War II, this report stated, "Because the tests were secret, some participants were compelled to take an oath of secrecy and were subject to criminal prosecution if they disclosed their participation." Id. at 13. See also Sprenkel Decl., Ex. 10 (Hamed Depo.), 158:5-10 (former DOD employee recounting that veterans who participated in testing during WWII told her that they had been administered secrecy oaths).[14]  Nor have Plaintiffs

---

[14] Plaintiffs also rely on the deposition testimony of Blazinski and Josephs, who both participated in Cold War era testing at Edgewood Arsenal.  However, the testimony cited does not establish that these individuals swore a secrecy oath, as defined by Plaintiffs, but rather that they were given varying instructions not to discuss their participation and that the tests were top secret.  See Sprenkel Decl., Ex. 11 (Blazinski Depo.), 101:5-22 (testifying that before he participated in the experiments, he was "told right up front that this was top secret.  We weren't to discuss this with anyone, any tests that were taken there, anything about the program."); 104:2-13 (stating that he did not recall if he signed a secrecy agreement); Sprenkel Decl, Ex. 12 (Josephs Depo.), 160:3-22 ("I remember discussions that I was not to discuss this with anyone.  I -- I think maybe your immediate family was permitted, but, of course, they had to know where you

**United States District Court**
For the Northern District of California

1   submitted evidence of a policy requiring that secrecy oaths be

2   given prior to participation in testing.  The evidence they offer,

3   in addition to being hearsay, is insufficient to make a prima

4   facie showing that class members throughout the class period swore

5   similar secrecy oaths, the enforceability of which could be

6   adjudicated on a class-wide basis.  Without such a showing, the

7   Court cannot consider whether a complete release from secrecy

8   oaths is appropriate on a class-wide basis, because the Court

9   would need to consider the terms of the oath which each individual

10  swore, if any.

11      Second, Plaintiffs' legal theory is that, "[b]ecause no test

12  participant was provided with information sufficient to enable

13  informed consent, the Secrecy oaths should be deemed valid <u>ab</u>

14  <u>initio</u>."  Mot. at 15.  Under this theory, a determination of the

15  validity of the secrecy oaths turns on what information was

16  provided to the class members when they swore them.  The evidence

17  Plaintiffs cite in support of this argument is two pages of a

18  statement made by the former General Counsel of the Army during

19  Congressional hearings in 1975.  This evidence does not establish

20  that it can be determined a class-wide basis.  In the document,

21  the General Counsel discussed the testing of LSD on thirty-one

22  individuals at Edgewood between 1958 and 1960 and acknowledged

23  that certain information was withheld from participants.  Sprenkel

24  Decl. Ex. 15 at 160-62.  This included the exact properties of the

25  _____

26  were. . . . But I don't know if a secrecy oath was involved.");
    <u>see also</u> Mot. at 2, n.2 (defining "secrecy oath" as "all promises
    or agreements, whether written or oral, and whether formal or

27  informal, made by test participants <u>after</u> being told that they
    could never speak about their participation in the testing

28  programs.") (emphasis added).

**United States District Court**
For the Northern District of California

material to be administered and in some cases the time, location or method of administration. Id. The General Counsel also stated that other information was supposed to be given to them, including the general nature of the experiments and that the subject could terminate the experiment at any time, but that available records did not indicate what information was actually given in each case. Id. This testimony only supports the conclusion that certain information was withheld from these particular subjects and that, even for them, there was variance in the information provided. Plaintiffs introduce no evidence that there was a general policy or practice not to provide such information to test subjects before requiring them to sign a secrecy oath. Without such evidence, the Court cannot make a class-wide determination of whether such oaths are invalid ab initio.

Accordingly, the Court finds that Plaintiffs have not met the commonality requirement for their claims based on the secrecy oaths.

> c. Claims of a biased adjudication by the DVA

Plaintiffs contend that there are many common questions of law or fact on this claim, including whether the DVA was involved in testing programs, and whether it had an interest in determining there were no long-term health effects from such testing. Defendants have not challenged Plaintiffs' showing of commonality on this claim. Accordingly, the Court finds that Plaintiffs have fulfilled their burden to establish that the requirement is satisfied for this claim.

United States District Court
For the Northern District of California

4. Typicality

Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156 (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted).  The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'"  Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal citations omitted).  Rule 23(a)(3) is satisfied where the named plaintiffs have the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members have been injured by the same course of conduct. Id.  Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  Id. (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990).

Defendants argue that the claims of Blazinski, Josephs and the VVA members related to notice and medical care are not typical of claims of putative class members who participated in testing prior to the issuance of the Wilson Directive in 1952.  Opp. at 28, n.37.  Having found that the claims regarding the obligations

45

**United States District Court**
For the Northern District of California

derived from the 1990 regulations are as applicable to those who participated in testing prior to their issuance as after that date, the Court rejects Defendants' contention.

In a footnote, Defendants state, without elaboration, that "Plaintiffs have not identified a single individual whose claims are typical of widows," Opp. at 28, n.37, apparently referring to Plaintiffs' request to include in their class definition, "in the case of deceased members, the personal representatives of their estates," Mot. at 1-2; Reply, at 17.  In reply, Plaintiffs acknowledge that none of the proposed class representatives are survivors of veterans but assert that the proposed representatives are typical of deceased veterans' survivors because "the claims that deceased veterans' representatives assert <u>are the claims</u> of those deceased veterans."  Reply at 25, n.25 (emphasis in original); <u>see also</u> Mot. to Substitute 2-3 (arguing that Ms. McMillan-Forrest "stands in her late husband's shoes for purposes of filing a [dependency and indemnification compensation] claim").

Pursuant to 38 U.S.C. § 5121(a) and 38 C.F.R. § 3.5(a), a deceased veteran's spouse, children or dependent parents are entitled to receive benefits accrued by the veteran at the time of his death, such as disability benefits.  Thus, claims asserting that the DVA is a biased adjudicator of such benefits are the same, whether asserted by the veterans themselves or the personal representatives of deceased veterans' estates.

However, the survivors' own entitlement to dependency and indemnity compensation is separate from the claims of the deceased veterans themselves; such entitlements arise only upon the service-connected deaths of veterans and accrue to the survivors,

not the estates of deceased veterans.  See 38 C.F.R. § 3.5(a)(1).

Plaintiffs have not proposed a class representative with an

entitlement to dependency and indemnity compensation.  Thus, the

proposed class representatives' claims are not typical of claims

that the DVA is a biased adjudicator of dependency and indemnity

compensation claims.

     Further, the claims by the veterans themselves for notice are

not reasonably coextensive with the claims of deceased veterans'

personal representatives.  Plaintiffs contend that the veterans

are entitled to notice under the APA and the Constitution based on

the DOD and the Army's own regulations.[15]  In their briefing on

their motion to substitute Ms. McMillan-Forrest, to which

Plaintiffs refer in support of this argument in their reply on

their class certification motion, Plaintiffs contend that

Defendants' duty toward the test participants applies "whether

they are alive or deceased," and that, as "a practical matter, to

discharge this duty to deceased test participants, Defendants must

give Notice to the personal representative of the test

participant's estate . . ."  Reply in Supp. of Mot. to Substitute

at 2.  The Wilson Directive and versions of AR 70-25 mandate that

Defendants provide information to the test participants regarding

the possible effects upon their own health or person.  Plaintiffs

---

[15] Although Plaintiffs have also sought certification of claims
that the combination of Defendants' failure to provide class
members with notice, medical care and a release from secrecy oaths
together violated their substantive due process liberty rights,
including their right to bodily integrity, and of a lack of
procedures to challenge this failure, the Court has already
concluded that the constitutional claims based on the secrecy
oaths lack commonality.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

do not explain how such a duty to the test participants may
continue after they are deceased, when effects upon health and
person can no longer occur.  Instead, they contend that the
survivors are entitled to notice regarding the veteran's exposure,
doses and potential health effects because such information may be
relevant or necessary for survivors to submit claims for accrued
benefits or dependency and indemnity compensation, not because
such notice is required by the APA, the Constitution and the
regulations, the basis of the claimed duty toward the test
participants.  See Mot. to Substitute, 2-3.  Further, Plaintiffs
have conceded that the medical care claims do not survive a
veteran's death and cannot be asserted by a veteran's personal
representative on behalf of his or her estate.  Id. at 1.  Thus,
the proposed class representatives' notice and health care claims
are not typical of deceased veterans' personal representatives'
claims.

Defendants also make several arguments that the proposed
class representatives' secrecy oath claims are atypical of those
of the class.  Because the Court has already found that Plaintiffs
have not met the commonality requirement for these claims, the
Court does not reach these arguments.

F. Rule 23(b) requirements

Plaintiffs seek certification under either Rule 23(b)(1)(A)
or 23(b)(2).  Although common issues must predominate for class
certification under Rule 23(b)(3), no such requirement exists for
either subsection under which Plaintiffs seek certification.  See
Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998).
Accordingly, Defendants' various arguments that individual issues

United States District Court
For the Northern District of California

predominate and preclude certification are not on point.  See Opp. at 36, 38.

Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b).  Plaintiffs argue that Defendants have uniformly failed to fulfill their legal obligations to the class, "as all class members were participants in human testing programs, were denied Notice and medical care, and had their constitutional rights violated by the Secrecy oaths."  Mot. at 24.  Plaintiffs also argue that the DVA uniformly failed to act as a neutral adjudicator of class members' claims.

For certification under this provision, "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole.  Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate."  Walters, 145 F.3d at 1047; see 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1775 (2d ed. 1986) ("All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2).").  Rule 23(b)(2) does not require a court "to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them."  Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2010).  "Class certification under Rule 23(b)(2) is appropriate only where the

primary relief sought is declaratory or injunctive." <u>Zinser v.</u>
<u>Accufix Research Institute, Inc.</u>, 253 F.3d 1180, 1195 (9th Cir.
2001).

Defendants contend that Plaintiffs cannot meet the Rule
23(b)(2) requirement for several reasons.  First, Defendants
contend that "at least three different sets of regulations and
directives . . . have governed DOD's alleged notice duty for the
members of the putative class" from 1953 and later, which would
require this "Court to have to adjudicate and provide relief
dependent on the applicable legal framework."  Opp. at 38.  In
<u>Rodriguez</u>, the Ninth Circuit has rejected similar arguments in the
context of the certification of a class to prosecute claims based
on the denial of bond hearings in immigration proceedings.  In so
ruling, the court noted, "The particular statutes controlling
class members' detention may impact the viability of their
individual claims for relief, but do not alter the fact that
relief from a single practice is requested by all class members.
Similarly, although the current regulations control what sort of
process individual class members receive at this time, all class
members[] seek the exact same relief as a matter of statutory or,
in the alternative, constitutional right."  <u>Rodriguez</u>, 591 F.3d at
1126.  <u>See also</u> <u>Adamson v. Bowen</u>, 855 F.2d 668, 676 (10th Cir.
1988) (emphasizing that, although "the claims of individual class
members may differ factually," certification under Rule 23(b)(2)
is a proper vehicle for challenging "a common policy").  Here,
Plaintiffs also "seek uniform relief from a practice applicable to
all of them." <u>Rodriguez</u>, 591 F.3d at at 1125.

Defendants also argue that this requirement cannot be met because "at least 4,000 individuals have received some form of notice," referring to the DVA's form letters to veterans.  Mot. at 39.  As the Court explained above, these were sent by the DVA and do not negate Plaintiffs' contention that the DOD and the Army refused to send notice.  Further, these letters by themselves are facially insufficient to satisfy the basic components of the notice that Plaintiffs allege Defendants have the duty to provide because they omit any information specific to the class members themselves.

Finally, Defendants contend that certification under Rule 23(b)(2) is inappropriate because "Plaintiffs' claim for medical care" is "essentially a claim for monetary damages."  Opp. at 39. The Court has rejected above Defendants' characterization of this claim.

Accordingly, the Court finds that Plaintiffs have established that certification under Rule 23(b)(2) is appropriate.  The Court does not reach Plaintiffs' alternative argument that certification can be granted under Rule 23(b)(1)(A).

II.   Motion to Substitute

Plaintiffs move to substitute Kathryn McMillan-Forrest as a named Plaintiff in this action, in place of her late husband, Plaintiff Wray Forrest, who passed away on August 31, 2010.

On April 11, 2012, Defendants filed a statement noting "the death during the pendency of this action of Wray Forrest, a Plaintiff in this action."  Docket No. 411.

Less than ninety days later, on June 5, 2012, Plaintiffs filed the instant motion to substitute pursuant to Federal Rule of

United States District Court
For the Northern District of California

Civil Procedure 25(a)(1).  Rule 25(a)(1) provides in part, "If a party dies and the claim is not extinguished, the court may order substitution of the proper party."  Plaintiffs seek to substitute Ms. McMillan-Forrest to prosecute Mr. Forrest's APA and constitutional claims regarding notice and his claim that the DVA is a biased adjudicator of SCDDC claims.  Plaintiffs do not seek to substitute Ms. McMillan-Forrest to prosecute his secrecy oath claim and claims for medical care, which they acknowledge do not survive his death.  Plaintiffs also seek to add to the complaint the following sentence: "Plaintiff Kathryn McMillan-Forrest is the surviving spouse of Wray Forrest, has filed a claim for accrued disability benefits and dependency and indemnity compensation, and is substituted in Wray Forrest's place as named Plaintiff."  Mot. at 4.

     In opposition, Defendants primarily contend that Plaintiffs' motion is properly considered as a motion to amend because Mr. Forrest was no longer a party at the time the motion was made. On November 15, 2010, the Court granted Plaintiffs leave to file their 3AC within three days of that date, and directed them to "make any correction necessitated by the passing of Plaintiff Wray Forrest."  See Docket No. 177, at 18.  When Plaintiffs timely filed their 3AC, which is the operative complaint in this action, they removed Mr. Forrest from the list of Plaintiffs in the caption, and referred to him as a "former" Plaintiff throughout the body of the 3AC.  Subsequently, they consistently omitted Mr. Forrest's name when they listed the Plaintiffs in this action, until they filed their motion for class certification and, shortly thereafter, their administrative motion to substitute Ms.

McMillan-Forrest.  See, e.g., Pls.' Opp. to Defs.' Mot. to Dismiss the 3AC, Docket No. 188; Pls.' Mot. to Strike Admin. Record, Docket No. 211.  Because Plaintiffs amended their complaint to remove Mr. Forrest on November 15, 2010, he was no longer a party to this action when Plaintiffs first sought to substitute Ms. McMillan-Forrest in his place on March 6, 2012.  Accordingly, as Defendants urge, the Court construes Plaintiffs' motion as a motion for leave to amend.

Federal Rule of Civil Procedure 15(a) provides that leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires."  Because "Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." Genentech, Inc. v. Abbott Laboratories, 127 F.R.D. 529, 530-531 (N.D. Cal. 1989).  Courts consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the plaintiff has previously amended the complaint.  Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1055 n.3 (9th Cir. 2009).  However, these factors are not of equal weight; specifically, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend."  United States v. Webb, 655 F.2d 977, 980 (9th Cir. 1981).  Futility of amendment, by contrast, can alone justify the denial of a motion for leave to amend.  Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995); Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. Cal. 1988).

Defendants contend that amendment would be futile for a variety of reasons.  As to the biased adjudicator claim against the DVA, Defendants reassert the same arguments regarding the Court's lack of jurisdiction that the Court has already rejected in this and previous Orders.  Thus, the Court concludes that Defendants have not established that this claim is futile.  As to the notice claims, Defendants also repeat arguments rejected in this and prior Orders.  To the extent that they further contend that Ms. Wray-Forrest will not ultimately be able to prove these claims, "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller, 845 F.2d at 214.  Such evidence-based arguments are more properly asserted in a motion for summary judgment.

Defendants also contend that any claim asserted by Ms. Wray-Forrest for notice under the APA would be futile, because the regulations and other documents could only support an obligation to warn or provide notice to the test participant himself or herself and not to that person's next-of-kin.  As addressed above, Plaintiffs fail to explain how a duty to warn test participants of the effects of testing upon their health and person may continue after the participants have passed away and such effects can no longer continue.  Instead, they contend that the survivors of these participants require this information to obtain access to their own entitlements.  Although this may support other claims, it does not support a non-discretionary duty to warn survivors under the APA based on the regulations and related documents.

Accordingly, Defendants have established that Ms. Wray-Forrest's APA claim for notice would be futile.

Defendants also contend that Plaintiffs unduly delayed in seeking amendment.  Plaintiffs respond that they mistakenly believed that the Court had already granted leave to substitute Ms. Wray-Forrest as a "correction" contemplated by the Court's November 15, 2010 Order and that the three day period referred to in that Order was to file an amended pleading, not to substitute Ms. Wray-Forrest as well.  See Reply to Admin. Mot. to Substitute, Docket No. 374, 1-2;  April 5, 2012 Hrg. Tr., Docket No. 414, 10:9-11-1.  For this reason, the Court does not find the time between Mr. Forrest's death and the filing of the initial motion to substitute constitutes undue delay.

Finally, Defendants argue that they were prejudiced by the delay in the filing of this motion, arguing that Plaintiffs seek amendment "in order to have an individual plaintiff with standing to seek dependency and indemnity compensation from VA for the purposes of their class certification motion."  Opp. to Mot. to Substitute, 4.  However, Plaintiffs have not asked the Court to appoint Ms. Wray-Forrest as a class representative, and thus her inclusion in the action as an individual Plaintiff is not relevant to the resolution of the motion for class certification. Defendants also contend that they were deprived of a fair opportunity to address the potential inclusion in the class of personal representatives of the estates of deceased test participants in their opposition to Plaintiffs' motion for class certification, contending that this was an "abstract" notion until Plaintiffs moved to substitute shortly before their opposition was

due.  However, in their motion, Plaintiffs defined their proposed class to include such individuals, giving Defendants sufficient notice that this was at issue in the motion so that Defendants could present their arguments in opposition to the inclusion of these individuals.  Further, the Court notes that it granted Defendants' sole request for an extension of time and additional pages to oppose the motion for class certification, see Docket Nos. 353, 360, and that they did not seek any additional time to file their opposition after Plaintiffs moved to substitute Ms. Wray-Forrest or seek leave to file a supplemental brief.

Accordingly, the Court GRANTS in part and DENIES in part Plaintiffs' motion to amend.  Plaintiffs are granted leave to file a fourth amended complaint, within four days of the date of this Order, adding Ms. Wray-Forrest to the caption of the action and adding the following language to the body of the complaint: "Plaintiff Kathryn McMillan-Forrest is the surviving spouse of Wray Forrest, has filed a claim for accrued disability benefits and dependency and indemnity compensation, and is substituted in Wray Forrest's place as named Plaintiff, except as to the APA claim for notice, the secrecy oath claims and claims for medical care."

III. Appointment of Class Counsel

Rule 23(g)(1) of the Federal Rules of Civil Procedure provides in part:

> Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.  In appointing class counsel, the court:
>     (A) must consider:
>             (i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1).

Plaintiffs represent that their counsel, the law firm of Morrison & Foerster LLP, has sufficient resources to pursue the instant case vigorously, expertise in prosecuting class actions of this nature, and knowledge of the applicable law.  In particular, Gordon Erspamer, who will serve as lead counsel, has prosecuted several notable cases on behalf of veterans, including Veterans for Common Sense, discussed above.  The Court notes that counsel has devoted considerable time and resources working on behalf of the putative class thus far.   Accordingly, the Court APPOINTS Morrison and Foerster LLP as class counsel.

CONCLUSION

For the reasons set forth above, the Court GRANTS in part Plaintiffs' motion for class certification and DENIES it in part (Docket No. 346).  To prosecute the biased adjudicator claim against the DVA, except as to claims for dependency and indemnity compensation, the Court certifies a class defined as

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8

> All current or former members of the armed forces, or in
> the case of deceased members, the personal
> representatives of their estates, who, while serving in
> the armed forces, were test subjects in any human
> Testing Program that was sponsored, overseen, directed,
> funded, and/or conducted by the Department of Defense or
> any branch thereof, including but not limited to the
> Department of the Army and the Department of the Navy,
> and/or the Central Intelligence Agency, between the
> inception of the Testing Programs in approximately 1922
> and the present.  For the purposes of this definition,
> "Testing Program" refers to a program in which any
> person was exposed to a chemical or biological substance
> for the purpose of studying or observing the effects of
> such exposure.

To prosecute the APA and constitutional claims against the DOD and

the Army premised on the violation of their own regulations, the

Court certifies a class defined as

> All current or former members of the armed forces, who,
> while serving in the armed forces, were test subjects in
> any human Testing Program that was sponsored, overseen,
> directed, funded, and/or conducted by the Department of
> Defense or any branch thereof, including but not limited
> to the Department of the Army and the Department of the
> Navy, and/or the Central Intelligence Agency, between
> the inception of the Testing Programs in approximately
> 1922 and the present.  For the purposes of this
> definition, "Testing Program" refers to a program in
> which any person was exposed to a chemical or biological
> substance for the purpose of studying or observing the
> effects of such exposure.

The Court further GRANTS Plaintiffs' request to appoint VVA, Tim

Josephs and William Blazinski as class representatives and

Morrison & Foerster LLP as class counsel.

The Court DENIES Defendants' motions for leave to file a

motion for reconsideration and for relief from a nondispositive

order of the Magistrate Judge (Docket Nos. 431 and 471).

Finally, the Court GRANTS in part and DENIES in part

Plaintiffs' motion to substitute, which the Court construed as a

motion to amend (Docket No. 439).  Plaintiffs are granted leave to

file a fourth amended complaint, within four days of the date of

58

**United States District Court**
For the Northern District of California

this Order, adding Ms. Wray-Forrest to the caption of the action and adding the following language to the body of the complaint: "Plaintiff Kathryn McMillan-Forrest is the surviving spouse of Wray Forrest, has filed a claim for accrued disability benefits and dependency and indemnity compensation, and is substituted in Wray Forrest's place as named Plaintiff, except as to the APA claim for notice, the secrecy oath claims and claims for medical care."

IT IS SO ORDERED.

Dated: September 30, 2012

CLAUDIA WILKEN
United States District Judge