IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIETNAM VETERANS OF AMERICA, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>CENTRAL INTELLIGENCE AGENCY, et al.,<br><br>          Defendants.<br>_____/ | No. CV 09-0037-CW<br><br>ORDER DENYING DEFENDANTS' MOTION TO STAY<br>(Docket No. 553) |

Defendants United States Department of Defense and its Secretary Charles T. Hagel and the United States Department of the Army and its Secretary John M. McHugh have filed a motion to stay this Court's judgment and injunction pending the resolution of Defendants' cross-appeal.[1]  Plaintiffs Vietnam Veterans of America; Swords to Plowshares: Veterans Rights Organization; Bruce Price; Franklin D. Rochelle; Larry Meirow; Eric P. Muth; David C. Dufrane; Tim Michael Josephs; William Blazinski and Kathryn McMillan-Forrest oppose the motion.  Having considered the parties' papers and the entire record in this case, the Court DENIES the motion.

---

[1] Defendants imply that the outcome of Plaintiffs' appeal could affect their need to comply with the injunction. Plaintiffs' appeal is quite separate.  Only if Defendants' cross-appeal is granted would their compliance be unnecessary.

BACKGROUND

On November 19, 2013, this Court entered an order granting in part and denying in part Plaintiffs' motion for summary judgment and granting in part and denying in part Defendants' cross-motion for summary judgment. Docket No. 544. Specifically, the Court granted Plaintiffs' motion for summary judgment on their APA notice claim "to the extent that Plaintiffs seek to require the Army to warn class members of any information acquired after the last notice was provided, and in the future, that may affect their well-being, when that information becomes available." Docket. No. 544 at 71. The Court also entered an injunction regarding such "Newly Acquired Information." Docket No. 545. The injunction required Defendant Department of the Army to file, within ninety days of the date of entry, a report describing its efforts to locate Newly Acquired Information, describing any information located, outlining its plan for disseminating, within 120 days of the date of entry, that information to the class members entitled to notification, and outlining the plans and policies developed for periodically collecting and transmitting Newly Acquired Information that becomes available in the future. Based on the November 19, 2013 entry date, Defendant's report is due on February 17, 2014.

On November 26, 2013, Plaintiffs filed a notice of appeal and, on January 21, 2014, Defendants filed a notice of cross-appeal. On January 22, 2013 Defendants filed the instant motion to stay. The Ninth Circuit has granted Plaintiffs' motion for expedited briefing and the cross-appeals will be fully briefed by April 21, 2014.

2

LEGAL STANDARD

"A stay is not a matter of right, even if irreparable injury might otherwise result." Nken v. Holder, 129 S. Ct. 1749, 1760 (2009) (citation and internal quotation marks omitted). Instead, it is "an exercise of judicial discretion," and "the propriety of its issue is dependent upon the circumstances of the particular case." Id. (citation and internal quotation and alteration marks omitted). The party seeking a stay bears the burden of justifying the exercise of that discretion. Id.

The standard for determining whether to grant a stay pending appeal is similar to the standard for issuing a preliminary injunction. Tribal Village of Akutan v. Hodel, 859 F.2d 662, 663 (9th Cir. 1988). A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tips in his favor, and that a stay is in the public interest. Nken, 129 S. Ct. at 1761 (noting overlap with Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008)). The first two factors of this standard "are the most critical." Id. Once these factors are satisfied, courts then assess "the harm to the opposing party" and weigh the public interest. Id. at 1762.

An alternative to this standard is the "substantial questions" test. Under this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff" can support the issuance of a stay, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135

3

1 (9th Cir. 2011) (holding that the substantial questions test, for
2 purposes of a motion for preliminary injunction, survives Winter,
3 555 U.S. at 7).

## DISCUSSION

Defendants contend that they are entitled to a stay under the substantial question test based on questions regarding "whether Section 706(1) of the APA provides a basis for judicial review and enforcement of the 'duty to warn' that the Court held is contained in the 1988, 1989 and 1990 versions of Army Regulation 70-25." Motion to Stay at 3. Even assuming that substantial questions exist, Defendants have failed to establish a likelihood of irreparable injury if the stay is denied or that the stay is in the public interest. Defendants assert that the time and cost of complying with the injunction are substantial. Defendants submit the declaration of Dee Moris, the Chief of Staff for the Joint Requirements Office for Chemical, Biological, Radiological and Nuclear Defense. Morris declares that "even a minimum level of compliance with the Court's injunction will impose substantial monetary and manpower burdens on the Army." Morris Dec. ¶ 5.

Defendants provide two "informal" estimates for the cost of compliance. If they contract with the Institute of Medicine to conduct literature searches with respect to the relevant test substances and compare those searches to previously conducted reviews to determine whether there have been any material developments, Defendants assert that the cost over five years will be approximately $8.8 million. Morris Dec. ¶ 12. Defendants provide another option of having the government "conduct scientific and medical literature searches pertaining to the

4

hundreds of substances at issue." Morris Dec. ¶ 15. Morris declares that this option presents unspecified "substantial burdens and costs to the government." Id. According to Defendants, the "costs associated with reviewing and evaluating the medical and scientific literature associated with just the approximately twelve biological substances and vaccines used during the test program" is $860,000. Morris Dec. ¶ 15. Morris further declares that these costs "would be substantially greater if these literature reviews included all of the hundreds of test substances used during the test programs, and had to be continuously updated, as may be required by the Court's injunction." Morris Dec. ¶ 18. The Court notes that the quoted costs are for continuing and complete compliance. For example, the $8.8 million estimate to contract with the Institute of Medicine is the amount expected to be spent over five years. As Defendants themselves point out, the Ninth Circuit has agreed to decide the parties' cross-appeals on an expedited basis. If, within the next few months, Defendants win their appeal, they will be able to stop their efforts to comply with the injunction and they will not have incurred all of the costs quoted.

While Defendants provide these "informal estimates" indicating that compliance with the injunction may be expensive, Defendants present no evidence that incurring such costs will

5

cause irreparable harm.[2] In fact, the only harm identified by Morris is the risk of "unnecessarily alarming past test participants with additional notifications of minimal value to them." Morris Dec. ¶ 5. Such speculative harm to the individuals seeking the injunction is not sufficient to warrant a stay. See County of Sonoma v. Federal Housing Finance Agency, 2011 U.S. Dist. LEXIS 112945, *5 (N.D. Cal.) (finding no irreparable harm or burden where the defendants claimed that a preliminary injunction would impose a burden on its "limited financial and personnel resources" but failed to "identify any agency activity that will be undermined through the diversion of funds or staff time.").

Moreover, an analysis of the balance of hardships tips in Plaintiffs' favor. On the one hand, there are the expenses that will be incurred by Defendants and, on the other, there is the very real possibility that the aging and adversely affected test subjects will not learn about health effects that could be mitigated if known. Any expense incurred by Defendants doing research and providing information to adversely affected test subjects, even if Defendants should not have been required to incur those expenses, would not be wasted. However, lost time for the adversely affected test subjects could lead to irreversible health consequences.

---

[2] Defendants state, "The Army's efforts to meet its other obligations will be irreparably harmed by having to divert resources to complying with an injunction that could ultimately be changed by the ongoing litigation." Motion to Stay at 8. However, Defendants do not support this contention with any evidence.

CONCLUSION

Accordingly, the Court DENIES Defendants' motion for a stay pending appeal. The Court also denies Defendants' request for an extension of the deadlines in the injunction. Defendants shall do their best to plan and begin compliance with the injunction and provide a report of their efforts and their plans to the Court by February 17, 2014.

IT IS SO ORDERED.

Dated: 2/5/2014

CLAUDIA WILKEN
United States District Judge

7